KAUFMANN, FEINER, YAMIN,
GILDIN & ROBBINS, LLP
David E. Robbins (DR 8744)
Wayne M. Josel (WJ 2813)
777 Third Avenue, 24th Floor
New York, New York 10017
212-755-3100

BANKS LAW OFFICE, P.C.
Robert S. Banks, Jr.
209 SW Oak Street, Suite 400
Portland, Oregon 97204
503-222-7475

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| HOWARD HOUSTON, | Civil Action No. _____ |
| Plaintiff, | COMPLAINT |
| vs. | (Violation of Oregon Securities Laws) |
| SEWARD & KISSEL, LLP, | |
| Defendant. | |

## SUMMARY OF THE CASE

1. Plaintiff Howard Houston of Oregon was one of the victims of the well-publicized 2005 Wood River Partners, LP ("Wood River") hedge fund fraud that gave rise to securities fraud proceedings brought by the Securities & Exchange Commission and criminal proceedings against the primary perpetrator. Under the applicable securities laws of Oregon, the law firm that prepared the offering documents for the Wood River investments is responsible for the losses incurred by Oregon residents. Defendant prepared those documents. Plaintiff invested $2.75 million from January through September 2005. Wood River's principal, John Whittier ("Whittier"), recently

pleaded guilty to violating federal securities laws in connection with his role in the Wood River fraud. See United States v. Whittier, 07-CR 00087 (JSR). Additionally, Wood River, its affiliates, management company and Whittier are parties to a civil action brought by the Securities and Exchange Commission ("SEC") in this district for fraud and misrepresentations in violation of the federal securities laws. Wood River was placed into receivership by Judge Naomi Reice Buchwald. See SEC v. Wood River Capital Management, LLC, et al, 05 CV 8713.

2. Plaintiff, a resident of Lake Oswego, Oregon, brings this case against the law firm that represented Wood River, its affiliates and management company, and that prepared the offering documents that contained false representations and omitted material facts in describing the Wood River investments. Plaintiff sues for violations of the Oregon Securities Laws, ORS 59.115, ORS 59.135 and ORS 59.137, because of the defendant's participation in and material aiding in: (a) the unlawful solicitation and sale of unregistered securities to plaintiff by means of misrepresentations and omissions; and (b) a scheme or artifice to defraud. Although, under that state's securities laws, plaintiff need not prove the defendant's actual knowledge in order to prevail on his claims, in fact defendant Seward & Kissel knew that certain representations made in the offering documents regarding Wood River and its investment strategy were false.

3. Numerous and specific allegations of wrongdoing are detailed below and can be summarized as follows: Defendant prepared Wood River's offering materials in which they stated that Wood River would be managed by reputable individuals, would be diversified and well-balanced and would invest in 30 to 40 stocks (after careful research and analysis by skilled and experienced professionals). In fact, Wood River was operated by an individual with a history of credit problems – Whittier - who invested the majority of Wood River's assets (68%) in a single, high risk, thinly traded technology stock known as EndWave, which had a history of annual losses.

EndWave's stock price plummeted after Wood River acquired it, and, because of the size of Wood River's position in the stock (which totaled approximately 35% of EndWave's outstanding shares), there was no market to liquidate its shares. Wood River was unable to meet the withdrawal requests of its investors, including plaintiff, and Wood River failed, resulting in plaintiff losing his entire investment of $2.75 million. Under the facts as alleged, defendant is liable to plaintiff for its violations of various provisions of the Oregon Securities Laws.

## JURISDICTION

4.    Jurisdiction for this case is based on diversity under 28 USC § 1332. Plaintiff is a citizen of Oregon and defendant is a citizen of New York. There is complete diversity and the amount in controversy exceeds $75,000.

## PARTIES

5.    Plaintiff Howard Houston lives in Lake Oswego, Oregon and owns the business known as Hood River Sand and Gravel. All of the investments set forth herein were made by plaintiff from Oregon.

