# EXHIBIT C

# LIMITED PARTNERSHIP AGREEMENT

of

# WOOD RIVER PARTNERS, L.P.

AGREEMENT OF LIMITED PARTNERSHIP amended and restated as of September 3, 2003 by and among Wood River Associates, L.L.C. as General Partner (the "General Partner") and all the parties who sign copies of this agreement to become limited partners (the "Limited Partners"). (The General Partner and the persons who sign as Limited Partners are sometimes collectively referred to as the "Partners"). Whenever the masculine or feminine gender is used in this Agreement, it shall equally, where the context permits, include the other, as well as include entities.

## ARTICLE I

### General Provisions

Section 1.01 <u>Formation</u>. The original parties hereto hereby form Wood River Partners, L.P. as a limited partnership (the "Partnership") pursuant to the provisions of the Delaware Revised Uniform Limited Partnership Act.

Section 1.02 <u>Partnership Name</u>. The name of the Partnership is Wood River Partners, L.P.

Section 1.03 <u>Purpose</u>. The purpose of the Partnership is to serve as a fund through which the assets of its Partners will be utilized to invest, hold and trade in securities and other financial instruments and rights and options relating thereto.

Section 1.04 <u>Registered Office and Agent for Service of Process</u>. The registered office of the Partnership shall be at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808 and the registered agent for service of process shall be Corporation Service Company.

Section 1.05 <u>Place of Business</u>. The principal place of business of the Partnership shall be at 44 Montgomery Street, Suite 3700, San Francisco, California 94014, or at such other location as the General Partner may determine from time to time.

Section 1.06 <u>Fiscal Year and Fiscal Periods</u>. The fiscal year of the Partnership shall end on December 31 of each year, subject to change by the General Partner from time to time. A new fiscal period ("Fiscal Period") shall commence on the first day of each fiscal year, on each date of any capital contribution to the Partnership and on each date next following the date of any withdrawal of capital or retirement from the Partnership, and the prior Fiscal Period shall end on the date immediately preceding such date of commencement of a new Fiscal Period.

Section 1.07 <u>Liability of Limited Partners</u>. Except as expressly provided in the Delaware Revised Uniform Limited Partnership Act, the Limited Partners shall not be liable for any liabilities, or for the payment of any debts and obligations, of the Partnership.

Section 1.08 <u>Assignability of Limited Partnership Interest</u>. The limited partnership interest of a Limited Partner in the Partnership or any beneficial interest therein may not be assigned, in whole or in part, except with the consent thereto of the General Partner given in its sole discretion. Upon such an assignment of a limited partnership interest, the assignee shall become a Limited Partner upon the execution of such agreements and other documents as shall be required by the General Partner.

ARTICLE II

Admissions

Section 2.01 <u>Admission of Partners</u>. With the consent of the General Partner, additional Limited Partners may be admitted to the Partnership on the first day of each calendar quarter and at such other times as the General Partner shall, in its sole discretion, permit. In connection with the admission of a Partner to the Partnership, such Partner shall, in advance of such admission and as a condition thereto, sign a copy of this Agreement or a supplement hereto pursuant to which he agrees to be bound by the terms of this Agreement. The General Partner may admit additional general partners (i) as of the beginning of any quarter upon 75 days' prior written notice to all Limited Partners, (ii) at any time with the consent of the majority in interest of the Limited Partners or (iii) at any time if such additional general partner is affiliated with the General Partner or its principals.

ARTICLE III

Management of Partnership

Section 3.01 <u>Management of the Partnership</u>. The Partnership shall be managed by the General Partner, which shall have the sole discretion of making investments on behalf of the Partnership and of exercising the powers set forth in Section 3.02. The General Partner may appoint such agents of the Partnership as it deems necessary who shall hold such offices and shall, under the direction of the General Partner, exercise such powers of the General Partner in the management of the Partnership and perform such duties in connection therewith as shall be determined from time to time by the General Partner. Each of the General Partner and the Management Company (as defined below) shall devote so much of its time and efforts to the affairs of the Partnership as may, in its judgment, be necessary to accomplish the purposes of the Partnership. Nothing herein contained shall prevent the General Partner, the Management Company or any of their respective members, partners, principals, employees or affiliates or any other Partner from conducting any other business, including any business within the securities industry whether or not such business is in competition with the Partnership. Without limiting the generality of the foregoing, the General Partner, the Management Company, their respective members, partners, principals, employees or affiliates may act as investment adviser or investment manager for others, may manage funds or capital for others, may have, make and maintain investments in their own name or through other entities and may serve as an officer, director, consultant, partner or stockholder of one or more investment funds, partnerships, securities firms or advisory firms. It is recognized that in effecting transactions, it may not always be possible or consistent with the investment objectives of the various persons or entities described above and of the Partnership to take or liquidate the same investment positions at the same time or at the same prices.

