# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

- v. -                                      :

JOHN H. WHITTIER,                           :

                Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - x



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

**INDICTMENT**

07 Cr. _____

07 CRIM.    087

## COUNT ONE

(Securities Fraud - Endwave)

The Grand Jury charges:

### Relevant Persons and Entities

1.    At all times relevant to this Indictment, Wood River Partners, L.P. ("Wood River U.S.") was a limited partnership organized under the laws of the State of Delaware.  Wood River U.S. purported to be a hedge fund with offices located in San Francisco and Ketchum, Idaho.  JOHN H. WHITTIER, the defendant, founded Wood River U.S. in or about February 2003.

2.    At all times relevant to this Indictment, Wood River Associates, LLC ("Wood River Associates") was a limited liability company organized under the laws of the State of Delaware, with offices in San Francisco and Ketchum, Idaho.  Wood River Associates served as the general partner of Wood River Partners, L.P.

3.    From in or about June 2005 through in or about October 2005, Wood River Partners Offshore, Ltd. ("Wood River Cayman") was a Cayman Islands general business

corporation. Wood River Cayman purported to be an "offshore" hedge fund. The fund was launched by JOHN H. WHITTIER, the defendant, on or about July 1, 2005.

4.    At all times relevant to this Indictment, Wood River Capital Management, L.L.C. was a limited liability company organized under the laws of the State of Delaware, with offices in San Francisco and Ketchum, Idaho. Wood River Capital Management, L.L.C. was the investment manager for the Wood River U.S. and the Wood River Cayman hedge funds.

5.    At all times relevant to this Indictment, JOHN H. WHITTIER, the defendant, owned and controlled Wood River Capital Management, L.L.C., the investment adviser to the Wood River U.S. and Wood River Cayman hedge funds. WHITTIER was its majority shareholder and principal executive. WHITTIER was also the principal and managing member of Wood River Associates. WHITTIER was the President of Wood River Cayman and was the only non-Cayman Island based director. WHITTIER also served as a money manager for portfolios owned by four other entities. Prior to working as a hedge fund manager, WHITTIER was employed as a stock analyst for an investment bank for several years. WHITTIER resided in Hailey, Idaho.

6.    At all times relevant to this Indictment, neither JOHN H. WHITTER, the defendant, nor Wood River Capital Management L.L.C. were registered as investment advisers under Section 203 of the Investment Advisers Act of 1940. At all times relevant to this Indictment, Wood River Capital Management L.L.C., Wood River U.S., and Wood River Cayman were not registered as investment companies under Section 8 of the Investment Company Act of 1940.

2

7.    At all times relevant to this Indictment, Endwave Corporation ("Endwave") was a corporation organized under the laws of the State of Delaware, and was headquartered in Sunnyvale, California.  Endwave designed, manufactured and marketed radio frequency, or RF, modules that enable the transmission, reception and processing of high frequency signals in telecommunication networks, defense electronics and homeland security systems.  At all times relevant to this Indictment, Endwave's common stock was registered with the Securities and Exchange Commission ("SEC") pursuant to Section 12(g) of the Securities Exchange Act of 1934, 15 U.S.C. § 78l(g).  At all times relevant to this Indictment, Endwave's common stock traded on the NASDAQ National Market under the ticker symbol "ENWV."

8.    At all times relevant to this Indictment, MediaBay, Inc. ("MediaBay") was a corporation organized under the laws of the State of Florida, headquartered in Cedar Knolls, New Jersey.  MediaBay was a digital media and publishing company specializing in spoken word audio entertainment.  At all times relevant to this Indictment, MediaBay's common stock was registered with the SEC pursuant to Section 12(g) of the Securities Exchange Act of 1934, 15 U.S.C. § 78l(g).  At all times relevant to this Indictment, MediaBay's common stock traded on the NASDAQ National Market under the ticker symbol "MBAY."

