# EXHIBIT H

Not Reported in F.Supp.  Page 1
Not Reported in F.Supp., 1994 WL 97104 (S.D.N.Y.), RICO Bus.Disp.Guide 8536
**(Cite as: Not Reported in F.Supp.)**

▷
Friedman v. Hartmann
S.D.N.Y.,1994.

United States District Court, S.D. New York.
Jay FRIEDMAN, Tamiko Shibamura, Shin Nagase, and Realty Group International (U.S.A.), Inc., Plaintiffs,
v.
Robert D. HARTMANN, Gerard J. Muro, Kathy K. Priest, Snyder & Priest, Real Estate Plus, Inc., Harley Associates, Ltd., 714 Main Associates, Colony Beach Associates, and Newbrite Associates, Defendants.
No. 91 CIV. 1523(PKL).

March 23, 1994.

Werner & Kennedy, New York City (Austin V. Campriello, Michael Marcus, of counsel), for plaintiffs.
D'Amato & Lynch, New York City (Robert E. Kushner, *of counsel* ), Paul Weiss, Rifkind, Wharton & Garrison, New York City (Max Gitter, *of counsel* ), for defendants Kathy K. Priest and Snyder & Priest.

*ORDER AND OPINION*
LEISURE, *District Judge:*
*1 Defendants Kathy K. Priest and Snyder & Priest (collectively the "Priest Defendants") move to dismiss the claims against them pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6). Plaintiff's move to amend their complaint pursuant to Fed.R.Civ.P. 15(a). For the reasons stated below (1) the Priest Defendants' motion to dismiss the claims against them is denied and (2) the plaintiffs' motion to amend their complaint is denied.

BACKGROUND

I. THE AMENDED COMPLAINT

This action arises out of an aborted real estate transaction. The Amended Complaint states claims for fraud; violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68; conspiracy to violate RICO; conversion; breach of contract; money had and received/unjust enrichment; and breach of fiduciary duty. Plaintiffs seek, *inter alia,* compensatory damages of $600,000, treble damages under RICO, and punitive damages. The Priest Defendants are defendants to the fraud and RICO claims.

According to the Amended Complaint plaintiffs Jay Friedman, Tamiko Shibamura, and Shin Nagase were the sole shareholders of plaintiff Realty Group International (U.S.A.), Inc. ("RGI"), a real estate brokerage concern. Defendant Gerard J. Muro was a licensed salesperson employed by RGI. Defendant Robert D. Hartmann had an ownership interest in defendant Real Estate Plus, Inc. ("Real Estate Plus"). He was also, along with Steven Witten, a general partner of defendant Newbrite Associates ("Newbrite") and a partner in defendants 714 Main Associates and Colony Beach Associates.

Plaintiffs allege, *inter alia,* that Hartmann secured their agreement to invest as limited partners in partnerships that were to purchase and develop a number of commercial properties located in Connecticut. These properties included the Newbrite Plaza shopping center, located in New Britain, Connecticut (the "Newbrite Shopping Center"). Plaintiffs allege that defendants Hartmann, 714 Main Associates, and Colony Beach Associates obtained $600,000 from plaintiffs by knowingly misrepresenting and actively concealing material facts concerning the purchase of the Newbrite Shopping Center.

According to the Amended Complaint, on or about September 11, 1989, the Newbrite Associates Limited Partnership ("Seller") entered into a purchase agreement (the "Purchase Agreement") with Hartmann and Witten pursuant to which the Seller agreed to convey the Newbrite Shopping Center for $10.1 million. The Purchase Agreement contained a clause (the "Broker Clause") expressly representing that neither the Seller, Hartmann, Witten, nor New-

Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 97104 (S.D.N.Y.), RICO Bus.Disp.Guide 8536
(Cite as: Not Reported in F.Supp.)

Case 1:07-cv-06305-HB    Document 10-9    Filed 08/31/2007    Page 3 of 8

Page 2

brite dealt with any broker in connection with the sale of the Newbrite Shopping Center other than the Beazley Company and Brooks Properties, Inc. However, on or about September 11, 1989, the same day on which the Purchase Agreement was executed, the President of Real Estate Plus executed a written brokerage agreement (the "Commission Agreement") with the Seller that provided that the Seller would pay at the closing a $1 million brokerage commission to Real Estate Plus. Both the Commission Agreement and the Purchase Agreement were allegedly drafted by Priest in her capacity as the lawyer representing Hartmann. The Plaintiffs did not learn of the existence of the Commission Agreement until approximately May 21, 1990, the day before the scheduled closing on the Newbrite Shopping Center transaction, when Priest brought this fact to their attention.

