# EXHIBIT I

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 696082 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

▷
Myers v. Merrill Lynch & Co., Inc.
N.D.Cal.,1999.
Only the Westlaw citation is currently available.
United States District Court, N.D. California.
Joan Plastiras MYERS, individually and on behalf of all others similarly situated, Plaintiff,
v.
MERRILL LYNCH & CO., INC., Painewebber Group Incorporated, Morgan Stanley Dean Witter and Co., Travelers Group Inc., Legg Mason Inc., H.J. Myers & Co., and the Bear Stearns Companies, Inc., Defendants.
No. C-98-3532 WHO.

Aug. 23, 1999.

Alice W. Detwiler, Esq., Gibson Dunn & Crutcher LLP, Palo Alto.
Paul J. Collins, Esq., Gibson Dunn & Crutcher LLP, Palo Alto.
Jonathan C. Dickey, Esq., Gibson Dunn & Crutcher LLP, Palo Alto.
Gail E. Lees, Esq., Gibson Dunn & Crutcher LLP, Palo Alto.
Dan Drachler, Esq., Seattle, WA.
Paul C. Whalen, Zwerling Schachter & Zwerling LLP, New York, NY.
Robert S. Schachter, Esq., Zwerling Schachter & Zwerling LLP, New York, NY.
Richard A. Speirs, Esq., Zwerling Schachter & Zwerling, New York, NY.
Jennifer S. Abrams, Esq., Berman DeValerio Pease & Tabacco, San Francisco.
Joseph J. Tabacco Jr., Esq., Berman DeValerio Pease & Tabacco, San Francisco.
Ben Suter, Keesal, Young & Logan, San Francisco, CA, for Defendant Appellee Bear Stearns & Co., Inc.

OPINION AND ORDER
ORRICK, District J.
*1 In this securities action brought pursuant to §§ 17200 and 17500 of the California Business and Professions Code by plaintiff Joan Plastiras Myers, individually and on behalf of all others similarly situated (collectively "Myers"), against several investment banking companies, defendant Merrill Lynch & Co., Inc. now moves to dismiss on the grounds that Myers has failed to state a claim and, alternatively, that this action is preempted by federal securities laws. Defendant PaineWebber Group, Inc.[FN1] filed a notice of joinder in the motion to dismiss. Myers filed a countermotion to remand. For the reasons set forth hereinafter, Myers' countermotion to remand is denied, and defendants' motion to dismiss is granted.

> FN1. The other defendants are Morgan Stanley Dean Witter & Co., Traveler's Group, Inc., Legg Mason Inc., H.J. Myers & Co., Inc., and The Bear Stearns Companies, Inc.

I.

Myers filed this complaint on August 17, 1998 in the Superior Court of the State of California for the City and County of San Francisco. Defendants act as underwriters of Initial Public Offerings and Public Offerings (jointly "Offerings"). Each of the defendants operate brokerage firms (or units), which facilitate the purchase and sale of securities. (Compl.¶¶ 4-11.) Defendants removed the action to this Court on September 15, 1998, on the basis of both diversity and federal question jurisdiction.

Myers brought this suit under California's unfair competition laws, §§ 17200 et seq. and 17500 et seq. of the California Business and Professions Code ("Unfair Competition Act"), and §§ 1572, 1709 and 1710 of the California Civil Code. The broad proscriptions of §§ 17200 and 17500 are designed to protect individuals from unlawful, unfair or fraudulent business practices and from statements that are untrue or misleading.

In essence, Myers alleges that defendants have violated these statutes in their attempts to discourage investors from "flipping" their shares immediately after an Offering.[FN2] Myers complains that de-

Case 1:07-cv-06305-HB   Document 10-10   Filed 08/31/2007   Page 3 of 12

Not Reported in F.Supp.2d                                                                      Page 2
Not Reported in F.Supp.2d, 1999 WL 696082 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

fendants have violated California's Unfair Competition Act by imposing a "syndicate penalty bid" on customers who are likely to flip newly acquired shares immediately following the Offering.[FN3] Myers also maintains that defendants impose further penalties by requiring securities brokers (who are employed by defendants' investment banking firms) to rebate to the brokerage firm the commission that the broker earns from the client's sale of the Offering shares. (Compl.¶ 39.)

