UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HOWARD HOUSTON,                          Civil Action No. 07 Civ. 6305 (HB)

              Plaintiff,          ECF Case

      -against-

SEWARD & KISSEL, LLP,

            Defendant.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

KAUFMANN, FEINER, YAMIN,
    GILDIN & ROBBINS, LLP
David E. Robbins (DR 8744)
Wayne M. Josel (WJ 2813)
777 Third Avenue, 24th Floor
New York, New York 10017
212-755-3100

- and -

BANKS LAW OFFICE, P.C.
Robert S. Banks, Jr.
209 SW Oak Street, Suite 400
Portland, Oregon 97204
503-222-7475

Attorneys for Plaintiff

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................ ...............................iii

I.     FACTS..................................................................................................................1

II.    STANDARD OF REVIEW ...................................................................................2

III.   PLAINTIFF'S CLAIMS ARE NOT PREEMPTED BY THE NATIONAL SECURITIES
       MARKET IMPROVEMENTS ACT OF 1996..................................................2

       A.    The Limited Partnership Unites Plaintiff Purchased Were Not Covered Securities
             Under the NSMIA Because Wood River Was Not Eligible For Regulation D
             Exemption From Registration ...............................................................2

       B.    The NSMIA Does Not Preempt State Blue Sky Anti-Fraud Provisions. ..............5

             1.    There is a Presumption Against Preemption ...............................5

             2.    The NSMIA Does Not Expressly Preempt State Anti-Fraud Laws ............5

             3.    The NSMIA Does Not Impliedly Preempt State Anti-Fraud Liability
                   Provisions ............................................................................11

IV.    ORS 59.115 IS NOT UNCONSTITUTIONAL ...............................................15

       A.    The Commerce Clause Is Inapplicable Because Congress Has Authorized The
             States to Regulate Securities Fraud ......................................................16

       B.    ORS 59.115(3) Is Not Clearly Discriminatory......................................18

       C.    ORS 59.115(3) Does Not Violate The Commerce Clause Because It Does Not
             Discriminate Between Interstate and Intrastate Commerce ...................18

       D.    ORS 59.115(3) Does Not Violate The Commerce Clause Because It Regulates
             Only In-State Components Of Interstate Transactions For Legitimate State
             Interests..................................................................................................20

       E.    ORS 59.115 Does Not Offend The Commerce Clause Because It Does Not Even
             Regulate Interstate Commerce...............................................................21

       F.    The Court Cannot Declare the Oregon Statute Unconstitutional Because Seward
             Has Not Satisfied its Obligations under Rule 5.1 of the Federal Rules of Civil
             Procedure ...............................................................................................24

V.    PLAINTIFF'S NON-REGISTRATION CLAIM CANNOT BE DISMISSED BECAUSE
DEFENDANT HAS NOT SHOWN AS A MATTER OF LAW THAT THERE WAS NO
PUBLIC ADVERTISING, GENERAL SOLICITATION OR THAT NO
REMUNERATION WAS PAID .....................................................................................24

# TABLE OF AUTHORITIES

**Federal Cases:**

*A.S. Goldmen & Company, Inc. v. New Jersey Bureau of Securities*,
163 F.3d 780 (3rd Cir. 1999) ......................................................7, 16, 17, 18, 20, 23

*Baker, Watts & Co. v. Miles & Stockbridge*, 876 F.2d 1101 (4th Cir. 1989)...............12

*Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901 (6th Cir. 2007) .........................3, 4

*Caldwell et al. v. Sioux Falls Stock Yards Co. et al* 242 U.S. 559 (1917) ....................16

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994)....12, 13, 16, 17 ...................................................................................................................................

*Edgar v. MITE Corp.*, 457 U.S. 624 (1982) .........................................................18, 21

*CSX Transp. v. Easterwood*, 507 U.S. 658 (1993) .........................................................5

*English v. General Electric. Co.*, 496 U.S. 72 (1990) .................................................5, 11

*Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158 (2d Cir. 2005)...............18

*Grubka v. WebAccess International, Inc.*, 445 F. Supp. 2d 1259 (D. Colo. 2006) .........4

*Hall v. Geiger-Jones Co.*, 242 U.S. 539 (1917) .........................................................16

*Hamby v. Clearwater Consulting Concepts, LLP*, 2006 U.S. Dist. LEXIS 26886 (D. Ark. 2006) 4

*Harris v. City of New York*, 186 F.3d 243 (2d Cir. 1999) .............................................2

*Howard v. Everex Sys., Inc.*, 228 F.3d 1057 (9th Cir. 2000)..........................................14

*H.P. Hood & Sons v. Du Mond*, 336 U.S. 525 (1949)...................................................20

*Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333 (1977).........................21

*In re Parmalat Securities Litigation*, 474 F. Supp. 2d 547 (S.D.N.Y. 2007).....................9, 13, 23

*In re Software Toolworks Inc. Securities Litigation*, 50 F.3d 615 (9th Cir. 1994).........14

*In re World Trade Center Disaster Site Litigation*, 456 F. Supp. 2d 520 (S.D.N.Y. 2006)............5

*Jersey Bureau of Securities*, 163 F.3d 780 (3rd Cir. 1999) .........................................17

*Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101 (2d Cir. 2001) ...................................6

*Life Partners, Inc. v. Miller*, 420 F. Supp. 2d 452 (D. Va. 2006) *aff'd* 484 F.3d 284 (4th Cir. 2007)...........................................................................................................................21

*Merrick et al. v. Halsey & Co. et al*, 242 U.S. 568 (1917) ...............................................16

*Myers v. Merrill Lynch & Co.*, 1999 U.S. Dist. LEXIS 22642 (N.D. Cal. Aug. 23, 1999) ...........9

*Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104 (2d Cir. 2001) .....................................19

*Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970)...........................................................19

*SEC v. Frank*, 388 F.2d 486 (2d Cir. 1968)..................................................................14

*Sprietsma v. Mercury Marine*, 537 U.S. 51 (2002) .........................................................6

*Underhill Associates, Inc. v. Bradshaw*, 674 F.2d 293 (4th Cir. 1982)...........................21

*United Haulers Ass'n v. Oneida-Herkimer Solid Waste Management. Authority*, 127 S. Ct. 1786 (2007)..............................................................................................................18

*United States Baseball v. City of New York*, 2007 U.S. Dist. LEXIS 63234 (S.D.N.Y. 2007).....19 21 ..................................................................................................................

