UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HOWARD HOUSTON, | **ECF CASE** |
| Plaintiff, | |
| | 07 Civ. 6305 (HB) |
| v. | |
| SEWARD & KISSEL LLP, | |
| Defendant. | |

**DEFENDANT SEWARD & KISSEL LLP'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP

Gerard E. Harper
Jacqueline P. Rubin
Jana C. Ramsey
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. ii

REPLY ARGUMENT ......................................................................................... 1

I.    THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIMS AS
      PREEMPTED BY FEDERAL LAW ........................................................ 1

      A.    The Wood River Securities Were Covered Securities
            Within the Meaning of the NSMIA ................................................ 1

      B.    Plaintiff's Claims Are Expressly Preempted by the NSMIA .......... 3

      C.    Plaintiff's Claims Are Impliedly Preempted by the NSMIA .......... 5

II.   THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIMS
      AS ORS 59.115 VIOLATES THE COMMERCE CLAUSE .................... 6

      A.    ORS 59.115(3) is Invalid Because it Directly Regulates
            Commerce Outside Oregon ............................................................ 7

      B.    ORS 59.115 Imposes a Burden on Interstate Commerce
            that is Not Outweighed by the Benefit .......................................... 8

III.  THIS COURT SHOULD DISMISS PLAINTIFF'S
      THIRD CLAIM AS WOOD RIVER WAS EXEMPT FROM
      REGISTRATION IN OREGON ................................................................ 9

Conclusion ........................................................................................................... 9

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Adelphia Comm'cns Corp. Secs. & Derivative Litig.*, 2007 WL 2615928
(S.D.N.Y. Sept. 10, 2007)......................................................................6

*A.S. Goldmen & Co.* v. *New Jersey Bureau of Secs.*,
163 F.3d 780 (3d Cir. 1999) .............................................................7

*Am. Booksellers Found.* v. *Dean*, 342 F.3d 96 (2d Cir. 2003) .........................7

*Brown* v. *Earthboard Sports USA, Inc.*, 481 F.3d 901 (6th Cir. 2007) ...........................2

*Buist* v. *Time Domain Corp.*, 926 So.2d 290 (Ala. 2005) .................................2

*Camofi Master LDC* v. *College P'ship, Inc.*,
452 F. Supp. 2d 462 (S.D.N.Y. 2006) ...................................5

*Edgar* v. *MITE Corp.*, 457 U.S. 624 (U.S. 1982)................................................7

*Eternity Global Master Fund Ltd.* v. *Morgan Guar. Trust Co.*,
375 F.3d 168 (2d Cir. 2004) ...........................................................4

*Freedom Holdings, Inc.* v. *Spitzer*, 357 F.3d 205 (2d Cir. 2004 ) ...................7

*Healy* v. *The Beer Inst.*, 491 U.S. 324 (1989) .................................7

*Hibbs* v. *Winn*, 542 U.S. 88 (2004)...........................................................4

*Lillard* v. *Stockton*, 267 F. Supp. 2d 1081 (N.D. Okla. 2003)...........................3

*Pinnacle Commc'ns. Int'l, Inc.* v. *Am. Family Mortgage Corp.*,
417 F. Supp. 2d 1073 (D. Minn. 2006).................................3

*In re Refco, Inc. Secs. Litig.*, 2007 WL 1280649 (S.D.N.Y. Apr. 30, 2007)...................6

*SEC* v. *First Jersey Secs., Inc.*, 101 F.3d 1450 (2d Cir. 1996) .......................6

*SEC* v. *Ishopnomarkup.com, Inc.*, 2007 WL 2782748
(E.D.N.Y. Sept. 24, 2007) ...........................................................1, 2

*Silkwood* v. *Kerr-McGee Corp.*, 464 U.S. 238 (1984) .....................................5

*Temple* v. *Gorman*, 201 F. Supp. 2d 1238 (S.D. Fla. 2002)..............................3

*Town of Southold* v. *Town of East Hampton*, 477 F.3d 38 (2d Cir. 2007) ......................8

*USA Baseball* v. *City of New York*, , --- F. Supp. 2d ---,
    2007 WL 2438367 (S.D.N.Y. Aug. 27, 2007).....................................................8

*U.S.* v. *Locke*, 529 U.S. 89 (2000) ....................................................................................5

## STATUTES

15 U.S.C. §§ 77r ...........................................................................................................3, 4

## FEDERAL REGULATIONS

17 C.F.R. § 230.501 ...........................................................................................................2

17 C.F.R. § 230.506.......................................................................................................1, 2

## OTHER

Fed. R. Civ. P. 5.1..............................................................................................................6

The federal securities law preempt plaintiff's claims. That determination requires no facts other than those in the complaint and the documents to which the complaint refers. Plaintiff's contrary and unprecedented argument -- that Oregon may create private rights of action governing national capital markets that impose strict liability on alleged aiders and abettors -- is precisely what Congress intended to prevent in enacting the NSMIA.

