**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**HOWARD HOUSTON,**

**Plaintiff,**

**-against-**

**SEWARD & KISSEL, LLP,**

**Defendant.**

**07cv6305(HB)**
**OPINION & ORDER**

---

**Hon. HAROLD BAER, JR., District Judge:**

## INTRODUCTION

Howard Houston, an Oregon resident, ("Plaintiff") has sued a New York law firm, Seward & Kissel, LLP ("Defendant"), as an aider and abettor of securities fraud and the unlawful sale of unregistered securities in violation of Oregon's securities laws, ORS §§ 59.115(1)(a), (b), 59.135, 59.137. The Plaintiff alleges that the firm is responsible for his $2.75 million investment loss due to its role in connection with the offering documents which contained material misrepresentations and omissions for the Wood River Partners, LP ("Wood River"), a hedge fund in which Plaintiff had invested. Wood River's principal, John Whittier, has pleaded guilty to violations of federal securities laws and the Fund is now in receivership. The Defendant moves to dismiss the claims arguing that federal law preempts Oregon's securities fraud provisions, and in any event, these provisions run afoul of the Dormant Commerce Clause; and finally that the Wood River securities are specifically exempt from Oregon's securities registration requirements. Because I find that the Oregon securities fraud statutes are not preempted by federal securities law and do not violate the Commerce Clause, but that the Plaintiff has failed to properly allege that the Wood River securities are not federally covered securities, Defendant's motion to dismiss the claims is DENIED in part and GRANTED in part.

## I. FACTUAL BACKGROUND

Wood River Partners, L.P. ("Wood River") is a hedge fund that was run by John Whittier. (Compl. ¶ 15(a).) In late 2004, Wood River sent a Confidential Summary about the Fund to the Plaintiff. It described the Fund and its investment strategy and goals. (Compl. ¶ 7.)

In January 2005, the Plaintiff received a prospectus, partnership agreement, and subscription agreement for a Wood River investment. (Compl.¶ 8.) The prospectus described the types and number of investments that Wood River would hold, including a representation that the Fund would be diversified. (Compl.¶¶ 8, 9.) Wood River also represented in its prospectus that it appointed American Express Tax and Business Services as its auditor, investors would receive quarterly financial reports prepared in accordance with Generally Accepted Accounting Principles, and its books and records would be audited annually. (Compl. ¶11.) Wood River listed Seward & Kissel as legal counsel and that its opinions as to the legality of the offering would be made available to investors. (Compl.¶ 10.)

After reviewing these materials, the Plaintiff decided to invest in Wood River. (Compl.¶ 10.) Although the Prospectus stated that the minimum investment was $1 million, Whittier allowed Plaintiff to make an initial investment of $250,000 with the understanding that he would make additional investments so long as the Plaintiff was satisfied with Wood River's performance. (Compl.¶ 13.) Following his initial investment in February 2005, the Plaintiff continued to invest in Wood River on a monthly basis through September 2005, for a total combined investment of $2.75 million. (Compl.¶ 13.)

In the beginning of 2004, Wood River began to accumulate stock in EndWave, a technology company and continued to do so until by the summer of 2005, 68% of Wood River's assets were comprised of EndWave stock, which contravened the representations that it would be a diversified fund that would not invest more than 10% of its portfolio in any one security. (Compl.¶ 15(b).) EndWave's share price began to decline and by mid-September had lost almost 50% of its value, resulting in a considerable decline in Wood River's total asset value. (Compl.¶ 15(e).) Wood River was unable to honor redemption requests due to this decrease in value. (Compl.¶¶ 15(e)-(f).) Consequently, Plaintiff lost his $2.75 million investment in Wood River.

Wood River and Whittier are parties to civil action by the Securities and Exchange Commission for fraud and misrepresentations.[1] The Fund was placed into receivership. (Compl. ¶ 1.) On July 10, 2007, Plaintiff filed this complaint against Seward & Kissel because the firm prepared the Fund's offering documents which allegedly contained false representations and omitted material facts about Whittier and the firm allowed its name to be used in the prospectus. (Compl. ¶¶ 2, 3.)

[1] Mr. Whittier was also sentenced to 36 months imprisonment and ordered to pay restitution of over $5 million.

The Plaintiff makes three claims. First, the Plaintiff alleges that the Defendant participated in or materially aided in the fraudulent sale of securities to the Plaintiff because it drafted, edited and/or reviewed and approved the prospectus and marketing materials which allegedly contained material misrepresentations and omissions in violation of Oregon securities law ORS §§ 59.115 1(b)[2] and 59.135(1), (2), ( 3).[3] (Compl. ¶¶ 17-24.) Second, because it allegedly participated in or materially aided in the first claim, the Defendant is liable to the Plaintiff as purchaser of the security for actual damages including interest at 9% under ORS § 59.137(1).[4] (Compl. ¶¶ 25-29.) Third, the Defendant allegedly participated in or materially aided in the sale of unregistered securities in Oregon in violation of § 59.115(1)(a)[5] because the Wood River securities are not federally covered securities or otherwise exempt under ORS §59.055.[6] (Compl. ¶¶ 30-39.)