6.    Defendant Seward & Kissel, LLP ("Defendant" or "Seward") is a New York law firm with offices in New York City and Washington, D.C.

## FACTS

7.    In late 2004, plaintiff Houston received a Confidential Wood River Partners, LP Summary from Wood River and its sales agents. That document portrayed Wood River as a disciplined, diversified investment. Its Confidential Summary represented that Wood River would, among other things:

    A.    Be a diversified investment that would be "Flexible and Nimble" and would use "Bottom Up Fundamental Research, Sector Selection, and Technical

Analysis."

B. "Deliver consistent and absolute positive returns."

C. Focus on the media, communications, healthcare, biotechnology, financial services, technology and internet, telecommunications, consumer staples, and consumer cyclicals sectors.

D. "Invest for the long-term, while capturing near-term volatility through opportunistic trading."

8. Then, in January 2005, Houston received a prospectus, partnership agreement, and subscription agreement for the Wood River investment. Upon information and belief, these documents were prepared for Wood River by defendant Seward. Plaintiff Houston and his assistant, Peter Shames, received and reviewed them.

9. It was later learned by plaintiff that as with the 2004 Confidential Summary, the prospectus falsely stated that the Wood River fund would be diversified and would engage in hedging to minimize risk and protect against losses. For example, the prospectus represented that:

A. Wood River would invest in "a combination of long and short equity investments in a diversified number of industries."

B. Wood River would invest in a broad base of industries that included media, communications, technology, healthcare, financials, cyclicals and consumer staples.

C. Wood River would typically hold 30 to 40 long positions.

D. The investments "typically are broad based."

E. "Maximum individual long positions in the portfolio are capped at 10% of original cost."

    F.    Wood River would base its investment strategy on "fundamental research, as well as both quantitative and qualitative analysis."

    G.    Wood River is "expected to generate a blended return of short and long-term capital gains."

10.    The prospectus further represented that defendant Seward was legal counsel to Wood River and that Wood River would make available to investors Seward's opinions as to the legality of the offering.

11.    The prospectus also falsely represented that there were additional safeguards in place for investors, including that:

    A.    American Express Tax and Business Services ("American Express") had been appointed as auditors for Wood River.

    B.    Investors would receive unaudited financial reports at least quarterly regarding the performance of the partnership.

    C.    Financial reports of Wood River would be prepared in accordance with Generally Accepted Accounting Principles.

    D.    The books and records of Wood River would be audited at the end of each year by the auditor.

12.    At no time while plaintiff was making his Wood River investments (February – September 2005) did defendant make any material changes to the Wood River prospectus or other offering or marketing materials that plaintiff received and relied upon.

13.    Based upon representations made in the prospectus, plaintiff agreed to invest in Wood River. Although the prospectus stated that the minimum investment was $1 million, Whittier allowed plaintiff to make an initial contribution of $250,000, with the understanding that he would

send additional monies so long as he was satisfied with the fund's operation and performance. Plaintiff fulfilled that promise by continuing to invest in Wood River. His investments in Wood River were as follows:

| | |
|---|---|
| February 2005 | $250,000 |
| March 2005 | $250,000 |
| April 2005 | $500,000 |
| May 2005 | $250,000 |
| June 2005 | $250,000 |
| July 2005 | $500,000 |
| August 2005 | $250,000 |
| September 2005 | $500,000 |

Plaintiff Houston's total investment in Wood River was $2,750,000.

14. The representations identified above (¶¶ 9 and 11) were false and misleading and omitted to state facts that would have been material to any reasonable investor.