Section 3.02 <u>Powers of the General Partner</u>. The General Partner shall have the following powers on behalf of the Partnership to be exercised in accordance with Section 3.01:

(a) To purchase, hold, sell, sell short, cover and otherwise deal in securities of any sort and rights therein, on margin or otherwise;

(b) To write, purchase, hold, sell and otherwise deal in put and call options of any sort and in any combination thereof;

(c) To purchase, hold, sell and otherwise deal in currencies, forwards, swaps, partnership interests, interests in other investment companies and any other financial instruments which exist now or are hereafter created;

(d) To conduct margin accounts with brokers; to open, maintain and close bank accounts and draw checks or other orders for the payment of moneys; to pledge

securities for loans and to effect borrowings from brokers, banks and other financial institutions;

(e) To enter into, make and perform any other contracts, agreements or other undertakings it may deem advisable in conducting the business of the Partnership, including but not limited to contracts, agreements or other undertakings with persons, firms or corporations with which the General Partner or any other Partner is affiliated;

(f) To retain Wood River Capital Management, L.L.C., an affiliate of the General Partner, or any other affiliate of the General Partner as the management company of the Partnership (the "Management Company") to be responsible for administrative matters; and

(g) To act for the Partnership in all other matters.

Section 3.03 <u>Limitation of Liability; Indemnification</u>.

(a) Neither the General Partner, the Management Company nor any person or persons designated pursuant to Section 9.02 shall be liable for any loss or cost arising out of, or in connection with, any act or activity undertaken (or omitted to be undertaken) in fulfillment of any obligation or responsibility under this Agreement, including any such loss sustained by reason of any investment or the sale or retention of any security or other asset of the Partnership, except that any person exculpated from liability under this Section shall not be exculpated from any liability arising from losses caused by his, her or its gross negligence or willful misconduct.

(b) The General Partner, the Management Company and their respective members, partners, principals, affiliates or employees and each person designated pursuant to Section 9.02 (each, an "Indemnitee") shall be indemnified and held harmless by the Partnership to the fullest extent legally permissible under and by virtue of the laws of the State of Delaware, as amended from time to time, from and against any and all loss, liability and expense (including without limitation judgments, fines, amounts paid or to be paid in settlement and reasonable attorney's fees) incurred or suffered by the Indemnitee in connection with the performance by the Indemnitee of his, her or its responsibilities to the Partnership; provided however that such Indemnitee shall not be indemnified for any liability arising from losses caused by his, her or its gross negligence or willful misconduct.

### ARTICLE IV

### Expenses of Partnership; Organizational Expenses

Section 4.01 <u>Expenses of Partnership Generally</u>. The General Partner is authorized to incur and pay in the name and on behalf of the Partnership all expenses which it deems necessary or advisable. The Partnership shall bear all of its own expenses including legal, accounting, auditing and other professional expenses, administration expenses, research expenses and investment expenses such as commissions, interest on margin accounts and other indebtedness, custodial fees, bank service fees and other expenses related to the purchase, sale or transmittal of Partnership assets as shall be determined by the General Partner in its sole discretion and its share of any "Office Overhead Expenses" of the General Partner and the Management Company. "Office Overhead Expenses" shall mean overhead expenses of an ordinarily recurring nature such as rent, supplies, secretarial expenses, stationery, charges for furniture and fixtures, employee insurance, payroll taxes and compensation of analysts and other personnel, and other reasonable overhead expenses as determined by the General Partner in its sole discretion.

Section 4.02 <u>Organizational Expenses</u>. The General Partner is authorized to incur and pay in the name and on behalf of the Partnership the organizational expenses of the Partnership including expenses incurred in connection with the initial offer and sale of interests in the Partnership ("Organizational Expenses"). Organizational Expenses will be amortized over a period of 60 months from the formation of the Partnership.

## ARTICLE V

### Capital Accounts and Capital Contributions

Section 5.01 <u>Capital Accounts</u>. A Partner's "Capital Account" as of a particular date shall consist of the following:

(a) an amount equal to his original capital contribution;

(b) the additions, if any, to such account by reason of capital contributions made on or before such date; and

(c) the adjustments, if any, to such account in accordance with the provisions of Sections 5.03 and 11.01 and Article VI.

Section 5.02 <u>Capital Contributions</u>. Contributions to the capital of the Partnership shall be made in cash unless the General Partner, in its sole discretion, permits contributions in securities or partly in cash and partly in securities.