### The Scheme to Defraud

9.    From in or about Fall 2004 through in or about September 2005, JOHN H. WHITTIER, the defendant, schemed to defraud the Wood River U.S. and Wood River Cayman hedge fund investors and the general investing public by (1) acquiring beneficial ownership of greater than 70 percent of the common stock of a publicly traded company, Endwave, without

3

disclosing WHITTIER's beneficial ownership interest through required filings with the SEC; (2)

falsely representing to investors in the Wood River U.S. and the Wood River Cayman funds that

WHITTIER pursued a broad investment strategy and that no investment would ever constitute

more than approximately ten percent of the Wood River U.S. and Wood River Cayman holdings,

when in truth and in fact, as WHITTIER well knew, the holdings in one security, Endwave, far

exceeded ten percent of the Wood River U.S. and Wood River Cayman holdings; and (3) falsely

representing to the investors in the Wood River U.S. hedge fund that the fund was audited by

outside auditors when in truth and in fact, as WHITTIER well knew, the Wood River U.S. hedge

fund was not being audited and never was audited.

      10.    To execute the scheme, JOHN H. WHITTIER, the defendant, caused

Wood River U.S., Wood River Cayman, and certain managed portfolios under his control to

purchase hundreds of thousands of shares of Endwave common stock over a number of months

beginning in or about Fall 2004. By in or about the Summer of 2005, WHITTIER had amassed

holdings in excess of 60 percent of the outstanding shares of common stock of Endwave. By in

or about mid-September 2005, WHITTIER had obtained beneficial control of approximately 80

percent of the outstanding shares of common stock of Endwave. Nevertheless, WHITTIER

knowingly and purposefully failed to make the requisite filings with the SEC, which would have

disclosed to the public that he beneficially controlled in excess of five percent and ten percent of

Endwave, and that would have disclosed that WHITTIER qualified as an affiliate of the

company, thereby subjecting him to certain limitations on trading in Endwave stock.

WHITTIER also failed to keep his promise to the investors in the Wood River U.S. and Wood

River Cayman hedge funds that, among other things, WHITTIER would not invest more than

approximately ten percent of the hedge funds' holdings in any one stock. To the contrary, by in or about the end of August 2005, WHITTIER's investments in Endwave accounted for more than approximately eighty-five percent of Wood River U.S.'s funds under management.

### The Formation of the Wood River Hedge Funds

11.    In or about February 2003, JOHN H. WHITTIER, the defendant, opened the Wood River U.S. hedge fund, obtained money from outside investors, and began investing on behalf of Wood River U.S.'s limited partners. Through the end of 2004, the limited partner investors had invested approximately $35 million with WHITTIER and Wood River U.S.

12.    In or about June 2004, JOHN H. WHITTIER, the defendant, caused Wood River U.S. to issue a Confidential Private Offering Memorandum (the "Offering Memorandum") which set forth the Wood River U.S. investment program, and certain terms and obligations. The Offering Memorandum promised investors certain financial reports on the performance of their investments. It stated that "American Express Tax & Business Services, Inc." ("AMEX TBS") "ha[d] been appointed" as its auditor and represented: (1) that the Wood River U.S. fund's books and records will be audited at the end of each fiscal year by a firm of certified public accountants selected by the General Partner, and (2) the limited partners will receive audited year-end financial statements, including a statement of profit or loss for such fiscal year. The Offering Memorandum further stated that, in general, the Partnership's financial statements would be prepared in accordance with generally accepted accounting principles ("GAAP").

13.    The Offering Memorandum also stated that the Wood River U.S. hedge fund would be broadly diversified, and that no single "long position" would comprise more than

5

ten percent of the fund's portfolio.[1]  In particular, the first page of the Offering Memorandum explained that:

> The Partnership seeks to achieve capital appreciation through the combination of long and short equity investments in a diversified number of industries, with a particular emphasis in media and communications, technology and technology-related companies.

The Offering Memorandum further stated that the portfolio would be "broad based" and would "typically hold 30 to 40 long positions." The Offering Memorandum capped investment in any one long position stating, "Maximum individual long positions in the portfolio typically are capped at 10% of the original cost."

14.     JOHN H. WHITTIER, the defendant, prepared and caused Wood River employees to prepare marketing materials describing the Wood River U.S. hedge fund. WHITTIER used these marketing materials for presentations at marketing meetings attended by potential new investors and intermediaries, such as finders and brokers, who sought additional investors to invest in the Wood River U.S. hedge fund in exchange for commissions. WHITTIER made presentations at marketing meetings in various places including meetings held in New York, New York.