*2 Plaintiffs contend that the defendants both concealed the existence of the Commission Agreement, and by providing the Purchase Agreement to the plaintiffs, falsely represented that the Commission Agreement did not exist. Plaintiffs seek, *inter alia*, the return of the $600,000 they paid to Hartmann, 714 Main Associates, and Colony Beach Associates, on the ground that they would not have executed the partnership agreement or paid the $600,000 had they known of the existence and terms of the Commission Agreement.

II. THE PROPOSED SECOND AMENDED COMPLAINT

Plaintiffs seek to amend their complaint to assert causes of action against the Priest Defendants for negligent misrepresentation and for breach of contract based on the theory that they are third party beneficiaries of the Priest Defendants' contract to provide legal services to Hartmann.

DISCUSSION

I. COMMON LAW FRAUD

The Priest Defendants move to dismiss the claims against them for common law fraud in the Amended Complaint pursuant to Fed.R.Civ.P. 9(b) for failure to plead fraud with particularity and pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

A. Failure to Plead Fraud with Particularity

The Priest Defendants contend that the plaintiffs have failed to plead fraud against them with the particularity required under Fed.R.Civ.P. 9(b). This Rule provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

The purpose of Rule 9(b) is "to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from 'improper charges of wrongdoing,' and to protect a defendant against the institution of a strike suit." *See O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir.1991). Though, in accordance with the explicit language of Rule 9(b), knowledge may be averred generally, the Court of Appeals for the Second Circuit has held that plaintiffs must "plead the factual basis which gives rise to a 'strong inference' of fraudulent intent." *Id.* (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir.1990)).

Priest contends that the plaintiffs have not pled facts that give rise to a strong inference of fraudulent intent, citing *National Westminster Bank v. Weksel*, 124 A.D.2d 144, 511 N.Y.S.2d 626 (1st Dept), *appeal denied*, 70 N.Y.2d 604, 519 N.Y.S.2d 1027, 513 N.E.2d 1307 (1987). In that case, it was held that fraud had not been adequately pled against a law firm that had represented a client in certain lease transactions. The court found no indication of scienter, noting that "to have been aware that the sale and lease transactions were being misrepresented in [the client's] Company Reports and prospectus, defendant law firm would have had to know if and how the sale and lease agreements, which apparently admitted of many variations in practice, were carried out." *Id.*, 124 A.D.2d at 148, 511 N.Y.S.2d at 629.

*3 The instant case is clearly distinguishable from

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Case 1:07-cv-06305-HB   Document 10-9   Filed 08/31/2007   Page 4 of 8 Page 3
Not Reported in F.Supp., 1994 WL 97104 (S.D.N.Y.), RICO Bus.Disp.Guide 8536
(Cite as: Not Reported in F.Supp.)

*National Westminster.* Here, there is a basis from which Priest's knowledge and participation in the fraudulent scheme may be inferred. The Amended Complaint alleges that Priest drafted the Commission Agreement. This supports the inference that she was aware that the Purchase Agreement, which she is also alleged to have drafted, falsely represented that no other brokers than those listed therein would receive a brokerage commission. The Court therefore concludes that the Amended Complaint does allege facts from which scienter can be inferred.

Priest also contends that plaintiffs have not alleged she made any false representations to plaintiffs, but only that she failed to disclose certain information. A party may be liable for fraud, however, if he aids and abets a fraud. *Id.*, 124 A.D.2d at 148, 511 N.Y.S.2d at 630. Pleading that a party aided and abetted a fraud requires "allegations as to the proposed aider's knowledge of the fraud, and what he, therefore, can be said to have done with the intention of advancing the fraud's commission." *Id.* As discussed above, the plaintiffs have adequately pled Priest's knowledge and participation in the fraud.

Priest also contends that she was unaware that Hartmann had solicited and received money from the plaintiffs. However, the plaintiffs are entitled to seek discovery on this issue since they have established a basis for inferring scienter.

Accordingly, the Court finds that the plaintiffs have adequately pled fraud in accordance with Fed.R.Civ.P. 9(b).

B. Failure to State a Claim

The Priest Defendants have also moved pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted. "In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor. The complaint may be dismissed only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Hernandez v. Coughlin,* --- F.2d ----, ----, 1994 WL 67111 * 2 (2d Cir. March 3, 1994) (quoting *Allen v. Westpoint-Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991)) (citations omitted).