> FN2. "Flipping" is a term used to describe the practice of buying and then immediately selling a security.
>
> FN3. Penalty bids are often employed by an underwriting syndicate ("syndicate"). Most often, the underwriter forms a syndicate of other underwriters to distribute shares and spread the risk of underwriting. A "penalty bid" refers to an arrangement "that permits the managing underwriter to reclaim a selling concession from a syndicate member in connection with an Offering when the securities originally sold by the syndicate member are purchased in syndicate covering transactions." 17 C.F.R. § 242.100. The "selling concession" is the spread between the price at which the underwriters purchase stock from the issuer and the price at which the newly issued stock is offered to investors. The selling concession is in effect the underwriters' "profit." The "penalty" occurs when "[t]he managing underwriter ... requir[es] underwriters or selling group members to forfeit their selling concession for the shares sold to their customers in the offering that are purchased in the aftermarket for the syndicate account." SEC Release No. 34-33924, 59 F.R. 21681, 21690 (Apr. 26, 1994).

Myers alleges that the penalty bid system is inherently discriminatory in that defendants have prohibited or restricted individual investors, but not institutional investors, from reselling or "flipping" shares bought in an Offering in which one or more of the defendants was an underwriter or other participant.[FN4] (Compl.¶ 38.) Myers further alleges that defendants' practice of exempting large investors from the penalty bid system favors the large investor over the individual investor, and that the defendant brokerage firms' practice of imposing penalty bids on individual investors permits institutional investors to reap windfall profits at the expense of the small individual investor. (Compl.¶¶ 5, 50.)

> FN4. Myers alleges that Smith Barney, for example, requires its brokers to refrain from flipping for ten days or it will take back the underwriting discount. (Compl.¶ 38.) PaineWebber allegedly has a similar penalty bid, with a twenty-day holding period. (*Id.*) Myers alleges that in a recent Offering, Dean Witter warned its brokers that if the broker's clients sold shares within the first sixty days after the Offering, they would lose their commissions from the Offering. (*Id.*)

*2 Furthermore, Myers claims that defendants do not disclose the syndicate penalty bids to the buyer before sale, which makes the practice discriminatory and deceptive, and that brokers are "coerced" into adopting the practice for fear that they will be "blacklisted" from receiving shares in future Offerings. (Compl. at ¶¶ 51, 52).

Myers charges that defendants' coercive tactics also include threatening to bar individual investors from purchasing in future Offerings if they engage in flipping and closing or restricting accounts of individuals who have flipped shares bought in Offerings. Myers maintains that all of defendants' policies prevent investors from freely selling their shares and impedes the free trading that is necessary for capital markets to remain efficient. (Compl.¶ 2.)

Based on these allegations, Myers asserts four causes of action:

1. Violation of § 17500 of the California Business and Professions Code for dissemination of untrue or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

misleading information;

2. Violation of § 17200 of the California Business and Professions Code for engaging in unfair competition;

3. Unlawful business practices in violation of § 17200 et seq. of the California Business and Professions Code, predicated on misrepresentations that violate §§ 1572, 1709, 1710 of the California Civil Code; and

4. Violation of §§ 17203 and 17535 of the California Business & Professions Code for omissions and representations made by defendants upon which Myers (and other similarly situated plaintiffs) relied in purchasing Offering shares from defendants.

Myers' prayer for relief includes (1) an order preliminarily or permanently enjoining the defendants from the alleged deceptive practices or from continuing them in the future; (2) an award of costs and expenses, including reasonable attorneys' and expert fees; (3) disgorgement of any money improperly obtained by defendants; and (4) any further relief that the Court deems proper.

There are two major questions presented to the Court: *first*, the threshold question whether defendants sustained their removal burden by showing that the amount in controversy has been satisfied with respect to Myers' request for injunctive relief and, *second*, whether §§ 17200 and 17500 of the California Business Code apply to security transactions. The Court deals initially with the removal question in Myers' countermotion.

II.

A.

Myers moves to remand this action on the ground that the Court lacks diversity jurisdiction over this case because defendants have failed to establish that each consumer's injunctive relief claim brought under §§ 17200 and 17500 exceeds $75,000, the amount in controversy required under 28 U.S.C. § 1332. The question is whether the value of the litigation should be measured from Myers' standpoint or from defendants' standpoint. Myers also maintains that defendants have failed to establish federal question jurisdiction, because federal securities statutes do not preempt California regulation of unfair and deceptive business practices or otherwise raise a federal question.

*3 When a plaintiff seeks equitable relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977) (citations omitted). The Supreme Court in *Zahn v. International Paper Co.*, 414 U.S. 291 (1973), held that each member of a class action must independently satisfy the amount-in-controversy requirement in order to create subject matter jurisdiction based on diversity. *Id.* at 301. The Court held that "multiple plaintiffs with separate and distinct claims must each satisfy the jurisdictional-amount requirement for suit." *Id.* at 294.