*White v. Massachusetts Council of Constr. Employers, Inc.*, 460 U.S. 204 (1983) ...............16

*Williamson Tobacco Corp. v. Pataki*, 320 F.3d 200 (2d Cir. 2003)..............................19

*Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597 (1991) .........................................11

*Zuri-Invest Ag v. Natwest Finance Inc*, 177 F. Supp. 2d 189 (S.D.N.Y. 2001) ...................7, 8, 12

**State Cases:**

*Buist v. Time Domain Corp.*, 926 So.2d 290 (Ala. 2005) ...............................................4

*Eucleia Partners v. American Express & Business Services, et al., Supreme Court of the State of New York, New York County, No. 600704/2006* .........................................23

**Federal Statutes:**

15 U.S.C. § 77 ................................................................................2, 3, 6, 7, 16, 17

15 U.S.C. § 78 ..........................................................................................................8

**State Statutes:**

General Laws of Mass. Ch. 110A § 410(b) ........................................................................15

Idaho Code § 30-14-509(3) .............................................................................................15

Indiana Code Ann. § 23-19-5-9(3) ..................................................................................15

N.J. Stat. § 49:3-71(d) ....................................................................................................15

ORS 59.035(5) .................................................................................................................24

ORS 59.035(12) ...............................................................................................................24

ORS 59.049(1)(2) ..............................................................................................................9

ORS 59.115 ......................................................................................................................21

ORS 59.115(3) ...........................................................1, 9, 13, 14, 16, 18, 19, 22, 23

ORS 59.335(1) ............................................................................................................21, 22

Oregon Laws 1967, chapter 537, § 13 ..........................................................................12

**Federal Regulations:**

17 C.F.R §230.502 .............................................................................................................3

17 C.F.R. § 230.506 ........................................................................................................2, 3

**Court Rules:**

FRCP 5.1 ..........................................................................................................................24

FRCP 8(a) ...........................................................................................................................3

FRCP 12(b)(6) .................................................................................................................1, 2

Local Rule 24.1(b) ...........................................................................................................24

**Other Authorities:**

1 Thomas Lee Hazen, *Treatise on the Law of Securities Regulation*, § 8.1[3] ................4

1996 U.S.C.C.A.N. 3897 .................................................................................................17

Joseph C. Long, *Blue Sky Law* (Clark Boardman Callahan 2005) .................................................. 11

Revised Uniform Securities Act §509(g)(3) ........................................................................ 15, 23

New York Bar Ass'n Lawyer's Code of Professional Responsibility DR 4-101(B)(C) ............... 22

Oregon Rules of Professional Conduct D.R. 4-101(B)(C) ......................................................... 22

I.    **FACTS**

Plaintiff, Howard Houston, is an individual residing in Oregon.  He invested $2.75

million in the Wood River Fund, L.P. ("Wood River").  As both parties here acknowledge, Wood

River was a fraudulent offering.  Seward Memorandum at 5-6.  Its principal, John Whittier, was

indicted and has pled guilty to three counts of securities fraud.  The fund itself was placed into

receivership by the Securities and Exchange Commission.  Complaint ¶ 1.

Plaintiff brings this case against defendant Seward & Kissel, LLP ("Seward") for

violations of the Oregon securities laws.  He alleges a failure to register Wood River in Oregon,

as well as material misrepresentations and omissions in the offering materials.  Complaint ¶ ¶ 15,

16.  Mr. Houston further alleges that Seward is liable, inter alia, under ORS 59.115(3), which

provides:

> Every person who directly or indirectly controls a seller liable under subsection
> (1) of this section, every partner, limited liability company manager, including a
> member who is a manager, officer or director of such seller, every person
> occupying a similar status or performing similar functions, and every person who
> participates or materially aids in the sale is also liable jointly and severally with
> and to the same extent as the seller, unless the nonseller sustains the burden of
> proof that the nonseller did not know, and, in the exercise of reasonable care,
> could not have known, of the existence of facts on which the liability is based.

Houston alleges that Seward participated and materially aided the unlawful sales, and did

so with "actual knowledge of many of the material misrepresentations and omissions described

above."  Complaint ¶¶ 21, 15L.  Defendant moves to dismiss the case, ostensibly under Rule

12(b)(6) of the Federal Rules of Civil Procedure[1], for failure to state a claim, arguing that the

Oregon Blue Sky law liability provisions have been preempted by the National Securities

---

[1] Plaintiff does not concede that Seward's motion is properly a Rule 12(b)(6) motion due to the
numerous exhibits outside the pleadings that it offers.  However, he does not argue the point
because, under any standard, Seward's motions must be denied.

Markets Improvement Act of 1996 ("the NSMIA"). Seward also argues that the Oregon law is unconstitutional and that it violates the dormant Commerce Clause of the United States Constitution. Plaintiff opposes the motion on all grounds.

## II.    STANDARD OF REVIEW

On a motion to dismiss, all factual allegations are taken as true. *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999). Dismissal of a complaint for failure to state a claim pursuant to Rule 12(b)(6) is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*

## III.    PLAINTIFF'S CLAIMS ARE NOT PREEMPTED BY THE NATIONAL SECURITIES MARKET IMPROVEMENTS ACT OF 1996

Seward has not established for Rule 12(b)(6) purposes that the Wood River securities were covered securities subject to the NSMIA, because they were not. In addition, the legislative history of the NSMIA, the plain language of the statute, and the case law all indicate that the federal NSMIA statute does not expressly or impliedly preempt state blue sky claims for misrepresentations and omissions against participants.

### A.    The Limited Partnership Units Plaintiff Purchased Were Not Covered Securities Under The NSMIA Because Wood River Was Not Eligible For Regulation D Exemption From Registration.

Seward's argument that NSMIA pre-empts Plaintiff's claims rests on the contention that the Wood River offering is a covered security under 15 U.S.C. § 77r(b)(4)(D), which provides that securities may be exempt from registration "pursuant to Commission rules and regulations." Seward Memorandum at 11. The regulation that Seward relies on, 17 C.F.R. § 230.506 ("Regulation D"), provides an exemption from securities registration requirements when certain conditions are met. Most notably, Regulation D applies only where "[t]here are no more than or

the issuer reasonably believes that there are no more than 35 purchasers of securities from the issuer in any offering under this section." 17 C.F.R. § 230.506(2); 15 U.S.C. § 77r(b)(4)(D).[2] Wood River does not meet the 35 purchaser requirement, and Seward offers no evidence in its motion to dismiss that it does. Seward points to the legend and other statements in the Wood River Memorandum Offering Memorandum that proclaim that the securities are exempt from registration pursuant to Regulation D. Seward Memorandum at 11.[3] This is tantamount to arguing that if an exemption is so much as *claimed* in the offering materials, it is exempt from state securities regulation.

A defendant made a similar (albeit stronger) argument recently in *Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 910-911 (6th Cir. 2007). The Sixth Circuit, which is the only federal appellate decision known to plaintiffs to have addressed the issue, flatly rejected the argument. In a passage particularly applicable to this case, the appeals court stated:

> to hold that NSMIA preempts state regulation wherever offerings
> merely purport to be filed pursuant to a valid federal registration
> exemption, or where parties have filed for, but fail to qualify for,
> an SEC registration exemption, would effectively eviscerate state
> registration requirements.. . . Therefore, we hold that NSMIA
> preempts state securities registration laws with respect only to
> those offerings that actually qualify as "covered securities"
> according to the regulations that the SEC has promulgated.