## REPLY ARGUMENT

### I. THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIMS AS PREEMPTED BY FEDERAL LAW

#### A. The Wood River Securities Were Covered Securities Within the Meaning of the NSMIA

Our opening brief established that the Wood River Offering Memorandum and Subscription Agreement explicitly offered the Wood River securities pursuant to Rule 506 of Regulation D ("Reg. D"). (S&K Br. at 11) Plaintiff, who received the Offering Memorandum and reviewed the Subscription Agreement (Compl. ¶ 8), knew as much. His contentions about Reg. D -- each a legal issue -- are wrong.

First, plaintiff is wrong that the securities were not "covered" securities under Reg. D because the Fund's assets were too large. (Opp. Br. at 4-5) Rule 506 imposes no limit on the value of the offerings exempted under its provisions. Its title says it all: "Exemption for limited offers and sales *without regard to dollar amount of offering*." 17 C.F.R. § 230.506 (emphasis added). While two other sections of Reg. D are intended for limited offerings, Rule 506 -- the exemption under which Wood River offered its securities -- affords a safe harbor for private offerings without imposing any kind of size limitation. *SEC v. Ishopnomarkup.com, Inc.*, 2007 WL 2782748, at *5 (E.D.N.Y. Sept. 24, 2007).

Second, plaintiff is wrong that Rule 506 requires that no more than "35 purchasers of securities" be involved. (Opp. Br. at 2-3); 17 C.F.R. § 230.506(b)(2)(i). Reg. D requires only that there be no more than 35 *non-accredited* purchasers of an offering; this is because of Rule 501(e),

1

which qualifies Rule 506 and unambiguously excludes "accredited investors" from the calculation of the number of "purchaser[s]" under Rule 506. 17 C.F.R. § 230.501(e)(1)(iv). Under Reg. D, then, an issuer may sell to as many *accredited* investors as it desires; no limit exists. *Ishopnomarkup.com, Inc.*, 2007 WL 2782748, at *5. Because Wood River's securities were incontestably available *only* to accredited investors (S&K Br. 11), plaintiff's argument on the 35-purchaser rule does not apply.

Third, plaintiff's argument that the NSMIA has no preemptive effect absent a trial on whether Wood River's offering fully complied with Reg. D (Opp. Br. at 3-4), is unpersuasive. In support, plaintiff relies on the Sixth Circuit's decision in *Brown* v. *Earthboard Sports USA, Inc.*, 481 F.3d 901 (6th Cir. 2007), a case easily distinguishable. There, the offering was made to both *unaccredited* and accredited investors. *See also Buist* v. *Time Domain Corp.*, 926 So.2d 290 (Ala. 2005) (plaintiff questioned whether issuer might have sold to unaccredited investors). Here, there is no contention that Wood River offered securities to anyone other than accredited investors.

The distinction is critical: sales to unaccredited investors trigger reporting and other obligations under Reg. D that are just not at issue here. In *Brown*, those obligations were central to the court's decision that the securities may not be exempt: the court found it persuasive that no evidence had been offered that the company had complied with the reporting or other requirements relating to unaccredited investors. *Id.* at 914. And the court found it "highly persuasive" that the SEC had filed a federal suit claiming that the company had offered unlawful unregistered shares and that the offering did not qualify for exemption under 506 because the company failed to comply with the unaccredited investors requirements. *Id.* at 914-15. Here, the SEC has filed a civil action against Wood River alleging violations of the federal securities laws. *See SEC* v. *Wood River Capital Mgmt, LLC*, No. 05 Civ. 8713 (S.D.N.Y. 2005). But unlike in *Brown*, the SEC has not alleged that the shares were unregistered or did not qualify for federal exemption under Rule 506.

Other courts, when faced with the same argument that nothing short of a trial on the facts can establish that a security was indeed Reg. D compliant, have found such an extreme position unwarranted. *See Pinnacle Commc'ns Int'l, Inc.* v. *Am. Family Mortgage Corp.*, 417 F. Supp. 2d 1073, 1087 (D. Minn. 2006); *Lillard* v. *Stockton*, 267 F. Supp. 2d 1081, 1116 (N.D. Okla. 2003); *Temple* v. *Gorman*, 201 F. Supp. 2d 1238, 1243-44 (S.D. Fla. 2002). In *Temple*, the court held that it does not matter for purposes of determining an exemption whether the offering fully complied with Reg. D; what matters is that the security was offered *pursuant* to Reg. D. As the court explained, "[r]egardless of whether the private placement actually complied with the substantive requirements of Regulation D or Rule 506, the securities sold to plaintiffs are federal 'covered securities' because they were sold pursuant to those rules." 201 F. Supp. 2d at 1244; *accord Pinnacle Commc'ns.*, 417 F. Supp. 2d at 1087; *Lillard*, 267 F. Supp. 2d at 1116.