The Defendant moved to dismiss the Plaintiff's complaint on August 31, 2007. The Defendant argues that federal law under the National Securities Markets Improvement Act (the "NSMIA") preempts state regulation of offering materials in relation to securities, the Oregon securities laws violate the Commerce Clause because they impermissibly regulate out of state

---

[2] ORS 59.115(1)(b) provides that a person is liable to the purchaser of a security if that person:

> Sells or successfully solicits the sale of a security in violation of ORS 59.135(1) or (3) or by means of an untrue statement of material fact or an omissions to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading . . . and who does not sustain the burden of proof that the person did not know, and in the exercise of reasonable care could not have known, of the untruth or omission.

[3] ORS 59.135, which is referenced by ORS 59.115(1)(b), provides:

> It is unlawful for any person, directly or indirectly, in connection with the purchase or sale of any security . . . :
>
> (1) To employ any device, scheme, or artifice to defraud;
>
> (2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading;
>
> (3) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

[4] ORS 59.137(1) provides:

> Any person who violates or materially aids in a violation of ORS 59.135(1), (2), or (3) is liable to any purchaser or seller of the security for the actual damages caused by the violation . . . unless the person who materially aids in the violation sustains the burden of proof that the person did not know and, in the exercise of reasonable care, could not have known of the existence of the facts on which the liability is based.

[5] ORS 59.115(1)(a) provides that a person who sells or successfully solicits the sale of a security, other than a federally covered security, in violation of Oregon securities laws, is liable to the purchaser.

[6] ORS 59.055 provides that it is unlawful for any person to offer or sell any security in Oregon unless: (1) the security is registered . . . ; (2) The Security is exempt under ORS 59.025 or the sale is exempt under ORS 59.035; or (3) The security is a federally covered security for which a notice has been filed and fees have been paid under ORS 59.049.

conduct, and the unregistered securities were expressly exempt from registration under Oregon law. In addition, the Defendant argues that the Plaintiff fails to plead fraud with the requisite particularity required under Fed. R. Civ. P. 9(b) and that the Plaintiff's complaint includes several legal conclusions fatal to its allegations. Argument on the motion was held on November 13, 2007. For the reasons noted below, I DENY the Defendant's motion to dismiss as to the Plaintiff's claims for aiding and abetting securities fraud under ORS §§ 59.115(1)(b), 59.135(1),(3), and 59.137(1) but GRANT the Defendant's motion to dismiss the claim for unlawful sale of unregistered securities under § 59.115(1)(a).

## II. RULE §§ 12(b)(6) STANDARD AND RULE 9(b)

A motion to dismiss will not be granted unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45 (1957). In considering a motion to dismiss for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6) and 9(b), this Court must view the factual allegations in the light most favorable to the non-movant. Gant v. Wallingfor Bd. Of Educ., 69 F.3d 669, 673 (2d Cir. 1995). The facts alleged in the complaint are assumed to be true. See Allen v Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).

Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Rule 9(b) requires the identification and circumstances constituting the fraud; mere conclusory allegations of fraud will not suffice, but statements of the time, place, and nature of the alleged fraudulent activities will. Riley, 612 F. Supp. at 677; see also SEC v. Lyon, 06cv14338, 2008 WL 53102, at *4 (S.D.N.Y. Jan. 2, 2008) (a complaint alleging fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent").

## III. DISCUSSION

At issue in this case is the application of Oregon Blue Sky Laws governing fraud and deceit to a law firm located in New York that prepared documents for a non-public stock offering and that may or may not have been aware of the offeror's wrongful acts. Oregon's Blue Sky laws create a private right of action for securities fraud and violation of registration rights, but also establish derivative liability for aiders and abettors. ORS §§ 59.115(1)(a), (b), (3). Defendants challenge any allegations of fraud based on two principal arguments. First, the

securities here are "federally covered securities" and the Plaintiff's allegations that they do not qualify are mere legal conclusions and unsupported by any factual allegations. Therefore any and all statements made in offering materials are regulated exclusively by NSMIA and the Oregon blue sky laws are preempted. Second, the Oregon securities fraud regime is unconstitutional because it permits derivative liability against out-of-state parties who may not even be aware of the fraudulent acts or representations made by the principal wrongdoer and, thus, improperly regulates inter-state commerce and undermines an efficient national securities market.

But this case is about fraud by the principals, Whittier and Wood River, and NSMIA specifically preserves state power to regulate securities fraud for federally covered securities. Congress and the courts, most recently the Supreme Court in dicta,[7] have repeatedly recognized state authority to regulate and enforce its own fraud statutes in the securities realm independent of federal law. With respect to the sale of unregistered securities claim, the Defendant also relies upon federally covered status or in the alternative, Oregon's other exemptions to dismiss this claim. Again, the Defendant relies upon the Plaintiff's failure to allege any facts that the securities are not federally covered or any facts that eviscerate application of Oregon's own state-based exemptions.