15. The solicitation and sale of the Wood River investment to plaintiff Houston were based on material omissions in the offering documents prepared by defendant, including:

    A. Omitting to state that the operator of Wood River and the person responsible for the supposed success of the fund, John Whittier, had a history of credit problems, including

        1. A lawsuit filed against him by Credit Suisse First Boston ("CSFB") in 2002 for failing to pay for stock trades;

        2. A pending state of Idaho tax lien against him;

        3. A lawsuit filed against him and Wood River for their failure to pay rent on their office building in San Francisco in 2002;

                4. A State of California tax lien filed against him in 2003.

B.   Omitting to state that, beginning in 2004 and contrary to the fundamental representation that Wood River would be a diversified fund that would *not* invest more than 10% of its portfolio in any one security, Wood River began accumulating a massive stake (which eventually totaled approximately 68% of the fund's assets) in EndWave, a small cap, highly volatile, thinly traded NASDAQ technology stock. EndWave reported losses in 2002, 2003 and 2004 in its Form 10Q and 8K filings with the SEC.

C.   Omitting to state that by the time plaintiff made his first investment in February 2005, and completely unbeknownst to plaintiff, Wood River already owned more than 15% of the outstanding shares of EndWave;

D.   Omitting to state that by the summer of 2005, when plaintiff was making monthly investments of $250,000 to $500,000: (i) Wood River's stake in EndWave was more than half of Wood River's entire portfolio; (ii) Wood River owned more than 30% of EndWave's outstanding shares; and, (iii) an investment in Wood River was, in large part, an investment in a single, highly speculative investment--EndWave;

E.   Omitting to state that EndWave's share value, and therefore the asset value of Wood River, had declined substantially beginning in mid-July 2005, falling almost 50% by mid-September 2005;

F.   Omitting to state that Wood River, as early as June 2005, had violated Sections 13(d) and 16(a) of the Securities Exchange Act, 15 U.S.C. § 78(j), requiring, *inter alia*, the filing of reports for entities owning more than 5%

and 10%, respectively, of a publicly traded company, and that by failing to do so Wood River was subject to the penalty of forfeiture of any profits from the sale of EndWave stock;

G. Omitting to state that in June 2005, while plaintiff was still making monthly investments, Wood River did not have the funds to meet the redemption order of one of its investors, BNP Paribas, and that Wood River had been stalling and delaying action on that investor's redemption order;

H. Omitting to state that on or about September 19, 2005, other investors had also made redemption requests, which were not honored by Wood River;

I. Omitting to state that American Express Tax and Business Services had not been retained as the auditor of Wood River and that it did not perform any auditing services for Wood River;

J. Omitting to state that by September 2005, before plaintiff made his final cash contribution of $500,000, Wood River's management employees began to resign; that Whittier and Wood River"s management were not returning telephone calls; and, that Wood River was not honoring redemption requests from investors;

K. Omitting to disclose that by late 2004 Wood River had a dispute with one of its consultants, Jason Foster, regarding a bonus payment Foster alleged was owing to him from Wood River in connection with Wood River's stock position in EndWave. Foster claimed orally and in a letter, through counsel, to defendant, that he was owed a finder's fee for recommending the EndWave investment to Wood River, and was to be paid a fee tied to the price of

EndWave's shares in October 2004. Foster alleged orally and in a letter, through counsel, to defendant, that Wood River had manipulated downward the price of EndWave shares to avoid or decrease the bonus payment to Foster by selling a large number of shares immediately prior to the target October date. Defendant Seward was put on notice by Foster's counsel on January 27, 2005, before plaintiff made his first investment, that Wood River's EndWave holdings exceeded 15% of the outstanding stock, triggering SEC disclosure requirements[1]; and,

M. Omitting to make the proper SEC filings to disclose the extent of Wood River's holdings in EndWave, even though it did make such a disclosure for another lesser holding, Media Bay.

16. The solicitation and sale of Wood River to plaintiff was based on material misrepresentations made in the offering documents prepared by Seward, including the following:

A. That Wood River was a low risk investment, when it fact it was an extremely high risk investment;

B. That Wood River would use stop losses and other hedging devices to limit the amount of any losses, when, in fact, Wood River held such large positions in EndWave and Media Bay stocks that there was no effective way to limit losses.