Section 5.03 <u>Certain Adjustments to Capital Accounts</u>. The amount of withdrawals, if any, made by a Partner shall be deducted from such Partner's Capital Account as of the date of such withdrawal.

Section 5.04 <u>Additional Contributions to Capital</u>. A Partner may, with the consent of the General Partner, make additional contributions to the capital of the Partnership on the first day of each calendar quarter and on any other date selected by the General Partner, in its sole discretion.

## ARTICLE VI

### Allocation of Net Profits and Net Losses; Determination of Net Profits and Net Losses

Section 6.01 <u>Allocation of Net Profits and Net Losses</u>.

(a) Except as provided in Section 6.03 regarding "new issues", any Net Profits or Net Losses as defined in Section 6.02 during any Fiscal Period shall be allocated as of the end of such Fiscal Period to the Capital Accounts of all the Partners in the proportions which each Partner's Capital Account as of the beginning of such Fiscal Period bore to the sum of the Capital Accounts of all the Partners as of the beginning of such Fiscal Period.

(b) If in any fiscal year ("Current Year") the Net Profits allocated to the Capital Account of a Limited Partner pursuant to Section 6.01(a) and Section 6.03(e) exceed a "hurdle rate" equal to a non-cumulative 5% annualized return, there shall be reallocated to the General Partner as of the end of the Current Year an amount equal to 20% of all Net Profits so allocated to such Limited Partner for such year (the "Incentive Allocation"); provided, however, that (i) the Incentive Allocation will be subject to a loss carryforward such that no amount will be reallocated from such Limited Partner's Capital Account to the General Partner for the Current Year until the Net Profits for the Current

Year exceed such Limited Partner's loss carryforward amount applicable to the Current Year and (ii) solely for purposes of computing the Incentive Allocation, any Net Losses allocated to a Limited Partner during the Current Year shall be reduced proportionately to reflect any subsequent withdrawals made by the Limited Partner during the Current Year. The loss carryforward amount for a particular Limited Partner applicable to the Current Year shall be the sum of all prior year Net Losses allocated to the Limited Partner and not subsequently offset by prior year Net Profits; provided, that the loss carryforward amount shall be reduced proportionately to reflect any withdrawals made by such Limited Partner. The General Partner may, in its sole discretion, waive or reduce the Incentive Allocation for Limited Partners that are members, principals, employees or affiliates of the General Partner or of the Management Company or relatives of such persons and for certain large or strategic investors.

The total amount so reallocated pursuant to this Section 6.01(b) shall be credited as of the end of the fiscal year to the Capital Account of the General Partner.

(c)    In the event that a Partner withdraws or is required to retire at any time other than the end of a fiscal year, the allocation provided for in Section 6.01(b) shall be made with respect to such Partner as though the date of such Partner's withdrawal or retirement was the last day of a fiscal year.

Section 6.02 <u>Determination of Net Profits and Net Losses</u>. "Net Profits" or "Net Losses" of the Partnership for a Fiscal Period shall be determined on the accrual basis of accounting using generally accepted accounting principles as a guideline and further in accordance with the following:

(a)    Net Profits and Net Losses shall include realized and unrealized profits and losses with respect to all securities positions. In computing such realized and unrealized profits and losses, profit and loss shall mean for each position held in a security during any Fiscal Period, the realized or unrealized appreciation or realized or unrealized depreciation, as the case may be, with respect to such position, determined by comparing the net proceeds from the closing of such position or the market value of such position at the end of such Fiscal Period with (i) the cost of such position if established during such Fiscal Period or, (ii) if such position was established during a prior Fiscal Period, the market value of such position at the end of the last preceding Fiscal Period. Securities contributed to the Partnership shall be treated as if purchased by the Partnership at market value on the date of contribution and securities distributed from the Partnership shall be treated as if sold by the Partnership at market value on the date of distribution.

(b)    The market value of positions in securities shall be as follows: securities that are listed on an exchange or the NASDAQ National Market and are freely transferable shall be valued at their last sale price on such exchange during the regular or primary trading session on the date of determination, or, if no sales occurred on such day, at the "bid" price at the close of business on such day if held long and if sold short at the "asked" price at the close of business on such day. Securities traded over the counter and not listed on the NASDAQ National Market which are freely transferable shall be valued at the last sale price on the date of determination, or, if no sales occurred on such day, at the "bid" price at the close of business on such day if held long and if sold short at the "asked" price at the close of business on such day. Options that are listed on a national options exchange shall be valued at their last sale price on the principal market on which such options shall have traded on such date; provided that if the last sale price of such options do not fall within the last "bid" and "asked" price for such options on such date, the options will be valued at the mean between the last "bid" and "asked" price for such options on such date by the General Partner. Notwithstanding the foregoing, if in the reasonable judgment of the General Partner, in its sole discretion, the listed price for any security held or sold short by the Partnership does not accurately reflect the value of

5

such security, the General Partner may value such security at a price which is greater or less than the quoted market price for such security. All other assets and liabilities of the Partnership shall be valued in the manner determined by the General Partner.