15.     These marketing materials included a section entitled "Organizational Chart," which listed the names of employees. This chart also listed "Service Providers to Wood River Capital Management" including "American Express Tax & Business Services Inc. Independent Auditors." This reference gave the misleading appearance that AMEX TBS was auditing the Wood River U.S. hedge fund.

---

[1]     A "long position" means securities owned by an investor.

6

16.    These marketing materials also claimed that the Wood River U.S. hedge fund's investment portfolio would be broadly diversified. These marketing materials included a section titled "Portfolio Balance & Exposure." This section falsely made the following claims:

| | |
|---|---|
| Portfolio Balance | 30-50 Longs / 25-40 Shorts |
| Position Size Range (At Inception) | Longs: 1 -7% / Shorts: 1-5% |
| Max Position Size (Appreciated Value) | 8 to 9%. |

17.    In or about Fall 2004, JOHN H. WHITTIER, the defendant, met with representatives of a corporate entity ("Company-1") at Company-1's office in New York, New York, to discuss the possibility of Company-1 hiring WHITTIER to separately invest and manage an investment account on its behalf. Thereafter, WHITTIER was hired by Company-1 to separately invest and manage a multi-million dollar account on its behalf ("Managed Account #1").

18.    Subsequently, in or about early 2005, JOHN H. WHITTIER, the defendant, was hired by three additional corporate entities to separately invest and manage additional accounts containing millions of dollars in funds on behalf of the corporate entities (collectively the "Managed Accounts"). Generally, WHITTIER was directed and agreed to invest the funds contained in the Managed Accounts in the same manner he invested the funds in the Wood River U.S. hedge fund.

19.    In or about Summer 2005, JOHN H. WHITTIER, the defendant, launched the Wood River Cayman hedge fund. In or about June 2005, WHITTIER issued a "Confidential Explanatory Memorandum" (the "Explanatory Memorandum") describing the investment program for Wood River Cayman. The Explanatory Memorandum contained provisions similar to those in the Offering Memorandum for Wood River U.S., except that:

7

(1) the Explanatory Memorandum stated that Wood River Cayman would "typically have 40 to 50 long positions" instead of the "30 to 40" long positions described for the Wood River U.S. fund; (2) it provided that "Maximum individual long positions in the portfolio will typically be capped at 10%; short positions will typically be capped at 5% in each case measured at the time of investment," and (3) it identified a different auditor and other different service providers. Investors provided approximately $55 million to WHITTIER to invest through the Wood River Cayman fund.

20.     By in or about Summer 2005, investors had provided a total of approximately $127 million to invest through Wood River U.S., the domestic fund.

### Relevant Statutes, Rules & Regulations

21.     At all times relevant to this Indictment, Section 13(d)(1) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78m(d)(1), and Rule 13d-1 promulgated thereunder, 17 C.F.R. § 240.13d-1, required that, subject to certain limitations not applicable here, any person who acquired beneficial ownership of more than five percent of the stock of an issuer whose securities were registered pursuant to Section 12 of the Exchange Act file a statement with the SEC describing, among other things, the number of shares beneficially owned.

22.     At all times relevant to this Indictment, Section 16(a)(1) of the Exchange Act, 15 U.S.C. § 78p(a)(1), and Rules 16a-1 through 16a-13 of the rules and regulations of the SEC, 17 C.F.R. §§ 240.16a-1 through 240.16a-13, required that, subject to certain limitations not applicable here, any person who acquired beneficial ownership of more than ten percent of the stock of an issuer whose securities were registered pursuant to Section 12 of the Exchange

Act file a statement with the SEC describing, among other things, the number of shares beneficially owned.

23.     At all times relevant to this Indictment, Rule 13d-3 of the rules and regulations of the SEC, 17 C.F.R. § 240.13d-3, provided that a "beneficial owner of a security" included any person who, directly or indirectly, had investment power, which included the power to dispose, or to direct the disposition of, such security.  At all time relevant to this Indictment, JOHN H. WHITTIER, the defendant, had investment power with respect to the Wood River U.S. fund, the Wood River Cayman fund, and the four Managed Accounts, including the power to acquire and dispose of securities on behalf of the funds and the Managed Accounts.

### The Misrepresentations Concerning Audits

24.     Contrary to the representations contained in the Offering Memorandum and list of Service Providers, and the representations of JOHN H. WHITTIER, the defendant, AMEX TBS never performed any audit work for Wood River U.S.  In fact, AMEX TBS does not perform audit work at all.