The Priest Defendants contend that, even accepting as true the allegation that Priest advised Hartmann not to disclose the Commission Agreement, this advice is not actionable, citing various cases including *Beatie v. DeLong,* 164 A.D.2d 104, 109, 561 N.Y.S.2d 448, 451 (1st Dep't 1990) and *Goldner v. Sullivan, Gough, Skipworth, Summers and Smith,* 105 A.D.2d 1149, 482 N.Y.S.2d 606 (4th Dept.1984). However, these cases do not stand for the proposition that an attorney can never be liable to third parties for advice to a client, but rather that an attorney is not liable "in the absence of fraud, collusion, malice or bad faith." *Beatie,* 164 A.D.2d at 109, 561 N.Y.S.2d 451 (1st Dept.1990). *Accord Goldner,* 105 A.D.2d at 1150, 482 N.Y.S.2d at 607 (finding "no allegation that defendants made any false statement of an existing material fact.") In the instant case, plaintiffs have alleged fraud and have therefore properly stated a claim for relief.

II. RICO CLAIMS

*4 The Priest Defendants contend that plaintiffs' RICO claims against them are deficient in various respects and move to dismiss these claims pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

First, Priest contends that the Amended Complaint does not allege facts from which Priest's fraudulent intent may be inferred. The Court rejects this argument for the reasons discussed above.

The Priest Defendants' second contention is that the Amended Complaint fails to state a claim upon which relief can be granted because plaintiffs' alleged injuries were not proximately caused by the defendants' RICO violations. In *Holmes v. Securities Investor Protection Corp.,* 112 S.Ct. 1311 (1992) the Supreme Court held that proximate cause, a legal concept derived from tort law, is an aspect of the requirement under section 1964(c) of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Case 1:07-cv-06305-HB Document 10-9 Filed 08/31/2007 Page 5 of 8 Page 4
Not Reported in F.Supp., 1994 WL 97104 (S.D.N.Y.), RICO Bus.Disp.Guide 8536
(Cite as: Not Reported in F.Supp.)

RICO that a plaintiff demonstrate he has been injured "by reason of" the defendant's violation of RICO. *Id.* at 1318, 1322. The Priest Defendants contend that the plaintiffs' $600,000 payments were not the proximate result of the alleged misrepresentation in the Broker Clause. However, the plaintiffs contend that the Purchase Agreement was used as a basis for inducing the plaintiffs to make their investments. The Court is unable to conclude on the basis of the pleadings that these payments were not the proximate result of Priest's alleged misrepresentations.

The Priest Defendants' third argument is that the Amended Complaint fails to allege Priest's predicate acts with particularity, contending that the alleged acts of mail and wire fraud are merely ordinary business communications. However, to satisfy the elements of mail fraud, "[t]he mailings themselves need not contain misrepresentations, nor must they contribute directly to the deception of the plaintiffs." *Center Cadillac, Inc. v. Bank Leumi Trust Co.*, 808 F.Supp. 213, 228 (S.D.N.Y.1992). Rather, the mailings must merely be "incidental to an essential part of the scheme." *Id.* at 228. The allegations in the complaint certainly meet this standard.

The Priest Defendants' fourth argument is that Priest's performance of her attorney functions was not, as a matter of law, sufficient to render her a participant in the conduct of the alleged racketeering enterprise. Whether she participated in the conduct of the racketeering enterprise depends not, however, on her status as a lawyer but on her actual conduct. Determining the extent and nature of her role requires a full opportunity for discovery. The failure to describe that role with further specificity in the pleadings does not render them inadequate.

Priest's fifth argument is that the plaintiffs have failed to plead a pattern of racketeering activity. Pleading such a pattern is required to state a claim under RICO. *See H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 232 (1989). A pattern of racketeering activity exists when there is both a combination of related predicate acts and continuing criminal activity. *Id.* at 239. Continuity may be demonstrated by showing either "a closed period of repeated conduct, or ... past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. The Supreme Court has suggested that an example of open-ended continuity would be a hoodlum selling "insurance" to storekeepers to protect against vandalism, telling them he would reappear each month to collect the "premium." *Id.* at 242.

*5 The Court concludes that the plaintiffs have pled open-ended continuity because the alleged conduct threatened repetition. Plaintiffs' claim is that they were induced by means of fraudulent misrepresentations to make five separate payments constituting investments in partnerships. It is clear that further payments were envisaged. With regard to the Newbrite partnership, further capital was required in order to consummate the purchase of the shopping center. In addition, it is apparent that as a general matter, a partnership is an ongoing entity that is likely to require further capital contributions. Accordingly, the plaintiffs have adequately pled a pattern of racketeering activity.

Finally, the Priest Defendants contend that the complaint fails to allege "some factual basis for a finding of a conscious agreement among the defendants." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n. 4 (2d Cir.1990). The Court finds such a factual basis, however, in the allegation that Priest knowingly participated in misleading the plaintiffs regarding the Commission Agreement.