Defendants respond that the rule in *Zahn* is limited to class action suits under Rule 23 of the Federal Rules of Civil Procedure. Defendants maintain that because Myers' cause of action under § 17200 is not brought as a class action, the value of the litigation can be measured from defendants' standpoint, relying on the Supreme Court's decision in *Ridder Bros., Inc. v. Blethen*, 142 F.2d 395 (9th Cir.1944). Defendants maintain that the value of the relief that Myers seeks can be measured from defendants' *or* Myers' standpoint, by pointing out that the Supreme Court in *Ridder* stated that "the value of the thing to be accomplished [is] equal to the dollar minimum of the jurisdictional requirement to anyone concerned in the action, then jurisdiction [is] satisfied." *Id.* at 398; *see also Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 405 (9th Cir.1996) (noting that "if either party can gain or lose the jurisdictional amount," the amount in controversy requirement may be satisfied) (citing *Ridder*, 142 F.2d at 399)).

Myers maintains that firm Ninth Circuit precedent supports the use of the plaintiffs' perspective in determining whether the amount-in-controversy re-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-06305-HB    Document 10-10    Filed 08/31/2007    Page 5 of 12

Not Reported in F.Supp.2d                                                                                                          Page 4
Not Reported in F.Supp.2d, 1999 WL 696082 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

quirement has been met. In *Snow v. Ford Motor Co.,* 561 F.2d 787 (9th Cir.1977), the Ninth Circuit held that, in a class action context, the value of the injunction may not be considered from the perspective of the defendant, but rather, must be measured by the value to the plaintiff. *Id.* at 789-90. In so ruling, the Ninth Circuit relied on the Supreme Court's decision in *Snyder v. Harris,* 394 U.S. 332 (1969), which held that plaintiffs may not aggregate separate and distinct monetary claims in class action suits brought under Rule 23(b)(3) of the Federal Rules of Civil Procedure to meet the amount in controversy requirement. *Snow,* 561 F.2d at 789 (citing *Snyder,* 394 U.S. 332)). Each plaintiff in a class action suit must have a claim that exceeds the jurisdictional requirement, even if the named plaintiffs meet the jurisdictional requirement. *Id.* at n. 2 (citing *Zahn v. International Paper Co.,* 414 U.S. 291 (1973)). The *Snow* court reasoned that determining the jurisdictional amount of an injunction by the total monetary impact on the defendant in class action suits would contravene the rule in *Snyder,* by encouraging plaintiffs to pray for an injunction as a way of evading the rule in *Snyder* and *Zahn* that the plaintiffs' viewpoint of the value of litigation determines the amount in controversy. *Id.* at 791.

*4 *Snow* also recognized that *Snyder* effectively overruled parts of the Ninth Circuit's earlier decision in *Ridder.* The Court reasoned that

while neither Snyder nor Zahn appears to have involved a request for injunctive relief, some of the prior Supreme Court cases on which the Snyder and Zahn decisions relied for their nonaggregation holdings did. Yet, in none of these cases was the Court moved by that fact to discuss the amount in controversy from the defendant's point of view. *Accordingly, to the extent that Ridder Bros., Inc. v. Blethen, 142 F.2d 395 (9th Cir.1994), is inconsistent with Snyder, it must be considered to have been superseded.*

*Id.* at 791 n. 5 (emphasis added) (citations omitted).

Myers maintains that *Ridder* 's holding no longer applies in light of *Snow.* But in so arguing, Myers overlooks an important distinction-the *Snow* case involved a Rule 23 class action suit. This case does not. Thus, the *Ridder* decision is not inconsistent with the rule in *Snow* when a class action is not involved, as arises here, because Myers has brought suit on behalf of others similarly situated under § 17200 of the California Unfair Competition Act, rather than pursuant to Rule 23 of the Federal Rules of Civil Procedure. Further, the *Ridder* decision in the nonclass action context is not superseded, as the Ninth Circuit recently reaffirmed the vitality of *Ridder* in its discussion of a plaintiff's claim for disgorgement of profits under § 17200. See *Sanchez,* 102 F.3d at 405 & n. 6. In *Sanchez,* the Ninth Circuit remanded the case to state court, finding that the defendant had failed to establish by a preponderance of the evidence that the value of Sanchez's § 17200 claim for injunctive relief and disgorgement exceeded $50,000, from the defendant's point of view. *Id.* at 406. In so ruling, the Ninth Circuit acknowledged that "Ridder ... rejected the 'plaintiff-viewpoint' rule," and noted that in *Snow,* the court declined to apply *Ridder* in a class action suit seeking damages and injunctive relief. *Id.* at 405 n. 6.