---

[2]Regulation D has other requirements that would also exclude the Wood River offering. See, e.g., the requirements of 17 C.F.R. § 230.502(c)(relating to general solicitations and advertising).

[3]Seward also contends that "plaintiff does not allege that the securities were not issued pursuant to Regulation D." Seward Memorandum at 11. Seward offers no support for this contention and plaintiff will not address it, other than to say that: (a) he has no obligation to allege that Wood River is not a covered security under the NSMIA; (b) he alleges in paragraph 32 of the Complaint that "The Wood River Security was not registered in Oregon and neither the security nor the sales to plaintiff were exempt under any applicable rule or regulation;" and (c) his complaint meets the requirements of Rule 8(a) of the Federal Rules of Civil Procedure that require "a short and plain statement of the claim showing that the pleader is entitled to relief."

Page 3 - PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

*Id.*

Other courts and commentators are in agreement. In *Buist v. Time Domain Corp.*, 926 So.2d 290 (Ala. 2005), defendant argued that the investment was a covered security exempt from registration, and that therefore the NSMIA preempted the claims for violations of the Alabama securities laws, which were similar to the Oregon claims made by Houston in this case. Defendant Time Domain supported its argument with more than Seward does here. At summary judgment, it offered two Form D filings that it had sent to the Alabama Securities Commission, as well as a letter from the Alabama Commission that the filings had satisfied its current requirements. *Id.* at 295. The court found that to be insufficient. It held that *claiming and filing for* a Regulation D exemption was not enough, and that defendant had to prove that it was *entitled* to a Regulation D exemption to enjoy "covered security" status. *Id.* at 298.

Other authorities are in agreement. *See, e.g.*, H*amby v. Clearwater Consulting Concepts, LLP,* 2006 U.S. Dist. LEXIS 26886 (D. Ark. 2006)(a security has to actually be a "covered security" before federal preemption applies'); *Grubka v. WebAccess International, Inc.*, 445 F. Supp. 2d 1259, 1270 (D. Colo. 2006); and 1 Thomas Lee Hazen, *Treatise on the Law of Securities Regulation*, § 8.1[3] (2007 Pocket Part) ("Notwithstanding some authority indicating the contrary, the better view is that in order to establish preemption, it must be established that the applicable federal exemption was in fact applicable to the offering. It is not sufficient to allege that the securities were offered in purported compliance with the exemption").

As the court will learn in this case, Wood River did qualify for Regulation D treatment because it was sold to far more than 35 purchasers. As Seward's own supporting papers indicate, among other holdings, Wood River owned 5,222,980 shares of Endwave common stock, a position that was worth approximately $162 million. *See:* Declaration of Jana C. Ramsey

Page 4 - PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

(Docket No. 10), Exhibit D, page 13, ¶ 37.   Regulation D is designed for small offerings.   While plaintiffs have not had the benefits of discovery, it is unlikely that Wood River, which held huge Endwave positions, qualified for an exemption under Regulation D

For present purposes it is clear that Seward has not proven, and cannot prove, that Wood River is a covered security subject to preemption.  As a result, its preemption argument fails and the court need not consider the other preemption arguments, all of which require an initial finding of a covered security.

**B.      The NSMIA Does Not Preempt State Blue Sky Anti-Fraud Provisions.**

**1.  There is a Presumption Against Preemption.**

Congress has authority under the Supremacy Clause of the Constitution, Article VI, Clause 2, to preempt state law.  It may do so expressly, by passing a law which on its face preempts state law, in which case preemption is generally evident from the statute.  *English v. General Electric. Co.*, 496 U.S. 72, 79 (U.S. 1990).  Or, it may do so by implication, by field preemption, "where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively."  *Id.*

However, there is a strong presumption against preemption.  Courts must presume "that Congress does not intend to displace state law. [Citations omitted].  Preemption will not be found unless it is the 'clear and manifest purpose of Congress.'"  *In re World Trade Center Disaster Site Litigation*, 456 F. Supp. 2d 520 (S.D.N.Y. 2006).  *See also*: *CSX Transp. v. Easterwood*, 507 U.S. 658, 663-664 (1993).

**2.      The NSMIA Does Not Expressly Preempt State Anti-Fraud Laws.**

Where the statute at issue includes an express preemption clause, the "task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily

contains the best evidence of Congress' pre-emptive intent." *Sprietsma v. Mercury Marine*, 537

U.S. 51, 63 (2002).   In the NSMIA, the scope of preemption is set forth in 15 U.S.C. §77r(a)(1)-

(3). It identifies for preemption only the following three areas: (1) the "registration or

qualification of [covered] securities;" (2) imposing any condition on the use of any offering

document or proxy statement of any covered security; and (3) the merit review of any offering.

There is no suggestion in the NSMIA language that Congress intended to take from the states the

authority either to impose anti-fraud liability, or to identify the participants who are subject to

it—the core issues in this motion.

Since the language of the NSMIA is clear, a review of the legislative history is

unnecessary.  However, to do so only clarifies further that the NSMIA does not preempt state

anti-fraud provisions.  The NSMIA was enacted eleven years ago and its purpose was clear: to

avoid state and federal duplication in the *registration* of securities.  The Second Circuit

observed:

> The primary purpose of NSMIA was to preempt state 'Blue Sky'
> laws which required issuers to register many securities with state
> authorities prior to marketing in the state. By 1996, Congress
> recognized the redundancy and inefficiencies inherent in such a
> system and passed NSMIA to preclude states from requiring
> issuers to register or qualify certain securities with state authorities.

*Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 108 (2d Cir. 2001).[4]

The Second Circuit's observation is supported by the legislative history.  In reporting on

the NSMIA, the Commerce Committee Report notes that it was the "Committee's intention not

---

[4]The *Landers* court was comparing the NSMIA with the Securities Litigation Uniform Standards
Act of 1996 ("SLUSA"), 15 U.S.C. § 77p. Unlike the NSMIA, the SLUSA makes clear that
Blue Sky fraud provisions are preempted federal law in certain types of class action cases. The
NSMIA, by contrast, does not include fraud liability provisions in any of its preemption
provisions.

Page 6 - PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

to alter, limit, expand, or *otherwise affect in any way any State statutory or common law* with

respect to fraud or deceit . . . in connection with securities or securities transactions."

Commerce Committee Report at 34, reprinted in 1996 U.S.C.C.A.N. at 3897.  (Emphasis added.)