Finally, the determination of whether or not a security is properly registered under Reg. D is governed exclusively by federal law, and should not be decided as a matter of state law. *Pinnacle Commc'ns*, 417 F. Supp. 2d at 1087. Here, the Offering Memorandum and Subscription Agreement clearly state that the offering was made pursuant to Reg. D. The SEC has not alleged otherwise. To the extent that the plaintiff alleges that the offering is not Reg. D compliant, that claim should be brought under the Securities Act of 1933, not under Oregon state law.

**B.     Plaintiff's Claims Are Expressly Preempted by the NSMIA**

As detailed in S&K's opening brief (S&K Br. at 10), the NSMIA specifically preempts state laws that "directly or indirectly prohibit, limit or impose any condition upon the use of . . . any offering document that is prepared by or on behalf of the issuer." 15 U.S.C. §§ 77r(a)(2). Because plaintiff's state law claims are predicated on statements in the Wood River Offering Memorandum, such claims would, if successful, improperly impose limits on the use of an offering memorandum by subjecting defendants to damages for the contents therein. (S&K Br. at 13-14)

Plaintiff asks the Court to ignore the NSMIA's prohibition against constraints on offering memoranda, and instead, to interpret the statute as preempting only state laws mandating registration of covered securities. (Opp. Br. at 6, 9) Plaintiff's narrow reading would render null not only the statute's provision on offering memoranda, but also its provision preempting laws that place limits or conditions on offerings based on their merits. But that goes against the longstanding canon of statutory construction that a court must interpret a statute to effectuate all of its provisions, so that no part is rendered inoperative or superfluous. *Hibbs* v. *Winn*, 542 U.S. 88, 101 (2004).

Plaintiff next contends that the NSMIA does not preempt state anti-fraud provisions, and that a "plain reading of the Oregon statute shows that it is an anti-fraud . . . provision." (Opp. Br. at 9) But plaintiff argued *exactly the opposite* to an Idaho court that dismissed for lack of personal jurisdiction his original action against S&K. (Order Granting Motion to Dismiss, *Houston* v. *Seward & Kissel, LLP et al*, No. CV-2006-717 (5th Jud. Dist., Blaine Cty. Ida., Feb. 12, 2007), attached as Ex. A to Rubin Decl.) In that action, which involved the same claims under the very same Oregon statute at issue here, S&K moved to dismiss not only for lack of personal jurisdiction, but also because the complaint failed to plead fraud with particularity. In response, plaintiff represented to the Idaho court that: "Plaintiff does not make any fraud claims against Seward. Plaintiff alleges that Seward is liable under the Oregon statutes, which do not require a showing of fraud." (Plaintiff's Mem. in Opp. to Motion to Dismiss, attached as Ex. B to Rubin Decl., at 20)

To the extent that it is now expedient for plaintiff to argue that he is asserting a fraud claim against S&K, plaintiff has failed to allege facts sufficiently particularized to meet the requirements of Rule 9(b). *See Eternity Global Master Fund Ltd.* v. *Morgan Guar. Trust Co.*, 375 F.3d 168, 187 (2d Cir. 2004). Indeed, the *only facts* alleged are that S&K drafted, edited and/or reviewed and approved the Offering Memorandum and marketing materials upon which plaintiff relied, that S&K allowed its name to be used in the Offering Memorandum, and that S&K "assisted

4

in and advised Wood River on various aspects of its operation." (Compl. ¶ 21)  This is not enough to support a claim of fraud.  *Camofi Master LDC* v. *College P'ship, Inc.*, 452 F. Supp. 2d 462, 482 (S.D.N.Y. 2006) (dismissing fraud claim where plaintiff "fail[ed] to allege any specific fraudulent statements or the 'time place, speaker, and content' of the statements").

### C.    Plaintiff's Claims Are Impliedly Preempted by the NSMIA

As S&K explained in its opening brief, state law is impliedly preempted when Congress acts to occupy the field *or* when the state claims at issue actually conflict with federal law. (S&K Br. at 14); *Silkwood* v. *Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984).  Conflict exists "when compliance with both state and federal law is impossible," or when state law obstructs congressional objectives.  *U.S.* v. *Locke*, 529 U.S. 89, 109 (2000) (internal quotation marks and citations omitted).