**A. NSMIA Does Not Preempt Oregon's Securities Fraud Statutes**

*1. Express Preemption*

The Defendant argues that the Fund is covered by the NSMIA,[8] a federal statute, and the Oregon securities or Blue Sky laws at issue here are thus preempted. (Def. Mem. of Law in Supp. Mot. to Dismiss ("Def. Mem.") 9-10.) Though NSMIA was enacted to promote efficiency, competition, and capital formation in the capital market, and as well, to designate the federal government as the exclusive regulator of national offerings of securities, H.R. Rep. No. 104-622, at 16 (1996), I have found nothing in the history of the legislation that preempts state oversight of fraud or deceit in the securities realm.

A plain reading of the statute shows that NSMIA's preemption of state securities law is limited to precluding states from imposing disclosure requirements in prospectuses, traditional offering documents and sales literature relating to covered securities. Zuri-Invest A.G. v.

[7] See Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc., No. 06-43, -- S. Ct. --, 2008 WL 123801, at *11 (U.S. Jan. 15, 2008).
[8] NSMIA amended Section 18 of the Securities Act of 1933.

Natwest Finance, Inc., 177 F. Supp. 2d 189, 192 (S.D.N.Y. 2001). NSMIA's scope of preemption is explicitly stated as follows:

> (a) No law, rule, regulation, order, or other administrative action of any State or any political subdivision thereof that –
>
> (1) requiring, or with respect to, registration or qualification of securities, or registration or qualification of securities transactions, shall directly or indirectly apply to a security that –
>
> A. is a covered security; or
> B. will be a covered security upon completion of the transaction;
>
> (2) shall directly or indirectly prohibit, limit, or impose any conditions upon the use of –
>
> A. with respect to a covered security described in subsection (b) of this section, any offering document that is prepared by or on behalf of the issuer; or
> B. . . .
>
> (3) shall directly or indirectly prohibit, limit, or impose conditions, based on the merits of such offering or issuer, upon the offer or sale of any security described in paragraph (1).

15 U.S.C. §77r(a). The Defendant wants to read into this language a complete preemption of state law touching on offering materials for federally covered securities. (Def. Mem. 11-14.) Moreover, preemption–express or otherwise–is to be applied sparingly. Zuri-Invest A.G. v. Natwest Finance, Inc., 177 F. Supp. 2d at 192 citing CSX Transp., Inc. v. Easterwood, 507 U.S. 658 (1993). Congress' intent must be clear and manifest to preempt an area where states have historically played a role. Zuri-Invest, 177 F. Supp. 2d at 192 citing Medtronic, Inc. v. Lohr, 518 U.S. 470 (1996).

Most damaging to Defendant's argument is Congress's express intent to preserve state's traditional authority in the realm of fraud and deceit in securities offerings, even those inherently national "covered" securities. Again, § 77r(c) makes clear Congress's express intent to permit states to enforce their own laws on securities fraud:

> (c) Preservation of authority
>
> (1) Fraud authority

> Consistent with this section, the securities commission (or any agency or office performing like functions) of any State shall retain jurisdiction under the laws of such State to investigate and bring enforcement actions with respect to fraud or deceit, or unlawful conduct by a broker or dealer, in connection with securities or securities transactions.

15 U.S.C.A. § 77r(c)(1). "States retain the ability to protect investors through application of state anti-fraud laws" under the express language of 15 U.S.C. § 77r(c)(1). Zuri-Invest, 177 F. Supp. 2d at 193.[9]

The legislative history provides further evidence of Congress's intent to preserve existing state power in the realm of fraud. The Commerce Committee stated that in passing NSMIA, it did not intend to "alter, limit, expand, or otherwise affect in any way any State statutory or common law with respect to fraud or deceit . . . in connection with securities or securities transactions." Zuri-Invest, 177 F. Supp. at 193-94 quoting Commerce Committee Report at 34, reprinted in 1996 U.S.C.C.A.N. at 3897.[10] Finally, the Supreme Court in dicta noted that while there is no private right of action against aiders and abettors under §10(b), states *continue* to have securities regimes establishing aider and abettor liability. See Stoneridge Investment Partners LLC v. Scientific-Atlanta, -- S. Ct. --, 2008 WL 123801, at *11 (U.S. Jan. 15, 2008).[11]

*2. Implied Field and Conflict Preemption*

The Defendant argues in the alternative that there is implied field preemption where NSMIA is involved. (Def. Mem. at 14-17.) Congress can decide to occupy the entire field of securities regulation and preempt all state laws as they pertain to securities, Brown v. Earthboard Sports USA, Inc., 481 F.3d 901, 911, 911 n.4 (6th Cir. 2007) citing Int'l Longshoremen's Ass'n v. Davis, 476 U.S. 380, 388 (1986), but "Congress chose not to include broadly preemptive

---

[9] Defendant in a letter-brief to the Court relies on a related case where a New York Appellate Court granted S&K its motion to dismiss the complaint against other plaintiffs under New York's common law of fraud because 1) the plaintiffs could not allege a representation made by S&K; 2) of a lack of privity with the investors and concomitant duty to disclose or correct the material omissions or misstatements in Wood River's offering materials. See Eurycleia Partners, LP v. Seward & Kissel, LLP, 600704/06 (N.Y. App. Div. Dec. 20, 2007). But New York common law fraud is inapplicable here.