C. That Wood River would not invest more than 2.5% in any one stock, when in fact, most of its portfolio (more than 60%) was in EndWave--a single thinly traded and volatile stock;

---

[1] Wood River, though its counsel defendant Seward, ultimately settled the claim with Foster, and prohibited Foster from

D. That Wood River had a low "Beta" and low "Sharpe ratio," meaning that its price was relatively stable and low risk, when, in fact, it was highly volatile and risky;

E. That Wood River would be audited and that American Express Financial Services had been retained as auditors, when, in fact, no audit was conducted, American Express Financial Services does not perform audit services and that it had never been retained by Wood River;

F. That Wood River would be a diversified, broad based fund, when, in fact, most of the fund's assets consisted of stock in EndWave and Media Bay;

G. That Wood River would be 'flexible and nimble," when, in fact, it was amassing and had amassed an EndWave position that it could not liquidate; and,

H. That Wood River would make its investment decisions based upon fundamental research and quantitative and qualitative analysis, when, in fact, its portfolio was created and managed recklessly and was not supported by any bona fide research or analysis.

**FIRST CLAIM FOR RELIEF
Violation of ORS 59.115 and 59.135
(Blue Sky Liability for Participation or Materially Aiding Illegal Sales)**

17. Plaintiff repeats and realleges the allegations in paragraphs 1 – 16 as if set forth fully herein.

18. The Oregon securities laws, which govern the sale of all securities to Oregon citizens, provide at ORS 59.115(1)(b) that a person is liable to the purchaser of a security if that person:

---

disclosing to anyone Wood River's EndWave stock position.

> Sells or successfully solicits the sale of a security in violation of ORS 59.135 (1) or (3) or by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission), and who does not sustain the burden of proof that the person did not know, and in the exercise of reasonable care could not have known, of the untruth or omission.

19.     The provision of the Oregon Securities Laws (ORS 59.135) that is referenced in ORS 59.115(1)(b) makes it unlawful for any person, directly or indirectly, in connection with the purchase or sale of a security,

> (1) To employ any device, scheme or artifice to defraud;

> (2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or,

> (3) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person

20.     Section ORS 59.115(3) provides that:

> Every person who directly or indirectly controls a seller liable under subsection (1) of this section, every partner, limited liability company manager, including a member who is a manager, officer or director of such seller, every person occupying a similar status or performing similar functions, and every person *who participates or materially aids* in the sale is also liable jointly and severally with and to the same extent as the seller. (Italics added)

21.     Defendant violated or participated or materially aided in the violations of ORS 59.115 and ORS 59.135 by drafting, editing and/or reviewing and approving the prospectus and marketing materials that plaintiff relied upon, and which contained the misrepresentations and omissions alleged above, knowing that these documents would be used to sell Wood River to investors during the time that plaintiff made his investments. Defendant allowed its prestigious name to be used in the Wood River prospectus, which added a mark of legitimacy to the securities offering. Defendant assisted in and advised Wood River on various aspects of its operation and had actual knowledge of

many of the material misrepresentations and omissions described above. Defendant continued as counsel to Whittier and Wood River until at least September 30, 2005, which was after Houston's final purchase in September 2005.

22. As a result of the conduct described above, defendant is liable to plaintiff for the amounts set forth in ORS 59.115(2)(a), which provides that:

> (2) The purchaser may recover:
>
> > (a) Upon tender of the security, the consideration paid for the security, and interest from the date of payment equal to the greater of the rate of interest specified in ORS 82.010 for judgments for the payment of money or the rate provided in the security if the security is an interest-bearing obligation, less any amount received on the security.

23. Plaintiff hereby tenders his Wood River partnership interest to defendant.

24. Section ORS 59.115(10) of the Oregon Securities Laws provides for the recovery of attorney's fees in connection with a violation of any of the provisions of ORS 59.115.

## SECOND CLAIM FOR RELIEF
### Violation of ORS 59.137(1)
### (Blue Sky Liability for Materially Aiding Unlawful Practices)

25. Plaintiff repeats and realleges the allegations in paragraphs 1 – 24 as if set forth fully herein.

26. The Oregon Securities Law, ORS 59.137(1), provides:

> Any person who violates or materially aids in a violation of ORS 59.135 (1), (2) or (3) is liable to any purchaser or seller of the security for the actual damages caused by the violation . . . together with interest at the rate specified in ORS 82.010 for judgments for the payment of money [9%], unless the person who materially aids in the violation sustains the burden of proof that the person did not know and, in the exercise of reasonable care, could not have known of the existence of the facts on which the liability is based.