(c) There shall be deducted in computing Net Profits and Net Losses estimated expenses for legal and audit services and other expenses, if any, in respect of the particular Fiscal Period (whether performed therein or to be performed thereafter), and such reserves for contingent liabilities of the Partnership, including estimated expenses, if any, in connection therewith, as the General Partner shall determine. The General Partner is specifically authorized to defer until a subsequent year expenses incurred in the current year.

(d) The Organizational Expenses of the Partnership shall be amortized over a period of 60 months from the formation of the Partnership and the amortizable portion of the Organizational Expenses shall be deducted in computing Net Profits and Net Losses.

Section 6.03 <u>New Issues</u>. In the event that the General Partner invests the Partnership's assets in securities which are considered to be "new issues" as defined in the Conduct Rules of the National Association of Securities Dealers, Inc., (the "Conduct Rules") and there are Partners who are not permitted to participate in such "new issues", the investments will be made in accordance with the following provisions so that the Net Profits attributable to "new issues" will not be allocated to the Capital Accounts of Partners who are restricted from participating in "new issues" under the Conduct Rules:

(a) any such investments made during a particular Fiscal Period shall be made through a special account (the "New Issues Account");

(b) only those Partners who do not fall within the proscription of the Conduct Rules ("Unrestricted Partners", all other Partners would be "Restricted Partners") shall have any beneficial interest in the New Issues Account;

(c) each Unrestricted Partner shall have a beneficial interest in the New Issues Account for any Fiscal Period in the proportion which such Unrestricted Partner's Capital Account as of the beginning of the Fiscal Period bore to the sum of the Capital Accounts of all Unrestricted Partners as of the beginning of such Fiscal Period;

(d) funds required to make a particular investment shall be transferred to the New Issues Account from the regular account of the Partnership; securities involved in the public distribution shall be purchased in the New Issues Account, held in the New Issues Account and eventually sold out of the New Issues Account or, if permissible, transferred to the regular account at fair market value as of the day of transfer as determined by the General Partner with such transfer being treated as a sale solely for purposes of computing Net Profits and Net Losses; if such securities are sold from the New Issues Account, the proceeds of the sale shall be transferred from the New Issues Account to the regular account of the Partnership;

(e) as of the last day of each Fiscal Period in which a particular investment or investments are held in the New Issues Account: (A) if the General Partner determines, at its discretion, that it is material and necessary to ensure the equitable treatment of Limited Partners, interest on the portion of the monies paid to purchase securities in the New Issues Account attributable to the Restricted Partners shall be debited to the Capital Accounts of the Unrestricted Partners in accordance with their beneficial interests in the New Issues Account at the broker's call rate charged by any of the Partnership's prime brokers during the period in that Fiscal Period that such Restricted Partners' funds from the regular account have been held in or made available to the New Issues Account; and such interest shall be credited to the Capital Accounts of

SK 184

all the Restricted Partners, both General and Limited, in the proportions which (i) each Restricted Partner's Capital Account as of the beginning of such Fiscal Period bore to (ii) the sum of the Capital Accounts of all Restricted Partners as of the beginning of such Fiscal Period and (B) any Net Profits or Net Losses during such Fiscal Period with respect to the New Issues Account shall be allocated to the Capital Accounts of the Unrestricted Partners in accordance with their beneficial interests in the New Issues Account during the Fiscal Period; and

(f) the determination of the General Partner as to whether a particular security is a new issue and as to whether a particular Partner falls within the proscription of the Conduct Rules shall be final.

## ARTICLE VII

### Allocation of Income for Tax Purposes

Section 7.01 <u>Ordinary Deductions and Ordinary Income</u>. For Federal income tax purposes, all items of deduction other than realized capital losses, and all items of income other than realized capital gains, shall be allocated, as nearly as is practicable, in accordance with the manner in which such items of deduction or income affected the amounts which were either deducted from or added to the Capital Accounts of the Partners.

Section 7.02 <u>Capital Gains and Losses on Contributed Securities</u>. For Federal income tax purposes, capital gains and losses (short and long-term, as the case may be) recognized by the Partnership on the disposition of securities contributed by a Partner to the capital of the Partnership shall be allocated in accordance with the provisions of Section 704(c) of the Internal Revenue Code of 1986, as amended.