25.     An affiliate of AMEX TBS, Goldstein Golub Kessler ("GGK"), does perform audit work for certain AMEX TBS customers.  However, although GGK sent a signed offer to JOHN H. WHITTIER, the defendant, to become the auditor for Wood River U.S., WHITTIER never counter-signed the offer.  GGK never performed any audit work for Wood River U.S.

26.     At various times, investors and potential investors asked to receive copies of the Wood River U.S. fund's audited financial statements for 2004.  JOHN H. WHITTIER, the defendant, falsely informed investors and potential investors that the audit had not been

9

completed when, in truth and in fact, as WHITTIER well knew, the Wood River U.S. hedge fund was not being audited.

### Whittier's Undisclosed Beneficial Ownership of Endwave Stock

27.      From in or about February 2004 through in or about September 2005, JOHN H. WHITTIER, the defendant, accumulated Endwave common stock for the Wood River U.S. hedge fund, the Wood River Cayman hedge fund, and four managed accounts, resulting in WHITTIER ultimately acquiring beneficial ownership of more than 70 percent of the outstanding common stock of Endwave. Despite WHITTIER's knowledge that he was required to disclose through SEC filings his beneficial ownership of such a large percentage of Endwave common stock, WHITTIER chose not to disclose his beneficial ownership through the required SEC filings in an effort to defraud the investing public, and hide the truth regarding the size of the Wood River U.S. and Wood River Cayman holdings in Endwave from the hedge fund investors.

28.      In or about February 2004, JOHN H. WHITTIER, the defendant, began purchasing Endwave common stock for the Wood River U.S. hedge fund. By in or about late July 2004, through various accounts controlled by WHITTIER, WHITTIER had acquired beneficial ownership of more than approximately 500,000 shares, or approximately five percent, of Endwave's outstanding common stock. However, WHITTIER, in order to hide his beneficial ownership interest, knowingly failed to make any of the required filings with the SEC disclosing his beneficial ownership interest in Endwave.

29.      In or about late July 2004, Endwave shares were trading at approximately $9 per share, making Wood River U.S.'s position in Endwave worth approximately $4.5 million.

10

Through the end of 2004, Wood River U.S. raised a total of approximately $35 million from investors. While Wood River U.S.'s position in Endwave stock exceeded the ten percent cap on long positions that JOHN H. WHITTIER, the defendant, had promised the hedge fund investors, WHITTIER failed to disclose to the investors Wood River U.S.'s concentrated position in Endwave.

30. By in or about late August 2004, JOHN H. WHITTIER, the defendant, through various accounts controlled by WHITTIER, had acquired beneficial ownership of more than approximately 1,000,000 shares, or more than approximately 10 percent, of Endwave's outstanding common stock. At the time, Endwave stock was trading at approximately $12 per share. In order to hide his beneficial ownership interest, WHITTIER knowingly failed to make any of the required filings with the SEC disclosing his beneficial ownership interest in Endwave.

31. In or about December 2004, JOHN H. WHITTIER, the defendant, began investing and managing a separate account from the Wood River U.S. hedge fund, Managed Account #1, on behalf of Company-1. WHITTIER proceeded to acquire additional Endwave shares through Managed Account #1. In early 2005, WHITTIER began investing and managing two additional separate accounts on behalf of two additional corporate entities ("Managed Account #2" and "Managed Account #3"). WHITTIER acquired beneficial ownership of additional Endwave shares through Managed Accounts #2 and #3 as well, but knowingly failed to make any of the required SEC filings disclosing his ownership interest.

32. During the time that JOHN H. WHITTIER, the defendant, accumulated Endwave stock for the various funds for which he traded, the price of Endwave stock increased. In or about May 2005, Endwave common stock was trading around $30 per share. In or about

11

June 2005, Endwave's stock price was more than approximately $40 per share. Wood River U.S.'s position in Endwave accounted for more than 60 percent of Wood River U.S.'s funds under management. While Wood River U.S.'s position in Endwave far exceeded the ten percent cap on Wood River U.S.'s "long positions" that WHITTIER had represented to the hedge fund investors, WHITTIER failed to disclose to the hedge fund investors that the Wood River U.S. fund was highly concentrated in a single stock, and did not hold a diversified portfolio of investments.