Accordingly, the Court finds that the plaintiffs have adequately pled RICO violations by the Priest Defendants.

### III. PLAINTIFFS' MOTION TO AMEND THEIR COMPLAINT

Plaintiffs move to amend their complaint by adding additional causes of action against the Priest Defendants. The Priest Defendants oppose the motion, arguing that the proposed claims are legally insufficient on their face. *See Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir.1990) (if "there is

Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 97104 (S.D.N.Y.), RICO Bus.Disp.Guide 8536
(Cite as: Not Reported in F.Supp.)

Page 5

no merit in the proposed amendments, leave to amend should be denied.").

Plaintiffs seek to advance three additional theories of liability which they describe as follows: "Priest owed a duty of care to plaintiffs which she breached by negligently failing to disclose to them the Commission Agreement or its contents (Thirteenth Claim); Priest owed a duty of care to plaintiffs which she breached by negligently failing to advise Hartmann to make the required and appropriate disclosures to plaintiffs (Fourteenth claim)[;] and Priest is liable to plaintiffs as third party beneficiaries of her contract with Hartmann [to provide legal services] (Fifteenth Claim)." Memorandum in Support of Motion to Amend Complaint, dated March 24, 1993, at 3.

In support of their first two theories of liability, the plaintiffs cite *Prudential Insurance Co. v. Dewey, Ballantine, Bushby, Palmer & Wood, et al.,* 80 N.Y.2d 377, 590 N.Y.S.2d 831, 605 N.E.2d 318 (1992), *recons. denied,* 81 N.Y.2d 955, 597 N.Y.S.2d 940, 613 N.E.2d 972 (1993). In *Prudential* the New York Court of Appeals held that a lawyer who had drafted an opinion letter upon which Prudential had relied in permitting a debt restructuring had owed a duty of care to Prudential. *See id.,* 80 N.Y.2d at 385, 590 N.Y.S.2d at 835. The court wrote as follows:

[B]efore a party may recover in tort for pecuniary loss sustained as a result of another's negligent misrepresentations there must be a showing that there was either actual privity of contract between the parties or a relationship so close as to approach that of privity. Such a requirement is necessary in order to provide fair and manageable bounds to what otherwise could prove to be limitless liability.

*6 *Id.,* 80 N.Y.2d at 382, 590 N.Y.S.2d at 833, 605 N.E.2d at 320 (citations omitted). The court went on to state that there are three "critical criteria for imposing liability: (1) an awareness by the maker of the statement that it is to be used for a particular purpose; (2) reliance by a known party on the statement in furtherance of that purpose; and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance." *Id.,* 80 N.Y.2d at 384, 590 N.Y.S.2d at 831, 605 N.E.2d at 321. The court concluded that the criteria for imposing a duty of due care had been met, noting that "the end and aim of the opinion letter was to provide Prudential with the financial information it required" in order to approve the debt restructuring. *Id.,* 80 N.Y.2d at 385, 590 N.Y.S.2d at 835, 605 N.E.2d 322.

In the instant case, the plaintiffs contend that Priest is liable to them for the negligent misrepresentations in the Purchase Agreement regarding commissions. However, *Prudential* provides for the imposition of liability for negligent misrepresentation only upon the "maker of the statement." *Id.,* 80 N.Y.2d at 384, 590 N.Y.S.2d at 834, 605 N.E.2d at 321. The plaintiffs assume that since Priest drafted the Purchase Agreement, she made the statements contained therein. This view fails to appreciate the crucial difference between an opinion letter, which was at issue in *Prudential,* and a contract. As suggested by its title, an opinion letter is a document prepared and signed by an attorney and that conveys his own legal opinions. In contrast, an attorney does not ordinarily sign a contract he prepares for his client since the statements and undertakings laid out in the document are made by and binding upon the client rather than the attorney. In short, an opinion letter is a statement by the attorney; a contract is a statement by the signatory to the contract.

It is due to these differences between an opinion letter and a contract that a duty of care to third parties is imposed in one context but not in the other. When an attorney is asked to draft an opinion letter, he is put on notice that he must personally vouch for the statements made therein and that he may be held liable if they are untrue. This provides the attorney with the opportunity to verify those statements to the extent he can, and with regard to factual statements for which he is relying on his client, to qualify his opinion accordingly. Thus it is possible in this narrow context to impose a duty of due care to third parties while still maintaining "fair and manageable bounds to" the attorney's liability. *Prudential,* 80 N.Y.2d at 382, 590 N.Y.S.2d at 833,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 6
Case 1:07-cv-06305-HB   Document 10-9   Filed 08/31/2007   Page 7 of 8
Not Reported in F.Supp., 1994 WL 97104 (S.D.N.Y.), RICO Bus.Disp.Guide 8536
(Cite as: Not Reported in F.Supp.)