There are two cases analyzing the amount-in-controversy requirement in suits seeking injunctive relief under § 17200. One case supports defendants' position, the other Myers' position.

Defendants cite to *Mangini v. R.J. Reynolds Tobacco Co.,* 793 F.Supp. 925 (N.D.Cal.1992), in which the Court held that the plaintiffs' private attorney general suit brought pursuant to § 17204 FN5 of the California Business & Professions Code could not be treated as a class action suit that applied the "plaintiffs' perspective" rule. In *Mangini,* the plaintiffs brought suit in California state court against R.J. Reynolds, among others, alleging violations of the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. § 1333(a)(2), and §§ 17200 et seq. of the California Business and Professions Code. *Id.* at 926. The defendants removed the case to federal court, claiming federal jurisdiction existed on both diversity and federal question grounds. *Id.* The plaintiffs moved to remand. The Court

quickly disposed of the plaintiffs' argument that diversity did not exist because the defendants had failed to establish that each plaintiff independently satisfied the jurisdictional amount of fifty thousand dollars. The Court stated:

> FN5. Section 17204 permits individuals to bring suits for injunctive relief on behalf of the California public.

*5 [T]his case is not a class action, nor does it possess many of the defining characteristics of a class action. Mangini has cited no authority which indicates that a court should treat a private attorney general action as a class action for the purposes of determining whether the jurisdictional amount has been satisfied, and the court declines to do so. As a result, Mangini's proposition that the jurisdictional amount may not be defined by the detrimental value of the suit to defendant fall by the wayside.
Rather, in a non-class action case, the amount in controversy may be measured either by the value of the relief sought by the plaintiff or the cost to the defendant if the relief is granted.

*Id.* at 928 (citation omitted). The Court also considered and rejected the plaintiffs' argument that *Ridder* had been "effectively overruled," finding it without merit. *Id.*

Myers maintains that *Mangini* is inapplicable to this case. She urges the Court to follow the decision in *Smiley v. Citibank (South Dakota), N.A.,* 863 F.Supp. 1156 (C.D.Cal.1993). In *Smiley,* Judge Kenyon granted the plaintiffs' motion to remand, and distinguished *Mangini,* on the ground that it involved an individual plaintiff seeking injunctive relief pursuant to the private attorney general provisions of § 17204 of the California Business and Professions Code, while *Smiley* sought relief under § 17203 on behalf of all persons in California similarly situated. *Id.* at 1164-65.

The Court finds that the reasoning of *Mangini* is far more persuasive, and that *Smiley* 's distinction between §§ 17203 and 17204 is untenable. Sections 17203 and 17204 are both invoked in any § 17200 claim. Section 17203 provides the remedies that are available in § 17200 claims (equitable relief including injunctions and disgorgement) and § 17204 provides the standing requirements for bringing such claims-they can be brought by government attorneys and "any person acting for the interests of itself, its members or the general public." In short, all § 17200 claims involving the interests of the general public, including those asserted in *Mangini,* are brought under the private attorney general provisions of § 17204. Like Myers in this case, the plaintiffs in *Mangini* expressly state that they are bringing the action "on behalf of the California public," seeking injunctive relief, including disgorgement of profits.

Based on *Sanchez,* 102 F.3d at 405 & n. 6, and *Mangini,* 793 F.Supp. at 928, the Court finds that because Myers' § 17200 claim is not a class action, the rule in *Ridder,* rather than *Snow* applies. Thus, the value of injunctive relief that Myers seeks may be measured from defendants' perspective.[FN6] Accordingly, defendants have properly invoked diversity jurisdiction and have met the jurisdictional requirement because the detriment to defendants in complying with the relief that Myers seeks, which includes injunctive relief and disgorgement of profits, exceeds $75,000.[FN7]

> FN6. The parties do not dispute that the cost to defendants of complying with the injunction that Myers seeks would far exceed the $75,000 jurisdictional amount. Myers alleges that in 1997 alone, Merrill Lynch's underwriting revenues were approximately $1,958,000,000 and that each of the other defendants realized "millions of dollars of revenue" from their underwriting business. (Compl.¶ 5.) Thus, the cost of the injunction, as measured from defendants' perspective, would exceed $75,000 under a restitution or disgorgement theory.

> FN7. This ruling obviates the need for the Court to decide whether the federal question jurisdiction lies over Myers' claims. Assuming that diversity jurisdiction does

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

not exist, however, federal question jurisdiction exists because the propriety of defendants' practice with respect to flipping turns exclusively on an interpretation of federal securities laws and regulations. *See Sparta Surgical Corp. v. National Ass'n of Sec. Dealers, Inc.,* 159 F.3d 1209, 1212 (9th Cir.1998) (holding that a plaintiff may not defeat removal by positing only state law claims, if the lawfulness of defendants' conduct in suspending trading and delisting the offering was exclusively determined by federal law).