In referring to that report in the course of a discussion of preemption and the NSMIA, Judge

Sheindlin of this Court observed that "A more clear cut statement against preemption would be

hard to find." *Zuri-Invest Ag v. Natwest Finance Inc*, 177 F. Supp. 2d 189, 194 (S.D.N.Y. 2001).

The Third Circuit expresses a similar view:

> Although the enactment of the National Securities Markets
> Improvement Act of 1996 narrowed the role of state blue sky laws
> by expanding the range of federal preemption, federal and state
> regulations each continue to play a vital role in eliminating
> securities fraud and abuse. *See* Loss & Seligman at 60-62;
> Manning G. Warren III, *Reflections on Dual Regulation of
> Securities Regulation: A Case Against Preemption*, 25 B.C. L.
> Rev. 495, 497, 501-27 (1984) (describing how Congress, the
> courts, and the SEC have expressly authorized the enforcement of
> state blue sky laws).

*A.S. Goldmen & Company, Inc. v. New Jersey Bureau of Securities*, 163 F.3d 780 (3rd Cir. 1999).

In *Zuri-Invest Ag*, this Court held that the NSMIA did not expressly or impliedly preempt

state common law claims for fraud and aiding and abetting fraud in a securities transaction.

Defendant there contended that the NSMIA preempted those claims, which were based, *inter

alia*, upon misrepresentations and omissions in an offering document.  177 F. Supp. 2d at 194,

The court disagreed.  "Congress never intended the NSMIA to displace the right to pursue such

claims," said the court.  *Id*. at 194.  In partial support of its conclusion, the court noted, both the

1933 and 1934 Acts, 15 U.S.C. §§ 77p(a) and 77bb(a), provide that their remedies shall be "in

addition to any and all other rights and remedies that may exist at law or in equity."  Since the

NSMIA left those savings provisions untouched, there was clearly no intent to preempt them.

The court's decision rested in part on the fact that the Securities Litigation Uniform Standards Act, 15 U.S.C. § 78bb(f) ("SLUSA"), which was specifically enacted to amend the federal securities laws to add preemption provisions, also did not disturb state claims for fraud. For those reasons, Judge Scheindlin held that the NSMIA does not preempt state claims for fraud. *Zuri-Invest Ag*, 177 F.Supp.2d at 194.

Seward only mentions the *Zuri-Invest Ag* opinion in a footnote, and dismisses the case by saying that it involved common law rather than statutory claims. Seward Memorandum at 13-14, n. 3. Whether the state law claims were enacted by the state legislature or were developed by the courts is irrelevant to the preemption analysis. Not only is there no logical reason to distinguish between state statutory and common law claims for preemption purposes, but, as already noted, the Commerce Committee report makes clear that the NSMIA was not intended to affect state statutory or common law claims. See discussion at page 7, *supra*.

Seward also states that *Zuri-Invest Ag* is distinguishable because the claims there were not against a secondary actor. That distinction is immaterial. There is nothing anywhere in the NSMIA to suggest, even remotely, that it preempts state law claims against secondary actors in a securities fraud. And, the federal laws themselves provide for limited secondary liability of persons who are not primary actors in the purchase or sale. Section 20(a) of the 1934 Securities Exchange provides "Every person who, directly or indirectly, controls any person liable . . . shall also be liable jointly and severally with and to the same extent as such controlled person . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a). That statute does not require the control person to be involved in the sale. Rather it "requires control only of a person liable under the chapter, not of the transaction constituting the violation," and "a plaintiff relying

Page 8 - PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

on Section 20(a) is not obliged to allege or prove a controlling person's culpable participation in the violation." *In re Parmalat Securities Litigation*, 474 F. Supp. 2d 547 (S.D.N.Y. 2007). The fact that a state claim imposes liability on a secondary actor cannot be grounds for preemption, when the federal statute also imposes liability on secondary actors.

Seward further argues that, by imposing civil liability for those who participate in preparing offering materials that contain misrepresentations and omissions, ORS 59.115(3) impermissibly imposes conditions and limitations on the use of offering documents in violation of the NSMIA. Seward Memorandum at 13. A plain reading of the Oregon statute shows that it is an anti-fraud, civil liability provision. Nothing there imposes impermissible registration requirements under Oregon law. Indeed, although the NSMIA has been in effect for eleven years, no court has ever suggested that the Oregon liability provisions are preempted.

The only NSMIA preemption case that Seward cites is *Myers v. Merrill Lynch & Co.*, 1999 U.S. Dist. LEXIS 22642 (N.D. Cal. Aug. 23, 1999). That case involved the application of the NSMIA to California's Little FTC Act. Plaintiff alleged that the practice of charging "penalty bids" to customers who purchased and then quickly sold newly marketed shares of stock violated unfair trade provisions of those statutes. The court there held that the California statutes could not be used to challenge the penalty bid process, because the NSMIA "expressly regulates penalty bids and other price stabilization practices that occur after the security is registered." The *Myers* case did not involve the NSMIA sections at issue here. And, unlike the present case, the conduct at issue in that case was specifically regulated by federal law. Here, federal law does not regulate state law liability for participating in illegal securities transactions.

The Oregon legislature was fully aware of the preemptive requirements of the NSMIA, and in 1997 amended the state's blue sky laws to be in compliance. ORS 59.049(1) and (2)

Page 9 - PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

provide that federally covered securities as defined by Section 18(b) of the 1933 Securities Act (the NSMIA, 15 U.S.C. § 77r(b)) only required notice filings in Oregon, and no longer require the filing of a registration statement. The Oregon legislature did not amend the liability provisions of the Oregon Securities Law after the enactment of the NSMIA because it was widely understood that the NSMIA had no preemptive effect on civil liability provisions.

   This was further evidenced by the passage of the Revised Uniform Securities Act of 2002. The RUSA is the foundation for most state blue sky laws. It was approved in 2002, and last amended in 2005 by the National Conference of Commissioners on Uniform State Laws. The RUSA was approved by the American Bar Association on February 10, 2003. (See: website at www.nccusl.org). The distinguished National Conference Drafting Committee was well aware of the NSMIA; the 2002 amendments were primarily designed to comply with the NSMIA. The Official Notes state:

> A second overarching theme of the Act is achieving consistency with the National Securities Markets Improvement Act of 1996 ("NSMIA"). New definitions were added to define in Section 102(6), *federal covered investment adviser*, and in Section 102(7), *federal covered security*. NSMIA also had implications for several securities *registration exemptions* (see Sections 201(3), 201(4), 201(6), 202(4), 202(6), 202(13), 202(14), 202(15) and 202(16)); securities *registration* (Sections 301(1) and 302); and the *broker-dealer, agent, investment adviser, and investment adviser representative provisions* (see especially Sections 402(b)(1) and (5), 403(b)(1)(A) and (2), 405 and 411). (Emphasis added.)