Plaintiff spends much time trying to convince this Court that Congress did not intend to occupy the entire field of securities law when it enacted the NSMIA, and that the NSMIA therefore does not preempt the Oregon blue sky statute.  (Opp. Br. at 11-12)   But S&K does not claim that the NSMIA preempts the field of securities law.  S&K instead contends that the Oregon statute is in conflict with Congress's objective to create an efficient and effective national securities market.  (S&K Br. at 14-15)

ORS 59.115(3) undermines that objective by extending liability for fraud to secondary actors who neither possess any independent culpability, nor share an agency relationship with the primary violator, thereby creating uncertainty for law firms and other service providers. Requiring service providers to ensure their clients' compliance with the blue sky laws of every state in which their clients offer a security creates a strong disincentive for these providers to work with small issuers, who could, as a consequence, find the U.S. securities markets out of reach.

In response, plaintiff argues that the Oregon law is no different from federal law in imposing liability on secondary actors, because Section 20(a) of the Securities Exchange Act of 1934

provides for secondary liability against control persons. (Opp. Br. at 8-9)  There is a significant difference between imposing liability on one who possesses "the power to direct or cause the direction of the management and policies" of a person who commits fraud, *SEC* v. *First Jersey Secs., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996) (quoting 17 C.F.R. § 230.405 (2007)), and imposing such liability on the outside counsel to a business that commits fraud. Moreover, the majority of courts in the Second Circuit require that a plaintiff asserting a Section 20(a) claim "'show that the controlling person was in some meaningful sense a culpable participant in the fraud perpetrated by the controlled person.'" *First Jersey*, 101 F.3d at 1472; *accord In re Refco, Inc. Secs. Litig.*, 503 F. Supp. 2d 611, 660-61 (S.D.N.Y. 2007); *In re Adelphia Comm'cns Corp. Secs. & Derivative Litig.*, 2007 WL 2615928, at *10 (S.D.N.Y. Sept. 10, 2007). ORS 59.115(3) requires no such proof.

Plaintiff's references to the Uniform Securities Act of 2002 and to state statutes modeled upon it are similarly unhelpful. (Opp. Br. at 14-15) These statutes impose aiding and abetting liability on defined classes of individuals, including control persons, broker-dealers, investment advisors, and those "associated with" a person liable for fraud. And, as S&K already showed, the states that do extend liability to service providers require proof of scienter. (S&K Br. at 15 n.4)  Plaintiff does not cite a single case or statute that provides the same expansive view of liability as ORS 59.115(3).

## II.  THIS COURT SHOULD DISMISS PLAINTIFF'S CLAIMS AS ORS 59.115 VIOLATES THE COMMERCE CLAUSE[1]

As explained in S&K's opening brief, any state law that discriminates against interstate commerce, has the effect of regulating extraterritorial conduct, *or* imposes an incidental

---

[1]  Plaintiff's opposition notes that S&K had not notified the Attorney General of Oregon of its constitutional challenge to Oregon's statute. S&K filed the notices on October 17, 2007. (*See* Notice to Court, dated October 17, 2007 (Docket # 17); Notice to State Attorney General, dated October 17, 2007, attached as Ex. C to Rubin Decl.)  In any event, failure to file and serve such notice does not waive any constitutional claim or defense. Fed. R. Civ. P. 5.1(a).

burden on interstate commerce that is not outweighed by the putative local benefits, must be held invalid.[2] (S&K Br. at 17-18); *Freedom Holdings, Inc.* v. *Spitzer*, 357 F.3d 205, 216 (2d Cir. 2004). Contrary to plaintiff's assertions, blue sky laws are not immune to Commerce Clause challenges. *See e.g.*, *Edgar* v. *MITE Corp.*, 457 U.S. 624, 641 (1982).

### A. ORS 59.115(3) is Invalid Because it Directly Regulates Commerce Outside Oregon

As set forth in S&K's main brief, a state statute is "invalid *per se* if it has the practical effect of 'extraterritorial' control of commerce occurring entirely outside the boundaries of the state in question," even if the statute does not discriminate against out-of-state commerce. *Freedom Holdings*, 357 F.3d at 216 (citing *Healy* v. *Beer Inst.*, 491 U.S. 324, 336 (1989)); *accord Am. Booksellers Found.* v. *Dean*, 342 F.3d 96, 104 (2d Cir. 2003). Blue sky laws that regulate purely intrastate transactions are valid; laws like ORS 59.115 that regulate transactions which take place across state lines are not. *MITE Corp.*, 457 U.S. at 641. *A.S. Goldmen & Co.* v. *N.J. Bureau of Securities*, 163 F.3d 780 (3d Cir. 1999), does not hold otherwise. That case stands for the unremarkable proposition that states may regulate conduct that occurs within their own borders. *Id.* (upholding New Jersey statute regulating sales from New Jersey). But that is not the case here.