[10] "The Conference Committee of the House of Representatives specifically intended to permit state securities regulators to continue to exercise their police power to prevent fraud and broker-dealer sales practice abuses." Zuri-Invest, 177 F. Supp. at 193 citing Conference Report, H.R. Conf. Rep. 104-864, 104th Cong., 2d Sess., at 40 (1996), reprinted in 1996 U.S.C.C.A.N. 3920, 3921.

[11] "Some state securities laws permit state authorities to seek fines and restitution from aiders and abettors." Stoneridge, 2008 WL 123801, at *11. The Supreme Court previously noted that while Congress enacted the 1933 and 1934 Acts and chose not to provide for aiding and abetting liability in private causes of action it authorized, it did so against the backdrop of existing state statutes that did contain such provisions for derivative liability. Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 184-85 (1994).

language when it enacted NSMIA." In particular, Congress chose not to preempt state Blue Sky laws in their practical entirety as it could have. Brown, 481 F.3d at 911; Zuri-Invest, 177 F. Supp. 2d at 195. The limited extent of Congress's preemption in the area of fraud is further highlighted by the fact that Congress chose to preempt class actions for fraud, but not otherwise. See Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 78bb(f)(1)(A).[12] NSMIA simply lacks the complete preemptive force needed for this form of implied preemption. Zuri-Invest, 177 F. Supp. 2d at 195.

State law can also be preempted if it actually conflicts with federal law making it impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. Zuri-Invest, 177 F. Supp. 2d at 195 citing Assoc. Int'l Automobile Mfrs., Inc. v. Abrams, 84 F.3d 502, 507 (2d Cir. 1996).[13] There is no conflict between the fraud provisions of Oregon Blue Sky law and NSMIA; the latter is strictly limited to the registration statements and disclosure requirements of federally covered securities. Zuri-Invest, 177 F. Supp. 2d at 195.

**B. ORS § 59.115 Does Not Violate the Commerce Clause**

Defendant's second constitutional argument to preclude application of Oregon's fraud provisions is that the Oregon Blue Sky law § 59.115(3) violates the Dormant Commerce Clause because it regulates conduct that occurs wholly outside Oregon's borders. (Def. Mem. at 17-23.) The Defendant suggests that the state statute interferes with the relationship between themselves (a New York business) and Whittier (an Idaho resident). But the Oregon Blue Sky laws are aimed at protecting Oregon residents from securities fraud and limited to the sale of securities in the state. (Pl. Mem. 20-21.) The Plaintiff received the offering materials from Whittier at his home in Oregon, and made the purchase from there. It is this transaction that the Blue Sky laws address and with which this motion is concerned, not the relationship between Seward & Kissel and Wood River established outside of Oregon. (Def. Mem. 18-21.)

---

[12] "Congress does not cavalierly pre-empt state-law causes of action. . . . "[SLUSA] simply denies plaintiffs the right to use the class action device to vindicate certain claims. . . . [It] does not deny any individual plaintiff . . . the right to enforce any state-law cause of action that may exist." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71, 87 (2006).

[13] Though conflict preemption was found in the securities realm under Myers v. Merrill Lynch & Co., Inc., 98cv3532, 1999 WL 696082, at *9 (N.D. Cal. Aug. 23, 1999) aff'd, 249 F.3d 1087 (9th Cir. 2001), that case is inapposite to ours since it was a Regulation M case and where there was a true conflict between its authorization of penalty bids, in contrast to California law which subjected penalty bids to unfair competition law.

The Defendant's argument that Congress did not "grant" to the states the authority to regulate aider and abettor liability fails to recognize that state police power in this arena has been upheld by the courts for almost a century.[14] (Pl. Mem. 16.) Because this power has been specifically recognized by Congress, it is not subject to the Commerce Clause.[15] (Pl. Mem. 16 citing White v. Massachusetts Council of Constr. Employers, Inc., 460 U.S. 204, 213 (1983).)

Contrary to the Defendant's assertion that Oregon's fraud statutes are unique and onerous, Oregon's securities fraud provisions, which are "burden-shifting provisions," are in fact modeled on the Uniform Securities Law[16] and federal securities law; thus, the Oregon law is not alone.[17] (Pl. Mem. 10.) In addition, Oregon's Blue Sky laws do not facially discriminate by expressly or impliedly favoring in-state interests over out-of-state interests so as to implicate the Dormant Commerce Clause. (Pl. Mem. 18.) Rather, ORS § 59.115(3), the derivative liability statute, applies equally to residents and non-residents alike. (Pl. Mem. 18.) As with the Goldmen case, the laws simply address fraudulent sales, in Oregon, regardless of whether the seller is in-state or out-of-state.