27. The Wood River securities were sold to plaintiff in violation of ORS 59.135(1), (2) and (3), as alleged above.

28. Defendant violated or materially aided in the violation of ORS 59.135 in the manner described in paragraph 26 above.

29. Section ORS 59.137(4) of the Oregon Securities Laws provides for the recovery of attorney's fees in connection with a violation of any of the provisions of ORS 59.137.

### THIRD CLAIM FOR RELIEF
### Violation of ORS 59.115(1)(a)
### (Blue Sky Liability for Participating or Materially Aiding Sale of Unregistered Securities)

30. Plaintiff repeats and realleges the allegations in paragraphs 1 – 29 as if set forth fully herein.

31. ORS 59.055 provides that it is unlawful for any person to offer or sell any security in this state, unless:

> (1) The security is registered . . .
>
> (2) The security is exempt under ORS 59.025 or the sale is exempt under ORS 59.035; or
>
> (3) The security is a federally covered security for which a notice has been filed and fees have been paid under ORS 59.049.

32. The Wood River security was not registered in Oregon and neither the security nor the sales to plaintiff were exempt under any applicable rule or regulation.

33. No notice filing was made in Oregon for the Wood River security.

34. The sale of the Wood River security in Oregon violated the Oregon Securities Laws because the security was not registered and was not exempt from registration.

35. ORS 59.115(1)(a) provides that a person who sells or successfully solicits the sale of a security, other than a federally covered security, in violation of the Oregon Securities Laws, is liable to the purchaser.

36. ORS 59.115(3) makes liable for violations of ORS 59.115(1)(a) "every person who participates or materially aids in the sale," such as defendant herein.

37. Defendant participated or materially aided in the violation of ORS 59.115(1)(a) in the manner described in paragraph 21 above.

38. As a result of the conduct described in this Complaint, defendant is liable to plaintiff for the amounts set forth in ORS 59.115(2)(a), which provides that:

> (2) The purchaser may recover:
>
>> (a) Upon tender of the security, the consideration paid for the security, and interest from the date of payment equal to the greater of the rate of interest specified in ORS 82.010 for judgments for the payment of money or the rate provided in the security if the security is an interest-bearing obligation, less any amount received on the security.

39. Section ORS 59.115(10) of the Oregon Securities Laws provides for the recovery of attorney's fees in connection with a violation of any of the provisions of ORS 59.115.

**WHEREFORE**, plaintiff Howard Houston prays for relief as follows:

(1) On his first and third claims for relief, for all damages permitted by ORS 59.115(2), including the amounts he invested, totaling $2,750,000, plus interest at 9% per annum from the time of each investment in Wood River securities until paid, plus reasonable attorney's fees pursuant to ORS 59.115(10).

(2) On his second claim for relief, for all damages permitted by ORS 59.137, including the total amount he invested, $2,750,000, plus interest at 9% per annum from the time of each cas investment in Wood River securities until paid, plus reasonable attorney's fees pursuant to ORS 59.137(4).

(3) For his costs incurred in bringing this action, including the cost of expert witnesses.

(4)  Together with such other and further relief as to this Court may seem just and proper.

DATED: July 2, 2007.

                                  KAUFMANN, FEINER, YAMIN,
                                  GILDIN & ROBBINS, LLC

By: _____
    David E. Robbins (DR 8744)
    Wayne M. Josel (WJ 2813)
    777 Third Avenue, 24th Floor
    New York, NY 10017
    212-755-3100

Of Counsel:
  BANKS LAW OFFICE, P.C.
  Robert S Banks, Jr.
  209 SW Oak Street, Suite 400
  Portland, Oregon 97204
  503-222-7475