Section 7.03 <u>Other Capital Gains and Losses</u>. Except as provided in Section 7.02, for Federal income tax purposes, capital gains and capital losses recognized in any Fiscal Period (short and long-term, as the case may be) shall be allocated, as nearly as is practicable, in accordance with the manner in which the aggregate of the increase or decrease in the value of the securities positions giving rise to such gains or losses was added to or deducted from the Capital Accounts of the Partners in such Fiscal Period and prior Fiscal Periods.

Section 7.04 <u>Allocation of Capital Gains to Retiring Partners</u>. Notwithstanding Section 7.03 above, in the event a Partner retires from the Partnership (including a required retirement under Section 8.04), the General Partner in its sole discretion may make a special allocation to said Partner for Federal income tax purposes of capital gains recognized by the Partnership in such a manner as will reduce the amount, if any, by which such Partner's Liquidating Share (as defined in Section 10.01) exceeds his Federal income tax basis in his interest in the Partnership before such allocation.

Section 7.05 <u>Death of a Partner</u>. If a Partner dies on a day other than the last day of a Fiscal Period, all items of income, gain, loss or deduction for such Fiscal Period allocable to such Partner pursuant to this Article VII shall be allocated to such Partner for Federal income tax purposes based on a fraction, the numerator of which shall be the number of days (including the date of death) that the Partner was alive during such Fiscal Period, and the denominator of which is the total number of days in such Fiscal Period. The balance of such items allocable to such Partner for such Fiscal Period shall be allocated to the deceased Partner's estate. Each Partner agrees that his legal representative, when filing any tax returns on his or his estate's behalf, will treat this allocation as effecting a termination of the taxable year of the Partnership for Federal income tax purposes in order to determine the deceased Partner's and his estate's respective shares of such items for any applicable reporting period.

SK 185

ARTICLE VIII

Withdrawals from Capital Accounts and Retirements

Section 8.01  Permissible Withdrawals.  A Partner may withdraw all or any part of its Capital Account (as defined in Section 5.01) in the manner and to the extent provided in Section 8.02.

Section 8.02  Withdrawal Procedure.

(a)  Upon giving at least 60 days' prior written notice, any Limited Partner may withdraw all or a portion of his Capital Account as of the last day of each calendar quarter; provided, however, that no Limited Partner may withdraw any capital from a specific capital contribution, nor any profits attributable to such capital contribution, until such capital contribution has been invested in the Partnership for at least 6 months. Any Limited Partner desiring to make a withdrawal from his Capital Account shall give written notice to the Partnership of (i) such Limited Partner's intention to make such withdrawal and (ii) the amount thereof. Notwithstanding the foregoing, the General Partner, in its sole discretion, may waive or modify any terms related to withdrawals for a Limited Partner pursuant to written agreement with the Limited Partner.

(b)  The General Partner may withdraw all or any part of its Capital Account as of the last day of each calendar quarter. If the amount so proposed to be withdrawn by the General Partner, would reduce the General Partner's Capital Account (computed without regard to any Net Losses) to less than 75% of the General Partner's initial capital contribution, the General Partner shall, no fewer than 75 days before the date of such withdrawal, give notice to the other Partners of such withdrawal.

(c)  A Partner withdrawing his entire Capital Account pursuant to this Section 8.02 shall be deemed to have retired as of the date of such withdrawal.

Section 8.03  Payment on Retirement.  Retirement of a Partner, whether by (a) withdrawal of such Partner's entire Capital Account, or (b) action of the General Partner under Section 8.04, shall be subject to the provisions of Article X.

Section 8.04  Mandatory Retirement of a Limited Partner.  The General Partner, in its sole discretion, may require any Limited Partner to retire from the Partnership at any time on not less than 10 days' notice, such retirement to be effective on the date specified in such notice. If the General Partner, in its sole discretion, deems it to be in the best interests of the Partnership to do so because the continued participation of any Limited Partner in the Partnership might cause the Partnership to violate any law, rule or regulation or expose the Partnership to the risk of litigation, arbitration, administrative proceedings or any similar action or proceeding, the General Partner may require such Limited Partner to retire from the Partnership at any time on no fewer than 5 days' notice, such retirement to be effective on the date specified in such notice. A Limited Partner who is so required to retire pursuant to this Section 8.04 shall be entitled to receive the value of his Liquidating Share (as defined in Section 10.01) computed as of the date on which such Limited Partner's retirement shall become effective.