33.    Through July 2005, JOHN H. WHITTIER, the defendant, continued to acquire additional Endwave shares for the Wood River U.S. hedge fund. In addition, in July 2005, WHITTIER launched the Wood River Cayman hedge fund and began acquiring Endwave common stock on behalf of that fund as well. By in or about mid-July 2005, WHITTIER had acquired beneficial ownership of more than approximately 60 percent of the outstanding common stock of Endwave, and Endwave stock was trading above approximately $50 per share.

34.    In acquiring beneficial ownership of millions of Endwave shares, JOHN H. WHITTIER, the defendant, utilized multiple executing brokers[2] and prime brokers,[3] including executing brokers and prime brokers located in New York, New York.

---

[2] An "executing broker" is the broker or dealer that takes a trading order from the client and then carries out the order.

[3] A "prime broker" is generally a large bank or securities firm that provides custody for client assets (typically securities and cash). Prime brokers may also provide administrative and back office support to hedge funds, clearing and research services, as well as supply the stocks a fund manager borrows to sell short.

12

35.    By in or about early August 2005, through the Wood River U.S. and Wood River Cayman hedge funds, and through the Managed Accounts, JOHN H. WHITTIER, the defendant, was the beneficial owner of more than approximately 7,000,000 shares of Endwave common stock, and more than approximately 70 percent of the outstanding common stock of Endwave. Nevertheless, WHITTIER knowingly failed to make any filings with the SEC disclosing his ownership interest in Endwave in order to hide his beneficial ownership interest from the investing public.

### False Statements to Attorneys Concerning MediaBay Holdings

36.    JOHN H. WHITTIER, the defendant, failed to make the filings disclosing his beneficial ownership of Endwave common stock even though he knew, based on his training and experience, that such filings were required. In addition, WHITTIER received contemporaneous reinforcement of the filing requirements during the fraudulent scheme. In or about July 2005, WHITTIER was instructed by Wood River U.S.'s securities law attorneys about the beneficial ownership filing requirements.

37.    On or about July 14, 2005, JOHN H. WHITTIER, the defendant, contacted Wood River U.S.'s securities law attorneys by email in New York, New York. In an email message, WHITTIER informed an attorney that Wood River had purchased approximately 17 percent of the outstanding shares of MediaBay the previous day. WHITTIER noted that the seller of the shares had "already filed with the SEC that he sold his shares," and asked for guidance concerning filings WHITTIER was required to make following the purchase. WHITTIER also stated that he was purchasing more stock on the open market that day.

13

38.    On or about July 14, 2005, in response to the inquiry from JOHN H. WHITTIER, the defendant, a securities lawyer communicated to WHITTIER the consequences and legal ramifications of owning more than ten percent of the outstanding common stock of a publicly traded company.

39.    The previous day, on or about July 13, 2005, JOHN H. WHITTIER, the defendant, had caused the purchase of approximately 4,500,000 shares of MediaBay common stock for three Managed Accounts. That same day, on or about July 13, 2005, WHITTIER caused the purchase of approximately 2,263,114 shares of MediaBay common stock for the Wood River U.S. hedge fund. The following day, on or about July 14, 2005, WHITTIER caused the purchase of approximately 1,712,200 shares of MediaBay common stock for the Wood River U.S. hedge fund. In total, over the two-day period, WHITTIER caused various funds he controlled to purchase approximately 8,475,314 shares of MediaBay common stock.

40.    According to a MediaBay filing made with the SEC on or about May 16, 2005, at the time MediaBay had approximately 35,406,151 shares outstanding. The 8,475,314 MediaBay shares beneficially controlled by JOHN H. WHITTIER, the defendant, following the purchases on or about July 13 and July 14, 2005, constituted approximately 23 percent of MediaBay's outstanding common stock.

41.    On or about July 15, 2005, JOHN H. WHITTIER, the defendant, falsely informed the securities lawyers that Wood River U.S. and the Managed Accounts had not purchased 17 percent of MediaBay's stock, but only approximately 9.6 percent of MediaBay's stock. WHITTIER falsely claimed that the larger number was the result of his considering the purchase of additional shares of MediaBay for the Managed Accounts, but that WHITTIER

14

ultimately decided not to make those purchases.  In truth and in fact, as WHITTIER well knew, WHITTIER had become the beneficial owner of more than ten percent of MediaBay's stock through purchases on behalf of Wood River U.S. and the Managed Accounts.  However, WHITTIER failed to disclose to the SEC and the investing public that WHITTIER was the beneficial owner of more than ten percent of MediaBay's common stock.