605 N.E.2d 320.

In contrast, to hold an attorney liable to third parties for the factual inaccuracies of every contract, or every legal document, he prepares would be to lurch towards the "limitless liability" against which the New York Court of Appeals warned in *Prudential.* In addition, it would impinge upon the attorney's ability to properly represent his client. Imposing such liability would "detract from the attorney's incentive to represent clients zealously" in accordance with canon 7 of the Model Code of Professional Responsibility. *Crossland Sav. FSB v. Rockwood Ins. Co.,* 700 F.Supp. 1274, 1282-83 (S.D.N.Y.1988). It would also undercut the purpose of Rule 1.7(b) of the Model Rules of Professional Conduct, which provides that without the consent of his client, an attorney should not assume a duty to another party to a transaction. *Id.* at 1283.

*7 Concerns about impinging upon the attorney's ability to faithfully represent his client have given way in the narrow context of opinion letters due to the unusual nature of an attorney's role in providing such letters:

When a lawyer at the direction of her client prepares an opinion letter which is addressed to [a] third party or which expressly invites [a] third party's reliance she engages in a form of limited representation. Although the attorney is paid and represents her client, in the opinion letter she expressly states (with her client's consent) that she is rendering a legal service to the third party. Commentators have agreed that the attorney owes a duty to the third party if the opinion letter is either addressed to the third party or expressly authorizes his reliance.

*Id.* at 1282.

In the instant case the alleged misrepresentations were made not in an opinion letter but rather a contract and plaintiffs have demonstrated "[n]either actual privity of contract between [Priest and the plaintiffs] [n]or a relationship so close as to approach that of privity." *Prudential,* 80 N.Y.2d at 382, 590 N.Y.S.2d at 833, 605 N.E.2d at 320. Accordingly, the general rule that a lawyer has no duty of due care to third parties is applicable here. *See Crossland,* 700 F.Supp. at 1281 ("Under New York law, attorneys are not liable to [a] third party for negligent representations, even where they prepare documents knowing that third parties will rely upon them.") Thus, the Court concludes that the thirteenth and fourteenth causes of action of the proposed complaint do not state claims upon which relief can be granted.

Plaintiffs' fifteenth claim against the Priest Defendants is for breach of contract and is premised on the theory that plaintiffs were intended third party beneficiaries of the Priest Defendants' contract to provide legal services to Hartmann. Plaintiffs appear to argue that they are third party beneficiaries because Priest represented the partnership in which they were limited partners. However, finding such a contractual obligation on this basis would run directly contrary to this Court's holding in *Morin v. Trupin,* 778 F.Supp. 711 (S.D.N.Y.1991), in which the Court wrote:

"To hold that a limited partner is automatically a foreseeable client of the attorney representing the general partners or even the limited partnership, in the absence of any affirmative assumption of duty by the attorney, would ignore Ethical Consideration 5-18 which specifically defines the attorney's allegiance to the entity that retained him rather than to any person connected with the entity."

*Id.* at 736 (quoting *Quintel Corp., N.V. v. Citibank, N.A.,* 589 F.Supp. 1235, 1241-42 (S.D.N.Y.1984)). Thus, Priest cannot be found to have undertaken a contractual obligation to plaintiffs merely by representing the partnership and the plaintiffs have alleged no other facts that would provide a basis for finding such a contractual obligation. Thus, the fifteenth cause of action in the proposed complaint does not state a claim upon which relief can be granted.

*8 The Court having found that each of plaintiffs' proposed causes of action fails to state a claim upon which relief may be granted, leave to amend the Amended Complaint is hereby denied.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 7
Not Reported in F.Supp., 1994 WL 97104 (S.D.N.Y.), RICO Bus.Disp.Guide 8536
**(Cite as: Not Reported in F.Supp.)**

Case 1:07-cv-06305-HB    Document 10-9    Filed 08/31/2007    Page 8 of 8

CONCLUSION

For the reasons stated above, the Court hereby (1) denies the Priest Defendants' motion to dismiss the Amended Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and (2) denies plaintiffs' motion to amend the Amended Complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure. The parties are advised to appear for a pre-trial status conference on April 22, 1994, at 3:00 p.m. in Courtroom 312.

SO ORDERED.

S.D.N.Y.,1994.
Friedman v. Hartmann
Not Reported in F.Supp., 1994 WL 97104 (S.D.N.Y.), RICO Bus.Disp.Guide 8536

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.