*6 The Court now turns to the second question raised by defendants' motion to dismiss, namely, whether §§ 17200 and 17500 apply to securities transactions.

B.

Defendants move to dismiss this action on the ground that (1) Myers' state law unfair competition and false advertising claims fail to state a claim because §§ 17200 and 17500, as well as other sections of the Business and Professions Code that constitute California's "Little FTC Act," do not apply, and were never intended to apply, to securities transactions (Defs.' Mem. P. & A. in Supp. of Mot. to Dismiss at 12); and (2) §§ 17200 and 17500 are preempted by federal securities law. They contend that the Business and Professions Code sections simply are not applicable here. Without pointing to any language in the statutes themselves or California case law, defendants contend that "statutory origins of Sections 17200 and 17500" compel this view. (*Id.*) Defendants then cite several (mostly unpublished) district court cases from the Ninth Circuit that have held that §§ 17200 and 17500 do not apply to securities transactions.[FN8] The one published case relevant to the question, *Levine v. Diamanthuset, Inc.* 722 F.Supp. 579, 590 (N.D.Cal.1989), does not stand for the proposition for which defendants cite it.

FN8. *Feldman v. Glaze,* [1989 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 94,450 at 92,892 (N.D.Cal.1989) ("[i]t is also not clear that [§ 17500] is applicable in the securities context"); *Levine,* 722 F.Supp. at 590 (granting motion to dismiss § 17200 unfair competition claims with leave to amend in a case involving alleged Ponzi scheme because the plaintiffs failed to state which of defendants' practices or conduct were misleading and also finding that, in any event, the unfair competition laws did not cover the defendant who allegedly solicited or sold securities to the plaintiffs), *rev'd on other grounds,* 950 F.2d 1478, 1484 & 1488 (9th Cir.1991) (holding that plaintiffs had stated a claim of aiding and abetting in securities fraud and securities fraud under Rule 10b-5); *Lickhalter v. System Dev. Corp.,* [1984 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 91,459, at 98,301 (C.D.Cal.1984) (dismissing claims on the ground that § 17200 does not apply to securities transactions).

In *Levine,* Judge Patel dismissed the plaintiffs' California Unfair Competition Act claims with leave to amend. In so ruling, the Court stated that the allegations supporting the § 17200 claims were insufficient because "the allegations lump all the defendants together and fail to state which practices or conduct by [defendant] Smith [an attorney who participated in the drafting and advertising of the offering materials] misled plaintiffs." *Id.* The Court added that "[p]laintiffs pile up unnecessary and perhaps inapplicable claims." *Id.* With respect to Smith's liability, the Court had found in an earlier portion of its opinion that the plaintiffs had never alleged that Smith had solicited or sold securities to investors. *Id.* at 586. The absence of any allegations tying Smith to the solicitation or sale of securities apparently led the court to conclude that:

The unfair competition law codified in section 17200 et seq. of the California Business and Professions Code was not addressed to conduct such as Smith's. Furthermore, the statute contemplates primarily injunctive relief. In the context of this case it offers no remedies that plaintiffs cannot

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-06305-HB   Document 10-10   Filed 08/31/2007   Page 8 of 12

Not Reported in F.Supp.2d                                                                                   Page 7
Not Reported in F.Supp.2d, 1999 WL 696082 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

achieve using other causes of action.

*Id.* Finding that the action was nonetheless not barred by the statute of limitations, Judge Patel dismissed the action with leave to amend, "only in the event that plaintiffs can state ... a section 17200 claim that fits the statute." *Id.*[FN9]

> FN9. Although Judge Patel's dismissal of some of the plaintiffs' causes of action brought under federal securities laws was reversed on appeal, the Ninth Circuit did not disturb her ruling with respect to the § 17200 claim. See *Levine,* 950 F.2d at 1488.

Contrary to defendants' suggestion, Judge Patel's opinion in *Levine* does not hold that § 17200 is inapplicable to all securities transactions. Rather, the decision seems to imply that the plaintiffs' generalized allegations failed to support such a claim. Further, with respect to defendant Smith, an attorney, Judge Patel appeared to find that the plaintiffs must, at a minimum, allege that he had a direct role in soliciting or selling the securities in order to fall within § 17200's prohibition against false and misleading advertising and unfair competition. Therefore, the dicta in *Levine* does not compel the conclusion that § 17200 cannot, as a matter of law, cover all securities transactions.