*See*: Prefatory Note, at http://www.law.upenn.edu/bll/archives/ulc/securities/2002final.htm. Notably, the Drafting Committee of the RUSA did not reference or make any changes to the liability provisions in bringing the RUSA into compliance with the NSMIA. As discussed at page 14, *infra*, the RUSA includes a liability provision for those who materially aid unlawful sales.

It was and is well understood in the securities regulation arena that the NSMIA imposed

preemptive requirements on the registration process, but not on liability provisions.

### 3. The NSMIA Does Not Impliedly Preempt State Anti-Fraud Liability Provisions.

Contrary to Seward's argument, there is no implied preemption, either. To overcome the

presumption against implied preemption, Seward would need to establish that securities

regulation is "a field that Congress intended the Federal Government to occupy exclusively."

*English v. General Electric. Co.*, 496 U.S. 72, 79 (1990). There would have to be a scheme of

federal regulation that is:

> 'so pervasive as to make reasonable the inference that Congress
> left no room for the States to supplement it,' if 'the Act of
> Congress . . . touch[es] a field in which the federal interest is so
> dominant that the federal system will be assumed to preclude
> enforcement of state laws on the same subject,' or if the goals
> 'sought to be obtained' and the 'obligations imposed' reveal a
> purpose to preclude state authority. [Citations omitted.] When
> considering pre-emption, 'we start with the assumption that the
> historic police powers of the States were not to be superseded by
> the Federal Act unless that was the clear and manifest purpose of
> Congress.'

*Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 542-43 (1991).

It is difficult to imagine a field further removed from those standards than securities

regulation, which has always been a joint partnership of the states and the federal government.

Each state has historically had its own blue sky laws, which are themselves subjects of treatises

and around which a considerable body of jurisprudence has developed. *See, e.g.,* Joseph C.

Long, *Blue Sky Law* (Clark Boardman Callahan 2005). The North American Securities

Administrators Association, an organization of state securities administrators and regulators that

administers and enforces state securities laws, with members from each of the 50 states, has been

in existence for more than 100 years. *See* www.nasaa.org. And, the National Conference of

Commissioners on Uniform State Laws has drafted and revised a state Uniform Securities Act

since at least 1929. *See:* website at www.nccusl.org. As the Fourth Circuit observed:

> State securities laws exist in every state, the District of Columbia,
> and Puerto Rico, and, far from preempting the field, Congress has
> expressly preserved the role of the states in securities regulation.
> * * *
> The states enjoy broad powers to regulate such diverse subjects as
> . . . fraud in the sale or purchase of securities and the rendering of
> investment advisory services.

*Baker, Watts & Co. v. Miles & Stockbridge,* 876 F.2d 1101, 1107 (4th Cir. 1989).

As Judge Scheindlin aptly put it in concluding that the NSMIA does not impliedly

preempt state law securities-based liability claims, "Given the concurrent nature of federal/state

jurisdiction over securities, the NSMIA clearly lacks the complete preemptive force needed for

field preemption." *Zuri-Invest Ag,* 177 F.Supp.2d at 195.

Despite that authority, Seward contends that the case of *Central Bank of Denver, N.A. v.*

*First Interstate Bank of Denver, N.A.,* 511 U.S. 164 (1994) supports its argument for implied

preemption. Seward Memorandum at 15 - 16. Its argument appears to be that, since *Central*

*Bank* precluded claims for aiding and abetting liability under Section 10(b) of the 1934 Securities

Act, any state law claims for secondary liability must be preempted under the NSMIA.

However, the *Central Bank* case involved neither preemption, state law, nor the NSMIA.

Indeed, the words "preemption" or its derivatives, or any reference to the NSMIA, appear

nowhere in the Court's *Central Bank* opinion.

Nevertheless, Seward argues that the eleven year old *Central Bank* decision should now

be expanded to invalidate an Oregon statute that existed in 1967 (Oregon Laws 1967, chapter

537, § 13) because attorneys "may be deterred from assisting clients in placing their securities in

certain states, undermining the congressional goal of reducing costs and burdens of participating

Page 12 - PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

in the market." Seward Memorandum at 16.  Seward points to no evidence whatsoever that this

has ever occurred.  And, the argument ignores the "field preemption" standards for implied

preemption.  A forty year old state statute cannot be invalidated on grounds that some lawyers

"may be deterred from assisting their clients."

Seward also argues that Oregon's law is impliedly preempted by the NSMIA because

"under ORS 59.115(3), liability may be extended beyond sellers to persons who have not

themselves committed an unlawful act . . . allowing plaintiffs to bring actions against secondary

actors without even requiring allegations of scienter or independent culpability . . ." Seward

Memorandum at 14-15.  Seward contends that this frustrates the NSMIA's goal of creating an

efficient national securities market.  *Id*. at 14.

That argument does not hold water.  Not only do the 1933 and 1934 Securities Acts

recognize the authority of the states to regulate fraud; see discussion at page 16, *infra*, but they

themselves imposes liability on some secondary actors, even when they do not participate in the

violation.  *In re Parmalat Securities Litigation*, 474 F. Supp. 2d 547 (S.D.N.Y. 2007) (imposing

Section 20(a) control person liability even where defendant has not participated in the violation

at issue).  Even *Central Bank* recognizes secondary liability:

> The absence of § 10(b) aiding and abetting liability does not mean
> that secondary actors in the securities markets are always free from
> liability under the securities Acts. Any person or entity, including a
> lawyer, accountant, or bank, who employs a manipulative device
> or makes a material misstatement (or omission) on which a
> purchaser or seller of securities relies may be liable as a primary
> violator under 10b-5, assuming *all* of the requirements for primary
> liability under Rule 10b-5 are met.

*Central Bank*, 511 U.S. at 191.

Other federal courts have imposed liability on attorneys for their services in securities offerings. The Ninth Circuit has established that "substantial participation or intricate involvement in the preparation of fraudulent statements is grounds for primary liability even though that participation might not lead to the actor's actual making of the statements." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1061 n. 5 (9th Cir. 2000). *See also In re Software Toolworks Inc. Securities Litigation*, 50 F.3d 615, 628-29 and n. 3 (9th Cir. 1994) (drafting or editing false statements that the drafter-editor knows will be publicly disseminated is sufficient to be considered a primary violator). And, the Second Circuit stated in a well-known case that "[a] lawyer has no privilege to assist in circulating a statement with regard to securities which he knows to be false simply because his client has furnished it to him." *SEC v. Frank*, 388 F.2d 486 (2d Cir. 1968). *See also* discussion at page 9, *supra*.

Seward complains that the Oregon statute has no scienter requirement, but it mischaracterizes ORS 59.115(3). Oregon's is a burden shifting statute. Instead of requiring plaintiff to prove scienter, the Oregon legislature made scienter an affirmative defense. It allows a defendant to avoid liability if he "sustains the burden of proof that the nonseller did not know, and, in the exercise of reasonable care, could not have known, of the existence of facts on which the liability is based."