ORS 59.115 impacts conduct occurring wholly outside of Oregon -- in this case, the relationship between Wood River and S&K. As established in S&K's opening brief, and uncontested by plaintiff, a non-Oregon attorney for a non-Oregon business may be liable under Oregon's statutes merely for doing ministerial work outside of Oregon, if that attorney's client commits fraud. (S&K Br. at 19) It is irrelevant under Oregon law that the attorney does not participate in the securities' sales, the securities' marketing, or the actual operation of the fund.

---

[2]  Plaintiff argues that S&K's Commerce Clause challenge must be denied because ORS 59.115(3) is not discriminatory. (Opp. Br. at 18.) S&K did not challenge ORS 59.115(3) on that ground.

In effect, Oregon's statute imposes on an out-of-state lawyer the obligation to conduct due diligence on his client, to investigate the accuracy of each statement in the offering materials, and to continually monitor his client to ensure that the client does not subsequently engage in fraud. Absent these precautions, the client (or the client's brokers or agents) could, without the lawyer's knowledge, sell securities in Oregon, and by so doing, subject the lawyer -- who himself had no connection to Oregon -- to liability. This would substantially change the nature of attorney-client relationship, turning the attorney into a policeman of the client and guarantor of the client's representations. And that role, as detailed in our opening brief, is wholly inconsistent with New York law. (S&K Br. at 20-21)

**B.**     **ORS 59.115 Imposes a Burden on Interstate**
           **Commerce that is Not Outweighed by the Benefit**

S&K's main brief establishes that the Oregon statute should be struck down because its burden on interstate commerce is not outweighed by any local benefit. (*Id*. at 21-23) Plaintiff's own authority explains that even a non-discriminatory statute will impose an "an incidental burden" on interstate commerce if it "'regulates commercial activity that takes place wholly beyond the state's borders [or] imposes a regulatory requirement inconsistent with those of other states.'" *USA Baseball* v. *City of New York*, --- F. Supp. 2d ---, 2007 WL 2438367, at * 14 (S.D.N.Y. Aug. 27, 2007) (quoting *Town of Southold* v. *Town of East Hampton*, 477 F.3d 38, 50 (2d Cir. 2007)).

As discussed above, the Oregon law regulates out-of-state conduct and places a substantial burden on lawyers practicing outside of Oregon who may be involuntarily brought within the ambit of the Oregon law by their client's actions. That Oregon's law is an outlier is demonstrated by plaintiff's inability to point to any case in which a similar law has been used to impose liability on an attorney. Nor does plaintiff cite any benefit -- protecting Oregon residents from fraud -- that is not accomplished by Oregon common law or federal securities law

Plaintiff's argument that the statute places no burden on interstate commerce is ridiculous. Plaintiff assert that out-of-state lawyers can simply choose not to participate in securities offerings made in Oregon. (Opp. Br. at 22) But that argument ignores the reality of today's national securities market: most securities are not offered only within Oregon, by Oregon issuers, by Oregon counsel, to Oregon investors. And it highlights the interstate impact of the statute: to circumscribe interstate securities offerings by forcing lawyers not to represent clients that do, or may, make national securities offerings that include offerings in Oregon. By reducing the number of lawyers who may represent issuers in national offerings, the statute may increase the cost for issuers of doing business, and thereby negatively impact on the efficiency of the national securities market.

## III.    THIS COURT SHOULD DISMISS PLAINTIFF'S THIRD CLAIM AS WOOD RIVER WAS EXEMPT FROM REGISTRATION IN OREGON

As S&K establishes in its main brief and above, because the Wood River securities were sold pursuant to Reg. D and are "covered" securities, they were not required to be registered in Oregon. (S&K Br. at 23)

### Conclusion

For the reasons set forth above and in S&K's opening memorandum, S&K respectfully requests that this Court dismiss the complaint in its entirety with prejudice and grant such other and further relief as the Court may deem just and proper.

Dated:    New York, New York
          October 19, 2007

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP

By:     /s/ Gerard E. Harper
        Gerard E. Harper
        Julia Tarver Mason
        Jacqueline P. Rubin
        Jana C. Ramsey
    1285 Avenue of the Americas
    New York, New York 10019-6064
    Tel:  212-373-3000
    Fax:  212-757-3990

9