The Defendant argues that even if Oregon's derivative liability statute does not discriminate on its face, it still violates the dormant Commerce because it directly regulates commerce and imposes an improper burden on interstate commerce under Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970). (Def. Mem. 22.) But where the effect of the regulation is the same in and outside of the enacting state's territory, a Commerce Clause challenge will fail. See United States Baseball v. City of New York, 509 F. Supp. 2d 285 (S.D.N.Y. 2007). The Oregon

---

[14] In holding that such legislation is a reasonable exercise of the police power, the Supreme Court said in Merrick v. N.W. Halsey & Co., 242 U.S. 568 (1917), one of the Blue Sky Cases: "We think the statute under review is within the power of the state. It burdens honest business, it is true, but burdens it only that, under its forms, dishonest business may not be done. . . . [B]ut to arrest the power of the state by such considerations would make it impotent to discharge its function."

[15] "In a trilogy of cases known as The Blue Sky Cases, the Supreme Court long ago established the rights of the states to regulate securities against a constitutional challenge based on the commerce clause and the Fourteenth Amendment. Hall v., Geiger-Jones Co., 242 U.S. 539 (1917); Caldwell et al. v. Sioux Falls Stock Yards Co. et al, 242 U.S. 559 (1917); and Merrick et al. v. Halsey & Co. et al, 242 U.S. 568 (1917)." (Pl. Mem. 23.) More recently, the Third Circuit held that the New Jersey Blue Sky law was valid because it did not attempt to regulate commerce "wholly outside" of its borders; the securities law in question regulated the instate portion of an interstate transaction, and furthered legitimate in-state interests. A.S. Goldmen & Co. v. New Jersey, 163 F.3d 780, 789 (3d Cir. 1999).

[16] The provision for secondary liability is based on the 1957 version of the Uniform Securities Act and is still the language used in the Revised Uniform Securities Act of 2002. RUSA § 509(g)(3). Also, ORS § 59.135 tracks the Uniform Securities Act, 7B U.L.A. §101, which is the corollary to §10(b) of the Securities Act of 1934 and SEC Rule 10b-5.

[17] Plaintiff notes that Idaho, Indiana, New Jersey, and Massachusetts all maintain the same or very similar secondary liability provisions relying on a burden-shifting framework. (Pl. Mem. 15, n.5.)

law § 59.115 is limited by ORS § 59.335(1) to transactions where an offer to sell is made in Oregon or an offer to buy is made and accepted in Oregon. (Pl. Mem. 21.)

Because there is no express or implied preemption of state securities fraud laws in this case and they do not violate the Commerce Clause, the question of whether the securities in question here are federally covered for the purposes of the fraud claims is moot since the Oregon Statute specifically creates private causes of action for fraud in the sale of securities that occur with federally covered securities. ORS § 59.115(1)(b).[18] In addition, because Oregon's Blue Sky law creates a valid private right of action for derivative liability, under ORS § 59.115(3), the next section examines whether the Plaintiff has alleged enough under the Oregon Blue Sky fraud provisions to survive Defendant's motion to dismiss.

**C. FRCP 9(b) and Oregon Blue Sky Pleading Requirements**

"To prove a defendant violated Or.Rev.Stat. §§ 59.115 or 59.135, a plaintiff must show that the defendant sold a security that was not properly registered under Oregon law or sold a security through fraud or deceit. Both of the Oregon securities statutes in issue create statutory 'fraud' actions." Aero Marine Engine, Inc. v. Transporter, Inc., 05cv1469, 2007 WL 3128500 at *3, n.2 (D. Or. Oct. 23, 2007). Because the Plaintiff's securities claims are based in Oregon law, they are not subject to the Private Securities Litigation Reform Act ("PSLRA") and its heightened pleading standards.[19] But as stated above, all claims alleging fraud must be pled with particularity pursuant to Fed. R. Civ. P. 9(b). Riley v. Brazeau, 612 F. Supp. 674, 677 (D.C. Or. 1985) citing Walling v. Beverly Enterprises, 476 F.2d 393 (9th Cir. 1973). "But 'Rule 9(b) does not require nor make legitimate the pleading of detailed evidentiary matter.' Nor does Rule 9(b) require any particularity in connection with an averment of intent, knowledge or state of mind. It is directed towards and only requires identification of the circumstances constituting the fraud so that the defendant can prepare an adequate answer from the allegations. Riley, 612 F. Supp. at

---

[18] Compare ORS §§ 59.115(1)(a) and 59.115(1)(b):

> (1)(a) Sells or successfully solicits the sale of a security, other than a federally covered security, in violation of Oregon securities laws . . .
>
> (1)(b) Sells or successfully solicits the sale of a security in violation of ORS 59.135(1) or (3) or by means of an untrue statement of material fact or an omission to state a material fact . . . .