Section 8.05  Distributions in Cash or in Kind.  All distributions to a Partner by reason of the Partner's withdrawal or retirement from the Partnership (including required retirements under Section 8.04) shall be made in cash or, in the discretion of the General Partner, in securities selected by the General Partner or partly in cash and partly in securities selected by the General Partner. If the General Partner determines to distribute securities in kind, such securities may be distributed directly to the withdrawing Partner or alternatively, distributed into a liquidating trust or liquidating account and sold by the Partnership for the benefit of the withdrawing Partner, in which case (i) payment to such Partner of that portion of his withdrawal attributable to such securities will be delayed until such time as such securities can be liquidated and (ii) the amount otherwise due such partner will be increased or

SK 186

decreased to reflect the performance of such securities through the date on which the liquidation of such securities is effected.

Section 8.06   Suspension of Withdrawals. The General Partner may declare a suspension of withdrawals for the whole or any part of any period when:

(i) any stock exchange on which a substantial part of securities owned by the Partnership are traded is closed, otherwise than for ordinary holidays, or dealings thereon are restricted or suspended; or

(ii) there exists any state of affairs which constitutes a state of emergency or period of extreme volatility or illiquidity as a result of which (a) disposal of a substantial part of the investments of the Partnership would not be reasonably practicable and might seriously prejudice the limited partners of the Partnership or (b) it is not reasonably practicable for the Partnership fairly to determine the value of its net assets.

ARTICLE IX

Term and Dissolution of Partnership

Section 9.01   Term of Partnership. The Partnership shall continue until December 31, 2025 and thereafter from year to year, unless dissolved as hereinafter provided.

Section 9.02   Dissolution of Partnership. The Partnership may be dissolved at any time by the General Partner, and thereupon the affairs of the Partnership shall be wound up by the General Partner. If the General Partner withdraws, becomes bankrupt or insolvent, or dissolves, the Partnership shall dissolve unless at such time there is another general partner who agrees to continue the business of the Partnership. If there is no remaining general partner who agrees to continue the business of the Partnership, the Partnership shall dissolve and thereupon be wound up as described in Section 9.03 (i) by the General Partner, or (ii) if the General Partner is unavailable, by the person or persons previously designated by the General Partner, or (iii) if the General Partner has made no such designation, by the person designated by Limited Partners owning a majority in interest of the Capital Accounts of all the Limited Partners as of the date of dissolution. Such person shall take all steps necessary or appropriate to wind up the affairs of the Partnership as promptly as practicable thereafter. Such person is hereinafter referred to as the "Liquidator". Neither the admission of Partners nor the retirement, bankruptcy, death, legal incapacity or disability of a Limited Partner shall dissolve the Partnership.

Section 9.03   Procedure on Winding Up.

(a) Upon the winding up of the Partnership, a full account of the assets and liabilities of the Partnership shall be taken and the assets of the Partnership shall be liquidated to the extent determined by the General Partner (or the Liquidator) and, as promptly as practicable, the assets or cash proceeds thereof shall be applied in the following order of priority:

(i) to the payment of all debts, taxes, obligations and liabilities of the Partnership including the expenses of liquidation; provided that the General Partner (or the Liquidator) may establish reserves for contingent liabilities of the Partnership in an amount (including estimated expenses, if any, in connection therewith) determined by the General Partner (or the Liquidator) and upon the satisfaction of such contingent liabilities the amounts, if any, remaining in such reserves shall be distributed as provided in subparagraphs (i) and (ii) of this Section 9.03(a); and

SK 187

      (ii) to the payment to Partners of their remaining Capital Accounts in proportion to the amounts thereof.

   (b) Distributions to a Partner pursuant to subparagraph (a)(ii) may be made in installments and shall be made in cash or, in the discretion of the General Partner (or the Liquidator), in securities selected by the General Partner (or the Liquidator), or partly in cash and partly in securities selected by the General Partner (or the Liquidator).

   (c) Upon the winding up of the Partnership, the name of the Partnership and its goodwill shall not be appraised, sold or otherwise liquidated but shall remain the exclusive property of the General Partner.

   (d) Within 90 days after the completion of the winding up of the Partnership, the General Partner (or the Liquidator) shall cause to be prepared and forwarded to each Partner a final statement and report of the Partnership, prepared in accordance with Section 11.05.