      42.    On or about July 25, 2005, JOHN H. WHITTIER, the defendant, caused his securities attorneys in New York, New York, to file a Schedule 13G form with the SEC disclosing that WHITTIER and Wood River U.S. owned approximately 9.5 percent of MediaBay's common stock.  However, as WHITTIER well knew, this was false as WHITTIER was the beneficial owner of more than ten percent of MediaBay's common stock.  WHITTIER failed to accurately and truthfully report his total beneficial ownership exceeding ten percent of MediaBay stock to the SEC in order to avoid disclosing his true holdings to the market and to avoid the additional restrictions placed on individuals who beneficially control more than ten percent of a publicly traded company.

### The Collapse of the Wood River Hedge Funds

      43.    From in or about July 2005 through in or about September 2005, the price of Endwave stock fell dramatically.  In or about mid-September 2005, the price of Endwave stock was approximately $31 per share.

      44.    In or about mid-September 2005, Company-1, which owned Managed Account #1, terminated its relationship with JOHN H. WHITTIER, the defendant, because of concerns raised by problematic trades, and WHITTIER's suspicious trading activity in Endwave stock.  Company-1 then proceeded to liquidate its Endwave holdings.

15

45.    The dramatic drop in Endwave's stock price caused the value of the Wood River U.S. and Wood River Cayman hedge fund portfolios to drop, and triggered margin calls by certain of the hedge funds' brokers. Because such a large portion of the Wood River U.S. and Wood River Cayman funds' assets was invested in Endwave stock, JOHN H. WHITTIER, the defendant, was unable to meet certain of these margin calls, and various brokers began liquidating the hedge funds' Endwave stock positions.

46.    Around the same time, in or about September 2005, JOHN H. WHITTIER, the defendant, informed investors that he could not pay redemption requests because of liquidity problems. By in or about October 2005, WHITTIER and the Wood River funds were no longer doing business. As a result, investors in the Wood River U.S. and Wood River Cayman hedge funds lost at least approximately $88 million.

## STATUTORY ALLEGATION

47.    From in or about Fall 2004 through in or about September 2005, in the Southern District of New York and elsewhere, JOHN H. WHITTIER, the defendant, unlawfully, willfully, and knowingly, directly and indirectly, in connection with the purchase and sale of securities, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in transactions, acts, practices, and courses of business which operated and would

16

operate as a fraud and deceit upon investors in the Wood River U.S. and Wood River Cayman

hedge funds, and the general investing public.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations,
Section 240.10b-5; Title 18, United States Code, Section 2).

## COUNT TWO

(Failure to Disclose Ownership in Excess of Five Percent of Endwave Stock)

The Grand Jury further alleges:

48.    The allegations contained in paragraphs 1 through 46 above are hereby

repeated, realleged and incorporated by reference as if fully set forth herein.

49.    From in or about mid-July 2004 through in or about September 2005, in

the Southern District of New York and elsewhere, JOHN H. WHITTIER, the defendant, a

person who acquired directly and indirectly the beneficial ownership of an equity security of a

class which is registered pursuant to section 78l of Title 15 of the United States Code, and was

directly and indirectly the beneficial owner of more than 5 per centum of such class, to wit,

common stock of Endwave Corporation, unlawfully, willfully, and knowingly failed to send to

the issuer of the security at its principal executive office, send to each exchange where the

security is traded, and file with the Securities and Exchange Commission, a statement containing

such information, and such additional information, as the Commission by rules and regulations

prescribed as necessary and appropriate in the public interest and for the protection of investors,

to wit, WHITTIER intentionally failed to disclose his beneficial ownership interest in excess of

five percent in Endwave common stock.

(Title 15, United States Code, Sections 78m(d) & 78ff;
Title 17, Code of Federal Regulations, Section 240.13d-1).

17

## COUNT THREE

(Failure to Disclose Ownership in Excess of Ten Percent of Endwave Stock)

The Grand Jury further alleges:

50.    The allegations contained in paragraphs 1 through 46 above are hereby repeated, realleged and incorporated by reference as if fully set forth herein.