*7 Defendants also argue, by analogy, that because § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a), upon which §§ 17200 and 17500 were modeled, does not cover securities transactions, then by extension, §§ 17200 and 17500 should not either.[FN10]

> FN10. See *Spinner Corp. v. Princeville Dev. Corp.,* 849 F.2d 388, 390-91 (9th Cir.1988) (citations omitted) (stating that the FTC Act "has not been applied in a securities context since 1923"); *Stephenson v. Paine Webber Jackson & Curtis, Inc.,* 839 F.2d 1095, 1101 (5th Cir.1988) ( "The FTC Act has been interpreted to preclude coverage of securities claims"), cert. denied, 488 U.S. 926 (1989); *Lindner v. Durham Hosiery Mills, Inc.,* 761 F.2d 162, 167 (4th Cir.1985) ("no federal court decision has applied § 5(a)(1) of the FTC Act to securities transactions").

Defendants also rely heavily on the Second Circuit's opinion in *Levitin v. PaineWebber, Inc.,* 159 F.3d 698 (2d Cir.1998). In that case, the plaintiff claimed, among other things, that Paine Webber violated Article 9 of New York's Uniform Commercial Code ("UCC") by failing to remit to its customers interest earned on collateral deposited with it by customers in connection with margin accounts used for trading, and for short sales in particular. Article 9 of the New York UCC provides that absent a contrary agreement, profits realized from collateral while in the secured party's possession belong to the debtor. *Id.* at 704 (citing N.Y. [UCC] Law § 9-207). The court held that the plaintiff's UCC claim was preempted because federal regulation of margin transactions, broker utilization of customers funds, and short sales was extensive. *Id.* at 705-06. Thus, the Court concluded application of the UCC's provisions with regard to this subject matter would frustrate congressional objectives in creating an effective, uniform federal system of short sale and margin regulation. *Id.* at 706-07.

Defendants ask this Court to analogize from the *PaineWebber* case and find that preemption of §§ 17200 and 17500 is compelled in this case as well. That argument, however, takes the Court far afield from the facts and law of this case. First, Article 9 of the UCC has no resemblance to §§ 17200 and 17500. Second, the federal statutes at issue in *PaineWebber,* e.g., § 10 of the Securities Act of 1934, 15 U.S.C. 78j, dealing with short sales has little to do with the National Securities Market Improvement Act of 1996's ("NSMIA"), Pub.L. No. 104-290, 110 Stat. 3416 (1996), regulation of penalty bids. Therefore, *PaineWebber* is not relevant to the issues here.

Defendants have not cited, nor has the Court found, any California case that has held that §§ 17200 and 17500 do not apply to the sale or purchase of securities.[FN11] Defendants also do not cite any legislative history to support their assertion.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN11. Defendants filed a supplemental memorandum of authority regarding the relevance of the California Supreme Court's decision in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal.4th 163, 185, 83 Cal.Rptr.2d 548, 564 (1999). In that case, the Court relied on § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a), in determining what is "unfair" under § 17200 of California's Unfair Competition Act, noting that "[i]n view of the similarity of language and obvious identity of purpose of the two statutes, decisions of the federal court on the subject are more than ordinarily persuasive." *Id.* (citations omitted).

This decision still falls short of a square holding by the California Supreme Court that California's Unfair Competition Act excludes securities fraud cases, as the case before it involved deceptive trade practices by a cellular phone company, not a securities broker.

Based on the dearth of California case law or legislative history concerning the scope of §§ 17200 and 17500, and its applicability to claims involving the sale or purchase of securities, the Court lacks firm precedential grounds for holding that these sections do not cover securities transactions. Nothing in §§ 17200 and 17500 says so explicitly, and the Court would in effect need to rewrite the statute in order to reach that conclusion.

C.

Defendants next argue that Myers' claims brought under §§ 17200 and 17500 targeting defendants' system of penalty bids are preempted by the NSMIA. Title I of the NSMIA ended the dual federal-state system of securities offering regulations that had previously existed under the Securities Act of 1933. NSMIA § 18, 15 U.S.C. § 77r. Defendants' claim that §§ 17200 and 17500 are preempted because they directly conflict with federal securities laws and regulations, and because they pose an obstacle to the accomplishment of the federal scheme for regulation of securities offerings. *See Shneidewind v. ANR Pipeline Co.,* 485 U.S. 293, 310 (1988) (citation omitted) (stating that state law authorizing injunctive relief may be preempted "even though collision between the state and federal regulation may not be an inevitable consequence" if injunction interferes with federal regulatory power).