The scienter burden-shifting provision of ORS 59.115(3) is similar to many other statutes, both state and federal. In fact, the Oregon statute is modeled on the 1957 version of the Uniform Securities Act. The current model act, the Revised Uniform Securities Act of 2002 (RUSA), still provides for participant liability against anyone who is

> an employee of or associated with a person liable under
> subsections (b) through (f) and who materially aids the conduct
> giving rise to the liability, unless the individual sustains the burden

of proof that the individual did not know and, in the exercise of
reasonable care could not have known, of the existence of conduct
by reason of which the liability is alleged to exist."

RUSA §509(g)(3).

Other states have aiding and abetting liability statutes modeled on the RUSA, and have

adopted the RUSA burden-shifting scienter scheme adopted in Oregon.[5]  The fact that Oregon

imposes liability on those who participate and materially aid an unlawful transaction where they

cannot establish their good faith defense in securities cases is not grounds to invalidate the

Oregon statute and, by implication, the statutes of other states.

---

[5] *See, e.g., Idaho Code § 30-14-509(3)*("An individual who is an employee of or associated with
a person liable under subsections (b) through (f) of this section and who materially aids the
conduct giving rise to the liability, unless the individual sustains the burden of proof that the
individual did not know and, in the exercise of reasonable care could not have known, of the
existence of conduct by reason of which the liability is alleged to exist"); *Indiana Code Ann. §
23-19-5-9(3)*("An individual who is an employee of or associated with a person liable under
subsections (a) through (c) and who materially aids the conduct giving rise to the liability, unless
the individual sustains the burden of proof that the individual did not know, and in the exercise
of reasonable care could not have known, of the existence of conduct by reason of which the
liability is alleged to exist); *General Laws of Massachusetts, Ch. 110A § 410*(b)(" . . . every
employee of such a seller who materially aids in the sale, and every broker-dealer or agent who
materially aids in the sale are also liable jointly and severally with and to the same extent as the
seller, unless the non-seller who is so liable sustains the burden of proof that he did not know,
and in exercise of reasonable care could not have known, of the existence of the facts by reason
of which the liability is alleged to exist); *N.J. Stat. § 49:3-71(d)*( "Every person who directly or
indirectly controls a seller liable under subsection (a) of this section, every partner, officer, or
director of such a seller, or investment adviser, every person occupying a similar status or
performing similar functions, every employee of such a seller or investment adviser who
materially aids in the sale or in the conduct giving rise to the liability, and every broker-dealer,
investment adviser, investment adviser representative or agent who materially aids in the sale or
conduct are also liable jointly and severally with and to the same extent as the seller or
investment adviser, unless the nonseller who is so liable sustains the burden of proof that he did
not know, and in the exercise of reasonable care could not have known, of the existence of the
facts").

Page  15 - PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

## IV.    ORS 59.115 IS NOT UNCONSTITUTIONAL

In a trilogy of cases known as The Blue Sky Cases, the Supreme Court long ago established the rights of the states to regulate securities against a constitutional challenge based on the commerce clause and the Fourteenth Amendment. *Hall v. Geiger-Jones Co.*, 242 U.S. 539 (1917); *Caldwell et al. v. Sioux Falls Stock Yards Co. et al* 242 U.S. 559 (1917); and *Merrick et al. v. Halsey & Co. et al*, 242 U.S. 568 (1917). Those cases stand for the proposition that states have the power to regulate out-of-state actors involved in securities transactions within their borders. Those cases are still relied upon by courts today, and their principles have not been disturbed for nearly 100 years. "[T]he overwhelming majority of courts that have considered dormant commerce clause challenges to blue sky laws" have upheld the state statutes. *A.S. Goldmen & Company, Inc. v. New Jersey Bureau of Securities*, 163 F.3d 780 (3rd Cir. 1999) *cert den.* 528 U.S. 868 (1999). Against that great weight of authority, Seward argues that ORS 59.115(3) is unconstitutional.

### A.    The Commerce Clause Is Inapplicable Because Congress Has Authorized The States To Regulate Securities Fraud.

"Where state or local government action is specifically authorized by Congress, it is not subject to the Commerce Clause even if it interferes with interstate commerce." *White v. Massachusetts Council of Constr. Employers, Inc.*, 460 U.S. 204, 213 (1983).

Congress has made it abundantly clear that states may regulate securities. Both the 1933 and 1934 Securities Acts, 15 U.S.C. §§ 77p(a) and 77bb(a), provide that their remedies shall be "in addition to any and all other rights and remedies that may exist at law or in equity."

The Supreme Court acknowledged this federal-state partnership in *Central Bank*. The Court discussed the choice that Congress made about aider and abettor liability in the federal

securities laws, even though a number of states had aider and abettor liability statutes. The Court said:

> We note that the 1929 Uniform Sale of Securities Act contained a private aiding and abetting cause of action. And at the time Congress passed the 1934 Act, the blue sky laws of 11 States and the Territory of Hawaii provided a private right of action against those who aided a fraudulent or illegal sale of securities. See Abrams, The Scope of Liability Under Section 12 of the Securities Act of 1933: "Participation" and the Pertinent Legislative Materials, 15 Fordham Urban L.J. 877, 945, and n. 423 (1987) (listing provisions). Congress enacted the 1933 and 1934 Acts against this backdrop, but did not provide for aiding and abetting liability in any of the private causes of action it authorized.

511 U.S. at 184-85 (emphasis added).

Congress could have chosen to preempt the entire field of securities regulation, or it could have prevented participant liability at the state level. It chose not to do either. When it enacted the SLUSA, Congress preempted the application of state securities liability statutes, but only for class action cases. The NSMIA further exemplifies Congress's intent to allow the states to regulate fraud within their borders. As noted above, the Commerce Committee Report notes that it was the "Committee's intention not to alter, limit, expand, or *otherwise affect in any way any State statutory or common law* with respect to fraud or deceit . . . in connection with securities or securities transactions." Commerce Committee Report at 34, reprinted in 1996 U.S.C.C.A.N. at 3897. (Emphasis added.) *See also*: *A.S. Goldmen & Company, Inc. v. New Jersey Bureau of Securities*, 163 F.3d 780, 781 (3rd Cir. 1999) *cert den.* 528 U.S. 868 (1999), where the court said, "[d]espite this complex federal scheme, Congress, the courts, and the SEC have made explicit that federal regulation was not designed to displace state blue sky laws that regulate interstate securities transactions. *See, e.g.,* 15 U.S.C. § 77r(c) (1997). The *Goldmen* court could be confident in that statement because the SEC appeared as amicus curiae to support

Page 17 - PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

New Jersey's position that its securities law did not violate the dormant commerce clause. *Goldmen*, 163 F.3d at 786, n.12 (discussed in detail at 20, 21, *infra*).