[19] Congress passed the Private Securities Litigation Reform Act (PSLRA) in 1995 elevated the pleading standards for securities fraud. Lillard v. Stockton, 267 F. Supp. 2d 1081, 1094 (N.D. Okla. 2003). The PSLRA mandates particular detail for false statements or omissions of material fact including specification of each statements allegedly misleading, the reason or reasons why the statement is misleading, and if it is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed. 15 U.S.C. §78u-4(b). In addition, the PSLRA requires a plaintiff to set forth particular facts supporting allegations that a defendant acted with a particular state of mind. 15 U.S.C. § 78u-4(b); Lillard, 267 F. Supp. 2d at 1094.

677 (citing Walling, 476 F.2d at 397); see also Lyon, 2008 WL 53102, at *4. Here the complaint stated the specific content of the misrepresentation, the identity of the parties to it, and importantly in this case, that Seward & Kissel is being sued as an aider and abettor. Riley, 612 F. Supp. at 677, 679.

**D. Application of Oregon's Fraud Provisions**

The Oregon's Blue Sky laws are modeled on the American Law Institute's 1956 Uniform Securities Act, which track the fraud provisions of the 1933 Act in §12(a)(2) and 1934 Act in §10(b). Under Oregon law a person is liable to the purchaser of a security if that person:

> Sells or successfully solicits the sale of a security in violation of ORS 59.135(1) or (3) or by means of an untrue statement of material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading . . . and who does not sustain the burden of proof that the person did not know, and in the exercise of reasonable care could not have known, of the untruth or omission.

ORS § 59.115(1)(b). Oregon Securities law § 59.135, which tracks the 1934 Securities Exchange Act § 10(b)[20] and Uniform Securities Act §101, provides that:

> It is unlawful for any person, directly or indirectly, in connection with the purchase or sale of any security . . . :
>
> (1) To employ any device, scheme, or artifice to defraud;
> (2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made in light of the circumstances under which they are made, not misleading;
> (3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

ORS §§ 59.135(1)-(3).

ORS § 59.135 defines prohibited conduct while ORS § 59.115 provides a civil remedy for that unlawful conduct. See Anderson v. Carden, 934 P.2d 562, 565 (Or. App. 1997). ORS § 59.115(3) does not establish a standard of conduct; it merely expands the class of potentially liable persons from whom damages may be obtained for a seller's violation of the securities

[20] Aero Marine Engine, Inc. v. Transporter, Inc., 05cv1469, 2007 WL 3128500, at *3, n.2 (D. Or. Oct. 23, 2007) citing Held v. Product Mfg. Co., 592 P.2d 1005 (Or. 1979). "In construing the state provision [ORS 59.135], deference is given to developments in the law construing claims under federal Rule 10(b)(5)." Aero Marine Engine, 2007 WL 3128500, at *3, n.2 citing Austin v. Baer, Marks & Upham, Fed. Sec. L. Rep. (CCH) para. 92,881, 94,280 (D. Or. July 18, 1986).

laws. Id.[21] There is also no independent liability under ORS § 59.137, since it is not a substantive provision. (Def. Mem. 12, n.2.) However, these provisions remain applicable to assert derivative liability over Seward & Kissel and provide for a measure of damages. See supra at 3, nn. 2, 4, 5.

The statute creates remedies against both sellers and nonsellers. Anderson v. Carden, 934 P.2d 562, 681-82 (Or. App. 1997). Unlike federal law, which specifically directs prosecution of aiders and abettors by the SEC,[22] Oregon law gives rise to a private right of action against an aider and abettor of the seller:

> "every person who participates or materially aids in the sale is also liable jointly and severally with and to the same extent as the seller, unless the nonseller sustains the burden of proof that the nonseller did not know, and, in the exercise of reasonable care, could not have known, of the existence of the facts on which the liability is based. Any person held liable under this section shall be entitled to contribution from those jointly and severally liable with that person.

ORS § 59.115(3); see also Badger v. Paulson Investment Co., 803 P.2d 1178, 1181 (Or. 1991). The non-seller "would not have to be directly culpable, nor would its conduct have to be the cause of damages in order for it to be liable under ORS chapter 59." Ainslie v. First Interstate Bank of Oregon, N.A., 939 P.2d 125, 132 (Or. App. 1997). However, the first step is establishing liability of the *seller* under ORS before derivative liability can attach. See Metal Tech. Corp v. Prentice, 703 P.2d 237 (Or. App. 1985).

The statute shifts the burden to the nonseller aider and abettor to prove that the seller of the security did not have actual or constructive knowledge of the underlying false or misleading information on which liability of the primary actor is based. Badger, 803 P.2d at 1181; Ainslie, 939 P.2d at 132 (Section 59.115(3) establishes a "lack of knowledge" defense for non-sellers); see also Adams v. Am. Western Securities, Inc., 510 P.2d 838, 844 (Or. 1973) ("Plaintiff need no longer prove the element of knowledge under ORS § 59.115(3) . . . , lack of knowledge now being an affirmative defense to be established by the defendant"). The statute provides an

---

[21] This fact also renders Defendant's argument made during the hearing on this motion moot—in responding to this Court's query as to why the Defendant made the motion it did, Defendant argues that the Oregon statute is a strict liability statute with a negligence defense and as such is not a claim for fraud or deceit that falls under the savings clause of the securities acts. Hrg. Tr. at 30.