## ARTICLE X

### Payments to and by a Person
### Who Has Ceased to be a Partner

   Section 10.01 *Payments on Retirement, Death, Bankruptcy, Legal Incapacity or Disability of any Partner.* Subject to Section 8.06, within 30 days after (a) the date of retirement of a Partner hereunder or (b) in the discretion of the General Partner, the last day of the fiscal year during which a Partner died or became bankrupt, legally incapacitated or disabled, there shall be paid or distributed to such Partner or to the legal representative of such Partner, an amount in cash or, as determined by the General Partner, in securities selected by the General Partner or in cash and securities selected by the General Partner, equal in value to not less than 90% of the estimated amount of the Liquidating Share (as hereinafter defined) of such Partner. Promptly after the General Partner has determined the Capital Accounts of the Partners as of such date (which in the General Partner's discretion may be after the Partnership's independent public accountants have completed their examination thereof required by Section 11.04), the Partnership shall pay to such Partner or his representative, in cash and/or securities selected by the General Partner, the amount of the excess, if any, of the Liquidating Share of such Partner over the amount so paid, or such Partner or representative shall return and pay to the Partnership in cash the amount of the excess, if any, of the amount so paid over such Liquidating Share, in each case together with interest thereon, to the extent permitted by applicable law, from the applicable date referred to in clauses (a) and (b) above to the date of the payment at an annual rate equal to the broker's call rate charged by any of the Partnership's prime brokers. The term "Liquidating Share", when used with respect to any retiring, deceased, bankrupt, legally incapacitated or disabled Partner, shall mean the Capital Account of such Partner on the applicable date referred to in clauses (a) or (b) above.

   Section 10.02 *Reserve for Liabilities.* The right of any retired, deceased, bankrupt, legally incapacitated or disabled Partner (or their legal representative) to have distributed the Liquidating Share of such Partner shall in all instances be subject to retention by the Partnership of a reserve, in such amount as shall be determined by the General Partner, in its sole discretion, for Partnership liabilities and for other contingencies. Upon determination by the General Partner that such reserve (or portion thereof) is no longer required, there shall be distributed to such Partner his proportionate share of the reserve which is no longer required together with interest thereon at an annual rate equal to the broker's call rate charged by any of the Partnership's prime brokers.

SK 188

## ARTICLE XI

### Miscellaneous Provisions

Section 11.01 <u>Withholding Taxes</u>. Any taxes, fees or other charges the Partnership is required to withhold under applicable law with respect to any Partner shall be withheld by the Partnership (and paid to the appropriate governmental authorities) and shall be deducted from the Capital Account of such Partner as of the last day of the Fiscal Period or fiscal year with respect to which such amount is required to be withheld.

Section 11.02 <u>Designation of Attorney</u>. Each of the undersigned for himself hereby irrevocably constitutes and appoints the General Partner as his true and lawful attorney in his name, place and stead, to make, execute, sign and file:

    (a)    the Certificate of Limited Partnership and any amendment thereto or termination thereof which is or may be required by the laws of the State of Delaware;

    (b)    any certificate required by reason of the dissolution of the Partnership; and

    (c)    any application, certificate, report or similar instrument or document required to be submitted by or on behalf of the Partnership to any governmental or administrative agency or body, to any securities exchange, board of trade, clearing corporation or association or to any self-regulatory organization or trade association.

Said attorney is not by this Section 11.02 granted any authority on behalf of the undersigned to amend this Agreement.

Section 11.03 <u>Maintaining Books of Account</u>. Proper and complete books of account shall be kept at all times and shall be open to inspection by any Partner or their accredited representative at reasonable times during office hours.

Section 11.04 <u>Audit of Books</u>. The books of account and records of the Partnership shall be audited as of the end of each fiscal year by independent public accountants designated from time to time by the General Partner.

Section 11.05 <u>Reports to Partners</u>. The Partnership shall furnish to the Partners unaudited reports of the performance of the Partnership promptly after the end of each calendar quarter and the audited financial statements of the Partnership prepared by the Partnership's independent public accountants promptly after the end of each fiscal year. In addition, as promptly as practicable after the end of each fiscal year, the Partnership shall send to each Partner a report indicating the amounts representing their respective share of net long-term capital gain or loss, net short-term capital gain or loss and operating profit or loss for purposes of reporting such amounts for Federal income tax purposes.

Section 11.06 <u>Amendment of the Agreement</u>. This Agreement may be amended by the General Partner in its sole discretion in any manner that does not adversely affect any Limited Partner. This Agreement may also be amended by action taken by both (a) the General Partner and (b) the Limited Partners owning a majority in interest of the Capital Accounts owned by all of the Limited Partners at the time of the amendment, provided that such amendment does not discriminate among the Limited Partners.

Section 11.07 <u>Notices</u>. All notices to any Limited Partner provided for under this Agreement shall be in writing and shall be deemed to have been duly given as indicated if sent to the Limited Partner's address as set forth in the schedule in the files of the Partnership as of the date of such notice:

(a) if delivered in person or by courier, on the date it is delivered;

(b) if sent by certified or registered mail (airmail, if overseas) or the equivalent (return receipt requested), on the date that mail is delivered or its delivery is attempted;

(c) if sent by first-class mail, two days after the date of postmark;

(d) if sent by facsimile, on generation of confirmation; and

(e) if sent by electronic mail, upon receipt (by way of clarification, whether or not opened).