51.    From in or about August 2004 through in or about September 2005, in the Southern District of New York and elsewhere, JOHN H. WHITTIER, the defendant, a person who was directly and indirectly the beneficial owner of more than 10 percent of a class of an equity security which was registered pursuant to section 78l of Title 15 of the United States Code, to wit, common stock of Endwave Corporation, unlawfully, willfully, and knowingly failed to file the statements required by subsection (a) of Section 16 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78p(a), with the Securities and Exchange Commission and with the national securities exchange on which the security was registered, to wit, WHITTIER intentionally failed to disclose his beneficial ownership interest in excess of ten percent in Endwave common stock.

(Title 15, United States Code, Sections 78p(a) & 78ff;
Title 17, Code of Federal Regulations, Sections 240.16a-1 through 240.16a-13).

## COUNT FOUR

(Failure to Disclose Ownership in Excess of Ten Percent of MediaBay Stock)

The Grand Jury further alleges:

52.    The allegations contained in paragraphs 1 through 23, and 36 through 42 above are hereby repeated, realleged and incorporated by reference as if fully set forth herein.

18

53.    In or about July 2005, JOHN H. WHITTIER, the defendant, accumulated MediaBay common stock for the Wood River U.S. hedge fund and certain Managed Accounts, resulting in WHITTIER ultimately acquiring beneficial ownership of more than 20 percent of the outstanding common stock of MediaBay. Despite WHITTIER's knowledge that he was required to disclose through SEC filings his beneficial ownership of such a large percentage of MediaBay common stock, WHITTIER chose not to disclose his beneficial ownership through the required SEC filings in an effort to defraud the investing public, and hide from the hedge fund investors the truth regarding the size of the Wood River U.S. holdings in MediaBay.

54.    From in or about mid-July 2005 through in or about September 2005, in the Southern District of New York and elsewhere, JOHN H. WHITTIER, the defendant, a person who was directly and indirectly the beneficial owner of more than 10 percent of a class of an equity security which was registered pursuant to section 78l of Title 15 of the United States Code, to wit, common stock of MediaBay, Inc., unlawfully, willfully, and knowingly failed to file the statements required by subsection (a) of Section 16 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78p(a), with the Securities and Exchange Commission and with the national securities exchange on which the security was registered, to wit, WHITTIER intentionally failed to disclose his beneficial ownership interest in excess of ten percent in MediaBay common stock.

(Title 15, United States Code, Sections 78p(a) & 78ff;
Title 17, Code of Federal Regulations, Sections 240.16a-1 through 240.16a-13).

19

## FORFEITURE ALLEGATIONS

55.     As a result of committing one or more of the securities fraud offenses alleged in Counts One through Four of this Indictment, in violation of Title 15, United States Code, Sections 78j(b) & 78ff, 78m(d) & 78ff, and 78p(a) & 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5, 240.13d-1, and 240.16a-1 through 240.16a-13, JOHN H. WHITTIER, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses.

### Substitute Asset Provision

56.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

        a.     cannot be located upon the exercise of due diligence;

        b.     has been transferred or sold to, or deposited with, a third person;

        c.     has been placed beyond the jurisdiction of the Court;

        d.     has been substantially diminished in value; or

        c.     has been commingled with other property which cannot be

subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b) and

Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said

defendant.

(Title 18, United States Code, Sections 981(a)(1)(C) and 982, Title 21, United States Code,
Section 853, and Title 28, United States Code, Section 2461).


Foreperson                                        MICHAEL J. GARCIA
                                                  United States Attorney

21

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

JOHN H. WHITTIER,

Defendant.

### INDICTMENT

07 Cr. ___ (JSR)

(15 U.S.C. §§ 78j(b) & 78ff, 17 C.F.R. §
240.10b-5, and 18 U.S.C. § 2; 15 U.S.C.
§§ 78m(d) & 78ff, and 17 C.F.R.
§ 240.13d-1; and 15 U.S.C. §§ 78p(a) &
78ff; 17 C.F.R. §§ 240.16a-1 through
240.16a-13.)

_____
                          Foreperson

*7/.07 Filed cla dictment. A/w clesured.*
*Sf Mag. Judge Katj*