*8 It is well-established that " 'a federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation and hence render unenforceable state or local laws that are otherwise not inconsistent with federal law." ' *City of New York v. FCC,* 486 U.S. 57, 63-64 (1988) (quoting *Louisiana Public Serv. Comm'n v. FCC,* 476 U.S. 355, 369 (1986)). Accordingly, "[t]he statutorily authorized regulations of an agency will pre-empt any state or local law that conflicts with such regulations or frustrates the purposes thereof." *Id.* at 63.

Congress passed the NSMIA to amend the federal securities laws "in order to promote efficiency and capital formation in the financial markets." NSMIA, Pub.L. No. 104-290, 110 Stat. 3416 (1996). Defendants base their argument that the NSMIA preempts §§ 17200 and 17500 on 15 U.S.C. § 77r(a)(3). This section, entitled "[e]xemption from State regulation of securities offerings," states that, "[N]o law, rule, regulation, or order or other administrative action of any State or any political local division thereof ... shall directly or indirectly prohibit, limit, or impose conditions, based on the merits of such offering or issuer, upon the offer or sale of any [covered] security ...." 15 U.S.C. § 77r(a)(3).FN12 Defendants also cite to Rule 4624 of the National Association of Securities Dealers ("NASD").FN13 Rule 4624 imposes a reporting requirement on the managing underwriter when ever it proposes "to impose a penalty bid on syndicate members or to conduct syndicate activities pursuant to SEC Rule 104 prior to imposing the penalty bid or engaging in the first syndicate covering activity." Self-Regulatory Organizations; Notice of Filing and Order Granting Accelerated Approval of Proposed Rule Change by National Association of Securities

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 9

Dealers, Inc. Relating to Syndicate Covering Transactions and Members' Obligations To Obtain an Underwriting Activity Report, SEC Release No. 34-39197, 1997 SEC LEXIS 2105 (Oct. 3, 1997) ("NASD Release").

> FN12. A covered security is defined by the Act to include any security listed or authorized for listing on the New York Stock Exchange ("NYSE"), the American Stock Exchange, or the Nasdaq Stock Market. 15 U.S.C. § 77r(b)(1).

> FN13. The NASD is a registered self-regulating organization ("SRO") approved by the Securities and Exchange Commission ("SEC") under 15 U.S.C. § 78o-3(b). As a SRO, the NASD is responsible for regulating its members, subject to the oversight of the SEC. The NASD is required to adopt rules regulating the conduct of its members and to enforce those rules through disciplinary proceedings. 15 U.S.C. § 78o-3(b). The NASD is required by federal law to promulgate rules that balance the need to "protect investors and the public interest [and prohibit] unfair discrimination between customers, issuers, brokers, or dealers," 15 U.S.C. § 78o-3(b)(6), but is prohibited from "impos[ing] any burden on competition that is not necessary or appropriate.". § 78o-3(b)(9). The SEC may amend the NASD rules "as the Commission deems necessary or appropriate to insure the fair administration of the self-regulatory organization, to conform its rules to requirements of this chapter and the rules and regulations thereunder applicable to such organization, or otherwise in furtherance of the purposes of this chapter ...." 15 U.S.C. § 78s(c).

Defendants contend that applying state law to their alleged practice of imposing penalty bids would contravene the clear federal scheme outlined in the NSMIA. Defendants point to legislative history in which the House explained that the purpose of the NSMIA is to designate the federal government as the exclusive regulator of national offerings of securities. Report of Committee on Commerce, H.R. Rep. No. 104-622, 104th Cong., 2d Sess., at 16 (1996). Beyond the express language of the statute, defendants contend that preemption may be implied from the SEC regulatory scheme that currently authorizes the practice of penalty bids. Defendants place particular reliance on Regulation M. Regulation M explicitly covers penalty bids that occur during securities offerings. SEC Release Nos. 33-7375; 34-38067, 62 F.R. 520 (Jan. 3, 1997) ("Final Rules Release"). Regulation M requires individuals imposing penalty bids to comply with certain disclosure and recordkeeping requirements. See e.g., SEC Rule 104(h)(2); 17 C.F.R. § 242.104(h)(2) (requiring syndicate imposing a penalty bid to provide prior notice to the self-regulating organization with authority over that market) § 242.104(h)(3).