States have historically regulated securities fraud, with the approval of Congress and its policing authority, the SEC. For that reason alone, Seward's Commerce Clause challenge must be denied.

**B.    ORS 59.115(3) Is Not Clearly Discriminatory.**

Statutes regulating areas of commerce not expressly permitted by Congress can violate the dormant Commerce Clause if they clearly discriminate against interstate commerce in favor of intrastate commerce. To meet this "per se" test, the violating statute must have "the practical effect of extraterritorial control of commerce occurring entirely outside the boundaries of the state in question." *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 168 (2d Cir. 2005). And, there must be "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *United Haulers Ass'n v. Oneida-Herkimer Solid Waste Management. Authority*, 127 S. Ct. 1786 (U.S. 2007). Or, as the Second Circuit puts it, there must be an "in-state commercial interest that is favored, directly or indirectly, by the challenged statutes at the expense of out-of-state competitors." *Grand River Enterprises*, 425 F.3d at 169.

ORS 59.115(3) does not meet any of those tests; it applies equally to residents and non-residents alike. *Cf. Edgar v. MITE Corp.*, 457 U.S. 624 (1982)(holding that state statute which permitted state to invalidate transactions occurring outside its borders was unconstitutional). The defect in Seward's argument, Seward Memorandum at 18-21, is evident by a plain reading of the Oregon statute.

C.    **ORS 59.115(3) Does Not Violate The Commerce Clause Because It Does Not Discriminate Between Interstate and Intrastate Commerce.**

A statute that does not patently discriminate may still be held to violate the dormant Commerce Clause, but only where it places a burden on interstate commerce that is clearly excessive in relation to the putative local benefits. *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970). Furthermore,

> [f]or a state statute to run afoul of the *Pike* standard, the statute, at a minimum, must impose a burden on interstate commerce that is qualitatively or quantitatively different from that imposed on intrastate commerce. [Citing numerous authorities]. Under *Pike*, if no such unequal burden be shown, a reviewing court need not proceed further.

*Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 109 (2d Cir. 2001). *See also*: *Brown & Williamson Tobacco Corp. v. Pataki*, 320 F.3d 200, 209 (2d Cir. 2003) (balancing test does not permit courts to second guess legislatures; burden on interstate commerce must be different from that imposed on intrastate commerce). Where the effect of the regulation is the same in and outside of the enacting state's territory, a Commerce Clause challenge will fail. *United States Baseball v. City of New York*, 2007 U.S. Dist. LEXIS 63234 (S.D.N.Y. 2007). In that case, the court rejected a Commerce Clause challenge against the New York City regulation prohibiting the use of aluminum baseball bats in high school competition. The court noted that the plaintiff's assertion that commerce was affected because there would be a reduction in interstate games played was highly speculative. Even if there was an effect on interstate commerce, the court said, the regulation did not violate the Commerce Clause, because the effect of the regulation was the same on players in and out of New York.

ORS 59.115(3) imposes the same standards on participants, whether they are in or outside of Oregon. The statute exhibits no intent to favor Oregon residents or Oregon commercial interests. To the contrary, assuming professional participants in non-covered

Page 19 - PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

securities offered in Oregon are more likely to be from Oregon than not, then the Oregon statute

actually affects Oregon attorneys and participants more than out of state attorneys.

> **D.    ORS 59.115(3) Does Not Violate The Commerce Clause Because It Regulates Only In-State Components Of Interstate Transactions For Legitimate State Interests.**

State statutes that limit their effect within their borders do not violate the Commerce

Clause. The case of *A.S. Goldmen & Company, Inc. v. New Jersey Bureau of Securities*, 163

F.3d 780, 781 (3rd Cir. 1999) *cert den.* 528 U.S. 868 (1999) is particularly relevant.  It involved a

challenge (brought by Seward's present counsel) to Section 60 of the New Jersey Securities Act

that made it unlawful to offer or sell securities in New Jersey that were not registered or exempt

from registration in New Jersey.  Goldmen offered securities by telephone from its offices in

New Jersey to purchasers outside New Jersey, states in which the offered securities were

properly registered.  When New Jersey ordered Goldmen not to offer the securities even to out of

state residents, Goldmen challenged the statute on dormant commerce clause grounds.  Even

though none of the purchasers were New Jersey residents, and even though the purchasers

bought from outside New Jersey, the Third Circuit panel (which included then Judge Alito) held

that the statute did not violate the Commerce Clause. Citing Supreme Court authority that the

states have broad power to protect their citizens against fraudulent conduct, *H.P. Hood & Sons

v. Du Mond*, 336 U.S. 525, 532-33 (1949), the *Goldmen* court held that "states are permitted to

regulate in-state components of interstate transactions so long as the regulation furthers

legitimate in-state interests." *Goldmen*, 163 F.3d at 785.

It is well recognized in the securities industry that states may regulate securities by

imposing standards on out of state actors for transactions occurring within its borders.  Were this

not so, states could not regulate the acts of issuers, broker-dealers or others whose places of

Page  20 -  PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

business were beyond the state's borders. *See, e.g., Underhill Associates, Inc. v. Bradshaw*, 674 F.2d 293, 295-96 (4th Cir. 1982) ( upholding Virginia Securities Act provision requiring out of state discount brokers to register with Virginia Corporation Commission).

In the case at bar, plaintiff Houston is an Oregon resident and purchased his Wood River investment from Oregon.  Complaint, ¶ 5.  ORS 59.115 is designed to protect its citizens from fraud.  ORS 59.335(1) specifically limits the application of ORS 59.115 to transactions where an offer to sell is made in Oregon or an offer to buy is made and accepted in Oregon.  Moreover, Oregon is clearly within its police power to enact that statute to protect its citizens from misleading securities offerings. *See, e.g., Life Partners, Inc. v. Miller*, 420 F. Supp. 2d 452, 469 (D. Va. 2006), *aff'd* 484 F.3d 284 (4th Cir. 2007) (upholding state insurance statute on viatical settlements and noting that protecting citizens from fraud is a local concern); *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 350 (1977) (states are empowered to make laws on issues of local concern even when they affect interstate commerce).

Seward's reliance on *Edgar v. MITE Corp.*, 457 U.S. 624 (1982) is inapposite in part because, as the Court stated there, "[t]he Illinois Act differs substantially from state blue-sky laws in that it directly regulates transactions which take place across state lines, even if wholly outside the State of Illinois." *Id* at 623.

E.    **ORS 59.115 Does Not Offend The Commerce Clause Because It Does Not Even Regulate Interstate Commerce.**

In *United States Baseball v. City of New York*, 2007 U.S. Dist. LEXIS 63234 (S.D.N.Y. 2007), discussed at pages 19-20, *supra*, the court characterized as "highly speculative" the plaintiff's assertion that commerce was affected by the ban on aluminum baseball bats because fewer out of state teams would play the New York schools.   In this case, the effect of ORS 59.115 on interstate commerce is even more speculative.  It is a local statute aimed at the sale of

Page  21  - PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

non-covered securities in Oregon. Seward has not shown that Oregon's statute would affect interstate commerce at all.