[22] See 15 U.S.C. § 78t(e). Stoneridge makes clear that secondary actors are not necessarily immune from private suit. For example, accountants and underwriters in certain circumstances are subject to express private rights of action under 15 U.S.C. § 77k and the implied right of action in §10(b) continues to cover secondary actors who commit primary violations. Stoneridge, 2008 WL 123801 at *11 citing Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 191 (1994).

affirmative defense to nonseller participants that they did not know or could not reasonably have known of the facts on which liability is based and while this is a substantial burden on nonseller participants, it was the clear legislative choice. Anderson, 934 P.2d at 683.

The Plaintiff met its burden by identifying Whittier and the Fund as the principal liable parties in its complaint, which made the false or misleading statements that led to the Plaintiff's injury. In addition, the Plaintiff specifically explains the relationship between the Defendant and the Fund and alleges Defendant's actual and constructive knowledge of the underlying facts on which liability of the primary actor is based. On the other hand, the Defendant argues that its role in the offering was minimal, virtually ministerial, applying New York case law. (Def. Mem. 20.) But the Oregon liability statute distinguishes between secondary actors who perform more consequential functions and those who merely "provide ministerial functions of escrow, custody or deposit services." ORS § 59.115(4). In such a case, the burden remains with the purchaser to prove that the secondary actor performing these ministerial functions had actual or constructive knowledge of the underlying fraudulent acts of the primary actor. Id.

Oregon's Supreme Court has found that attorney preparation of legal materials for an offering qualifies as participating in or materially aiding under ORS 59.115(3). See Adams, 510 P.2d at 844. "There is likewise no question that one who prepares documentation that contains material misstatements and omissions . . . in connection with the purchase or sale of any security' . . . which operates . . . as a fraud,' [is] in violation of ORS 59.135(3)." Anderson, 934 P.2d at 566.

Given the applicability of ORS §§ 59.135(1) and (3) to aiders and abettors involved in the fraudulent sale of securities whether or not the security is a federally covered security, the complaint alleges sufficient facts here to find under Oregon law that the Defendant Seward & Kissel may have materially aided in the preparation of the Offering Memorandum, which contained the allegedly materially misleading and false statements and omissions by the principal actors. While its participation is not only far more limited than in other contexts finding secondary liability,[23] and in fact, the firm probably was lied to by Whittier, as he admitted in his own securities prosecution, Seward & Kissel must follow the structure of the Oregon burden

[23] See, e.g., Gabriel Capital, L.P. v. Natwest Finance, Inc., 94 F. Supp. 2d 491 (S.D.N.Y. 2000).

shifting statute and answer via an affirmative defense.[24] Language in a motion to dismiss doesn't do it. See, e.g., Fisk v. Superannuities, 927 F. Supp. 718, 731 (S.D.N.Y. 1996) (denying a motion to dismiss for failure to plead affirmative defense of exemption under Regulation D). Accordingly, the Defendant's motion to dismiss the fraud claims is denied.

**E. ORS §59.115(1)(a) Blue Sky Liability for Sale of Unregistered Securities**

*1. Failure to Plead Sufficient Facts*

ORS § 59.115(1)(a) establishes civil liability for the sale of securities in violation of § 59.055 registration requirements, excluding federally covered securities. Defendant argues that the third claim for unlawful sale of unregistered securities in violation of ORS § 59.055 should be dismissed and Seward & Kissel is not liable to the Plaintiff under §§59.115(1)(a), (3) because the security in question is a federally covered security, which is specifically excluded from operation of §§ 59.115(1)(a) and 59.055(3). Even if it were not a federally covered security, the Defendant argues that it meets the exemptions listed in § 59.055, namely the security is exempt under § 59.025 or that the sale is exempt under § 59.035.

The Defendant asserts that the Plaintiff failed to make any specific allegations in his complaint that the offering did not comply with Regulation D. (Def. Mem. 11; Hrg. Tr. 7.) Legal conclusions "masquerading as facts" will not defeat a Rule 12(b)(6) motion. Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 5-6 (1st Cir. 2005). The sole allegation in the Complaint that the Wood River securities are not federally covered appears in paragraph 32: "The Wood River security was not registered in Oregon and neither the security nor the sales to plaintiff were exempt under any applicable rule or regulation." (Hr. Tr. 29-30.) Notwithstanding the generally liberal approach to 12(b)(6) motions, a litigant's pleading obligations in the federal courts are not "toothless"; the pleader must allege facts, either directly or inferentially, that satisfy each element required for recovery under some actionable legal theory. See, e.g., Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir. 1996). The Plaintiff failed to do so here.