Notice by any Limited Partner to the Partnership or the General Partner shall be deemed effective upon receipt by the Partnership or the General Partner, as the case may be.

A Partner may change its address for purposes of this Agreement upon five (5) days' prior written notice to the General Partner.

Section 11.08 <u>Binding Effect of Agreement</u>. This Agreement, including Section 11.02 hereof, shall be binding on the successors, assigns and the legal representatives of each of the Partners.

Section 11.09 <u>Counterparts</u>. This Agreement may be executed in more than one counterpart with the same effect as if the Partners executing the several counterparts had all executed one document.

Section 11.10 <u>Bank Holding Company Subject Persons</u>. Notwithstanding any other provisions of this Agreement to the contrary:

(a) Solely for purposes of determining whether the requisite percentage in Limited Partnership interests have given any consent or approval or taken any other action under this Agreement, any person subject, directly or indirectly, to the restrictions of the Bank Holding Company Act of 1956, as amended (the "Act"), (a "Bank Holding Company Act Subject Person"), which owns a Limited Partnership interest and which at any time owns more than 4.9% in interests of all Limited Partnership interests shall be deemed to have only 4.9% of the Limited Partnership interests then held by all of the Limited Partners (after giving effect to limitations imposed by this Section 11.10 on all such Limited Partners); and such Limited Partnership interests in excess of said 4.9% limit then held by Bank Holding Company Act Subject Persons shall be deemed held by the Limited Partners who are not Bank Holding Company Act Subject Persons (the "Non-Subject Limited Partners"), pro rata in accordance with their then respective Limited Partnership interests.

(b) Except as specifically provided herein, a Limited Partner which is a Bank Holding Company Act Subject Person shall not be entitled to exercise any right to consent to actions to be taken with respect to the Partnership, including any rights conferred by the Act; such right to consent shall be deemed granted to the Non-Subject Limited Partners, pro rata in accordance with their then respective Limited Partnership interests;

(c) Promptly upon receipt from any Partner of a request for withdrawal pursuant to Article VIII and at least 5 days prior to the withdrawal by the General Partner or the involuntary withdrawal by a Limited Partner of any portion of its Capital Account, if such withdrawal would result in a Bank Holding Company Act Subject Person owning more than 24.9% in interest of the aggregate Limited Partnership interests (an "Affected BHCA Subject Person"), the General Partner shall so notify each Affected BHCA Subject Person, and each of them shall have the right to withdraw promptly, at the time of the withdrawal giving rise thereto, such portion of its Capital Account, after giving effect to any other withdrawals

(including withdrawals by other Affected BHCA Subject Persons), as shall be required to reduce such Affected BHCA Subject Person's Limited Partnership interest to no more than 24.9%.

(d) The General Partner shall give at least 15 days' prior written notice to each Limited Partner which is a Bank Holding Company Act Subject Person of any proposal to distribute property in kind to such Limited Partner and the proposed date of such distribution, and shall not make any such distribution in kind to such Limited Partner to the extent that such Limited Partner advises the General Partner in writing at least 10 days prior to the date set forth in such notice for such distribution that such distribution in kind could reasonably be expected to cause it to violate the Act; rather the General Partner shall cause such distributions in kind which would otherwise have been distributed to such Limited Partner to be sold and the proceeds of such sale, net of any costs and expenses relating to such sale, shall be distributed to such Limited Partner in full satisfaction of the Partnership's distribution obligation; and

(e) Any Limited Partner that is a Bank Holding Company Act Subject Person who wishes to be treated as such under this Agreement shall give the General Partner written notice thereof, which notice may not be revoked without 90 days' prior written notice to the General Partner.

SK 191

IN WITNESS WHEREOF, the undersigned has hereunto signed this Agreement on the date set forth below.

**General Partner:**

WOOD RIVER ASSOCIATES, L.L.C.

By: _____
    Name:
    Title:

Date of Signature:_____

**Limited Partner:**

_____
Type or print in name of Limited Partner

_____
Signature of Limited Partner or Authorized Signatory

_____
Type or print in name and title of Authorized Signatory

Date of Signature:_____

14

SK 192

IN WITNESS WHEREOF, the undersigned has hereunto signed this Agreement on the date set forth below.

**General Partner:**

WOOD RIVER ASSOCIATES, L.L.C.

By: _____
    Name:
    Title:

Date of Signature:_____

**Limited Partner:**

_____
Type or print in name of Limited Partner

_____
Signature of Limited Partner or Authorized Signatory

_____
Type or print in name and title of Authorized Signatory

Date of Signature:_____

02302.0003 #317910v3