*9 The Court finds, based on the express preemption language in the NSMIA and Regulation M promulgated thereunder, that Myers' claims under §§ 17200 and 17500 of the California Business Code are indeed preempted. Myers' allegations that defendants engage in supposedly "unfair" and "discriminatory" penalty bid practices are preempted by the express language of the NSMIA. Further, the SEC has exercised its congressionally delegated rulemaking authority to craft a regulatory scheme, i.e., Regulation M, to deal with these practices and protect investors from fraudulent or misleading conduct associated with the use of penalty bids. To the extent that Myers alleges that defendants' use of penalty bids to discourage flipping are dishonest, inadequately disclosed, coercive, or misleading, those claims are completely preempted by federal statutes and regulations. Myers may seek review of these legal and federally sanctioned practices with the SEC, but not under California's unfair competition and false advertising laws.

Myers responds that California's unfair competition and false advertising laws fall within the NSMIA's savings clause, which permits state laws to regulate

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

fraud or deceit connected with broker-dealer sales practices or transactions.[FN14] As Myers correctly notes, the NSMIA contains a savings clause for some state regulations of securities, which provides that states may still "retain jurisdiction under the laws of such State to investigate and bring enforcement actions with respect to fraud or deceit, or unlawful conduct by a broker or dealer, in connection with securities or securities transactions." 15 U.S.C. § 77r(c)(1).

> FN14. Myers also makes the argument that the NSMIA deals only with the registration of stock and, thus, has no application to postsale or aftermarket practices such as penalty bids. (Pl.'s Opp'n to Defs.' Mot. to Dismiss, at 10.) Myers cites as authority the House Report to the NSMIA, which states that the bill was intended to "preempt, with certain limitations, state laws, rules, and regulations *that require the registration or qualification of ... [certain enumerated] securities or transactions*." H.R.Rep. No. 622, 104th Cong.2d Sess. 26 (1996) (emphasis added). Myers reads the House bill language while turning a blind eye to the statute itself. The NSMIA, by its own terms, covers far more than the registration of securities offerings. It expressly regulates penalty bids and other price stabilization practices that occur *after* the security is registered. Title I of the Act covers, for instance, broker dealer funding, extension of credit by broker-dealers, and other myriad matters. *See* NSMIA, Pub.L. No. 104-290, 110 Stat. 3414 (1996).

Myers maintains that California's unfair competition statutes are not inconsistent with Regulation M and, thus, are not preempted. According to Myers, the "California statutes seek to protect individuals from unfair business practices, while Regulation M regulates price stabilization in the stock market." (Pl.'s Opp'n to Defs.' Mot. to Dismiss, at 13.)

In so arguing, Myers unduly narrows the scope of her complaint and misconstrues the law of federal preemption. As discussed above, Myers takes issue with the practice of penalty bids as a whole, yet tries to frame the allegations in her complaint narrowly in order to escape federal preemption. Myers' allegation that defendants impose penalty bids on small investors while sparing institutional investors is, in essence, a challenge to the discretion that underwriters yield when deciding when and how to impose the penalty bids. Yet, the statute contemplates that underwriters will exercise such discretion. In adopting Regulation M, the SEC explained that the Rule's effect on "small entities will be minimal because the additional disclosure in the offering materials and notification to regulatory authorities is the responsibility of the managing underwriter who is unlikely to fall within the small entity classification because of capital requirements for underwriting." Final Rules Release, 62 F.R. 520, 541.

*10 Myers' citation to an administrative decision in Massachusetts is also unavailing. She cites an administrative decision brought by the Office of the Secretary of the Commonwealth, Securities Division, against several defendants who allegedly engaged in "flipping." (*See* Abrams Decl. Ex. C (attaching *In re Matter of Joseph Charles & Assoc., Inc.,* No. E-98-0053 (Commonwealth of Mass., Office of the Sec. of the Commonwealth, Sec. Div.)). The action was brought pursuant to Massachusetts' Uniform Securities Act., M.G.L. § 110A. The Court is not bound by this unpublished state administrative decision in deciding whether this suit is preempted by federal law. In any event, the Court finds its reasoning unpersuasive in light of the Court's earlier discussion.

Therefore, in light of the foregoing, the Court grants defendants' motion to dismiss because Myers' §§ 17200 and 17500 claims are preempted by the NSMIA and the SEC rules and regulations promulgated thereunder.[FN15]

> FN15. Accordingly, the Court need not reach defendants' remaining arguments that Myers' claims are precluded by the com-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

merce clause or that the Court should abstain in favor of federal agencies.

### III.

Accordingly,

IT IS HEREBY ORDERED that:

1. Myers' countermotion to remand is DENIED.

2. Defendants Merrill Lynch & Co., Inc. and PaineWebber Group Inc.'s motion to dismiss is GRANTED.

N.D.Cal.,1999.
Myers v. Merrill Lynch & Co., Inc.
Not Reported in F.Supp.2d, 1999 WL 696082 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.