Seward alleges that Oregon's participant liability statute "improperly interferes with other states' laws and with their authority to regulate the conduct of lawyers practicing in their jurisdictions." Seward Memorandum at 19. But ORS 59.115(3) does no such thing. It applies only to transactions involving offers to purchase made in Oregon. ORS 59.335(1). Lawyers outside of Oregon are not required to participate in non-covered securities offerings made in Oregon. Seward's parochial contention that ORS 59.115(3) would require New York attorneys to "disclose information about their clients to third parties" and that it would impose duties forbidden under New York law is ludicrous. Oregon has a Code of Professional Responsibility virtually identical to New York's. *Compare* New York Bar Ass'n Lawyer's Code of Professional Responsibility DR 4-101(B), (C) *with* Oregon Rules of Professional Conduct D.R. 4-101(B)(C) found at http://www.osbar.org/rulesregs/toc.html. ORS 59.115(3) imposes no obligation whatsoever on lawyers to disclose client confidences without the client's consent.[6] Also, both states have provisions allowing lawyers to disclose client confidences "to defend the lawyer . . . against an accusation of wrongful conduct." Rule DR 4-101(C)(4) in Oregon, New York.

Seward also contends that the Oregon Securities Law affects intestate commerce because it imposes liability standards on attorneys who participate in Oregon securities offerings that

---

[6]  Under the Oregon law, if lawyers know or suspect that information in offering documents they are preparing is false or misleading, they have a choice. They may either fix the misstatements with their client's consent; withdraw from representation; or continue and risk liability. There is nothing unconstitutional about such a requirement.

differ from those that would be applied to a New York transaction.[7]  Seward Memorandum at 20.

Ironically, in this case, the differences may not be of any significance.  In a case pending in the

New York Supreme Court, *Eucleia Partners v. American Express & Business Services, et al.,*

*Supreme Court of the State of New York, New York County, No. 600704/2006,* plaintiffs have

sued Seward and others under New York common law for aiding and abetting fraud for its role

in the Wood River fraud.  Justice Ramos in that case recently denied Seward's motion to dismiss.

See: Transcript of Proceedings and Order attached hereto as Appendix.

The *Goldmen* case is relevant to Seward's argument.  The court there noted that, where

two states with different laws each have an interest in a transaction, each state may impose its

own laws on the aspect of the transaction that occurs within its boundaries.  163 F.3d at 787.

The court asked:

> should the transaction be allowed if either state permits, or blocked
> if either side objects?  Such questions of the market's 'structure"
> and its "method of operation' are quite simply beyond the concern
> of the Commerce Clause, as they 'relate to the wisdom of the
> statute, not to its burden on commerce.' *Exxon Corp. v. Governor*

---

[7]Seward greatly exaggerates the difference between ORS 59.115(3) and the laws of other
jurisdictions.  Seward contends that ORS 59.115(3) is unique in that "liability can be completely
derivative of another's conduct." Seward Memorandum at 19.  The Oregon statute is based upon
the Revised Uniform Securities Act, § 509(g), which also provides for a form of derivative
liability. See discussion at 15, *supra*.  Indeed, the federal law imposes liability on participants
who have no contact with the purchasers. *In re Parmalat Securities*, and related cases, discussed
at pages 14-15 *supra*.  Likewise, Seward complains that ORS 59.115(3) "does not require that
the secondary actor communicate with the alleged purchaser or, in fact, do anything more than
provide routine services." Seward Memorandum at 19.  The RUSA, and the control person
liability provisions of the 1934 Securities Act, do not require that the aider communicate with the
alleged purchaser, either. And, as it does throughout its brief, Seward ignores the fact that, under
the Oregon statute, even those who participate or materially aid an illegal transaction can avoid
liability by showing that they did not know and could not reasonably have discovered the
wrongful conduct alleged.

*of Maryland*, 437 U.S. 117, 127-28, 57 L. Ed. 2d 91, 98 S. Ct. 2207 (1978).

*Id.*

Even if its laws of Oregon and New York impose differing standards on persons involved in offerings occurring in Oregon, the Commerce Clause is not implicated.

> **F.    The Court Cannot Declare the Oregon Statute Unconstitutional Because Seward Has Not Satisfied its Obligations under Rule 5.1 of the Federal Rules of Civil Procedure.**

Rule 5.1 of the Federal Rules of Civil Procedure requires that any party that files a "pleading, written motion or other paper drawing into question the constitutionality of a . . . state statute must promptly" file a notice of the constitutional question and serve it upon the state attorney general. The attorney general then has 60 days to intervene. Plaintiff has not complied with that rule. The court may reject the motion before the 60 day intervention period has expired, but it cannot hold the statute unconstitutional without giving the Attorney General of Oregon, due notice and an opportunity to intervene and be heard. Fed.R.Civ.P. 5.1(c). *See also*: Local Rule 24.1(b).

**V.    PLAINTIFF'S NON-REGISTRATION CLAIM CANNOT BE DISMISSED BECAUSE DEFENDANT HAS NOT SHOWN AS A MATTER OF LAW THAT THERE WAS NO PUBLIC ADVERTISING, GENERAL SOLICITATION OR THAT NO REMUNERATION WAS PAID.**

Seward argues that plaintiff's third claim for relief, which alleges a failure to register the Wood River security in Oregon, must be dismissed for failure to state a claim. Seward Memorandum at 23-25. Seward alleges that Mr. Houston cannot bring his claim because Wood River is a federally covered security. That argument is addressed at pages 2 -5, *supra*.

Seward also maintains that there was no requirement to register Wood River in Oregon because it qualified for two exemptions under ORS 59.035(5) and ORS 59.035(12) (a). Plaintiff

disputes the applicability of those exemptions because all conditions were not met. Plaintiff has alleged that they do not apply. See: Complaint, ¶¶ 32, 34.

VI.    CONCLUSION

For the foregoing reasons, Plaintiff Howard Houston respectfully requests that Defendant's motion to dismiss the complaint be denied in its entirety.

DATED:  September 28, 2007

**BANKS LAW OFFICE, P.C.**

By: _____
Robert S. Banks, Jr.
209 SW Oak Street, Suite 400
Portland, OR  97204
(503) 222-7474
  Admitted Pro Hac Vice

**KAUFMANN, FEINER, YAMIN, GILDIN & ROBBINS, LLP**

By: _____
David E. Robbins (DR 8744)
Wayne M. Josel  (WJ2813)
777 Third Avenue, 24th Floor
New York, NY 10017
212-755-3100

Attorneys for Plaintiff