The Plaintiff first makes its specific allegations that the Wood River Securities are not federally covered in its opposition brief. The Defendant argues that the Wood River Securities

---

[24] See also In re Charter Communications, Inc., Securities Litigation (Stoneridge Investment Partners LLC), MDL 1506; 02cv1186, 2004 WL 3826761, at *14-15 (E.D. Mo. Oct. 12, 2004). The district court rejected Arthur Andersen's motion to dismiss the claim, even though it was lied to by the cable operator, finding that it recklessly ignored enough red flags making it probable it knowingly or recklessly acquiesced in the company's violations.

are covered securities because they are sold in a transaction that is exempt from registration pursuant to Commission rules issued under Section 4(2). (Def. Mem. 11 citing 15 U.S.C. §77r(b)(4)(D).) Section 4(2) exempts from registration requirements "transactions by an issuer not involving any public offering." 15 U.S.C. § 77d(2). The Offering Memorandum specifies that the securities in question were not registered under the 1933 Act and would be offered to investors pursuant to Regulation D.[25]

A party that relies on "covered security" status must plead it as an affirmative defense; the burden of proof rests with the proponent. See SEC v. Ralston Purina Co., 346 U.S. 119, 126-27 (1953); see also Brown v. Earthboard Sports USA, Inc., 481 F.3d 901, 913 (6th Cir. 2007). But the Court may reject attempts to add factual averments for the first time in a legal memorandum or brief, Henthorn v. Dep't of Navy, 29 F.3d 682 (D.C. Cir. 1994), and here the complaint fails to plead that the offering at issue was anything other than a private offering exempt under § 77d(2), I reject the Plaintiff's legal conclusion that the securities are not federally covered securities. See Goodwin Properties, LLC v. Acadia Group, Inc., 2001 WL 800064 at *9 (D. Me. July 17, 2001).

*2. Exemption under Oregon Law*

The Plaintiff has alleged no facts showing that the Defendant fails to meet the exemptions available under two Oregon Blue Sky provisions. (Def. Mem. 24; Hrg. Tr. 29-30.) Again, these are legal conclusions. While not in a pleading, Defendant argues in its brief that even if it were not a federally covered security, the securities are exempt under the ORS §§ 59.035(5), (12). (Def. Mem. 23-24.) That section exempts from registration "[a]ny transaction…with an accredited investor as defined in section 2(15)(i) or (ii) of the Securities Act," so long as there is no public advertising or general solicitation for the transaction. An accredited investor under the ORS is defined by the 1933 Securities Act's regulations.[26] ORS § 59.035(12) also exempts any transaction that "results in not more than 10 purchasers within [Oregon] of securities of the issuer during 12 consecutive months," provided that no commission or other remuneration is

---

[25] Regulation D, issued pursuant to Section 4(2) of the 1933 Act sets forth conditions under which offerings will be deemed exempt from registration. 17 C.F.R. § 230.506. (Def. Mem. 11.)

[26] Section 2(a)(15)(i) provides that "accredited investor" means "any person who, on the basis of such factors as financial sophistication, net worth, knowledge, and experience in financial matters, or amount of assets under management qualifies as an accredited investor under rules and regulations which the [SEC] shall prescribe." 15 U.S.C. § 77(b)(a)(15)(ii). Regulation D states that "accredited investor" includes "[a]ny natural person whose individual net worth . . . at the time of his purchase exceeds $1,000,000." 17 C.F.R. § 230.501(a)(5).

paid in connection with the sale, and no public advertising or general solicitation of the transaction is used. ORS § 59.035(12)(a).

Wood River investors were required to sign a Subscription agreement stating that their net worth was in excess of $1 million a threshold that brings the investors including the Plaintiff within the definition of an "accredited investor." The Plaintiff does not deny that he is an accredited investor and does not allege in the complaint that sales were made to any unaccredited investors. Similarly, the Plaintiff alleges no facts showing advertising or solicitation of the public in connection with interests" the transaction is exempted from registration under ORS § 59.035(5). See Aero Marine Engines, 2007 WL 3128500, at *8. The Plaintiff also does not allege that Wood River sold its securities to more than ten Oregon residents, does not allege remuneration paid, and does not allege public advertising or solicitation. Again, this claim rests on legal conclusions that the securities are not exempt under the relevant Oregon's provisions and this claim must be dismissed.

## IV. CONCLUSION

Because Oregon's securities law grants a private right of action against aiders and abettors and the Plaintiff has successfully alleged facts sufficient to state a claim for fraud, Defendant's motion to dismiss that claim is DENIED. However, because the Plaintiff has failed to plead facts alleging that the Wood River securities are not exempt from registration, the Defendant's motion to dismiss this claim is GRANTED. The Clerk of the Court is directed to close this motion. The Defendant has 20 days to answer. Parties are to proceed with discovery, which is scheduled to end April 15, 2008 pursuant to the Pre-Trial Scheduling Order.

**SO ORDERED**
**New York, New York**
**March 27, 2008**

Harold Baer

**U.S.D.J.**